## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

ANSARI MOHAMAD, on behalf of
himself and others similarly
situated,

       Plaintiffs,

v.

                                    **Case 6:24-cv-02354-JSS-LHP**

CENTRAL FLORIDA TAX AND
ACCOUNTING, INC.,
ANEES AHMAD TANOLI,
LAWGICAL INSIGHT, LLC,
ANDREW BAUTA,
MICHAEL RUSSO,
ROTTENSTREICH FARLEY
BRONSTEIN FISHER
POTTER HODAS LLP,
MELIZA MILLER,
RICHARD I. SEGAL,

       Defendants.

_____ /

### PLAINTIFFS' SECOND EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

    Plaintiff, Ansari Mohamad on behalf of himself and others similarly situated ("Plaintiffs"),  hereby moves for Emergency Motion for Temporary Restraining Order and Preliminary Injunction, pursuant to Rule 65(b), Fed. R. Civ. P., and Local Rule 6.01, and moves this Court to continue the injunction through issuance of a preliminary injunction pursuant to Rule 65(a), Fed. R. Civ. P., after notice and

hearing, prohibiting the Defendants, LAWGICAL INSIGHT, LLC ("hereinafter referred to as "Lawgical' or "Lawgical Defendants", collectively), Andrew Bauta (hereinafter "Bauta"), Michael Russo (hereinafter "Russo"), ROTTENSTREICH FARLEY BRONSTEIN FISHER POTTER HODAS LLP (hereinafter "RFBLLP" or "RFBLLP Defendants", collectively), MELIZA MILLER (hereinafter "Miller"), RICHARD I. SEGAL (hereinafter "Segal"), CENTRAL FLORIDA TAX AND ACCOUNTING, INC. (hereinafter "CFTAS") and ANEES AHMAD TANOLI (hereinafter "Tanoli" or collectively "CFTAS Defendants")  from inspecting, disseminating, transmitting any tax return or tax return information with respect to the unlawful disclosure of Plaintiff's private tax return(s) in violation of any provision of 26 U.S.C. § 6103.

In light of the Court's order dated January 6, 2025, denying the initial motion for a temporary restraining order and preliminary injunction, Plaintiff respectfully submits this second motion to address the minor concerns raised by the Court. Specifically, this motion aims to demonstrate that the balance of harms weighs decisively in favor of granting the requested injunctive relief, even when considering the potential impact on the ongoing state court proceedings to which Plaintiffs are not parties. Plaintiffs acknowledge the Court's valid concern regarding the potential impediment to discovery efforts in the state court case. However, Plaintiffs contend that this concern is outweighed by the irreparable

harm that will result from the continued unauthorized disclosure and inspection of confidential tax return information belonging to Plaintiffs.  The requested relief will not impede Defendants' ability to litigate their state claims because Plaintiffs' confidential tax return information is not essential to Defendants' claims or damages in the state court proceeding. Defendants have ample alternative evidence available to support their allegations, including Defendants' own expert report affirming the damages. The highly sensitive and federally protected nature of the tax information at issue renders its continued use in the state court action both unnecessary and unlawful under 26 U.S.C. §§ 6103 and 7431. By seeking relief to enjoin the inspection and dissemination of this data, Plaintiffs do not hinder the state court litigation but rather ensure compliance with federal privacy laws. Finally, and most importantly, the disclosure of the privileged and confidential information **cannot be undone—regardless of what protective measures the court may order.** *In re BayCare Medical Group, Inc.*, 101 F.4th 1287 (2024).

The Plaintiffs respectfully submit:

1.    This Motion is made pursuant to Rule 65(b), Fed. R. Civ. P. and Local Rule 6.01.

2.    This motion is made to enjoin the Defendants from unlawfully inspecting, disseminating, transmitting the Plaintiffs' TRI, and others similarly

situated, until requisite notice may be given and an opportunity afforded to the opposing parties to respond to the application for a preliminary injunction.

3.    The issuance of a Temporary Restraining Order in this case is necessary because the disclosure/harm cannot be undone.

4.    The Plaintiffs have the right to expect that any information they provide to the IRS will not be disclosed unless authorized by the taxpayer or by law.

5.    26 U.S.C. § 6103 provides:

> no other person … who has or had access to returns or return information under subsection (c), subsection (e)(1)(D)(iii), paragraph (10), (13), (14), or (15) of subsection (k), paragraph (6), (10), (12), (13) (other than subparagraphs (D)(v) and (D)(vi) thereof), (16), (19), (20), or (21) of subsection (l), paragraph (2) or (4)(B) of subsection (m), or subsection (n), shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section.

## Conduct to be Enjoined

6.    In Orange County Circuit Case Number 2021-CA-011761, *Central Florida Tax and Accounting Services v. Akbar A. Ali, et al.*, under the threat of the trial court's contempt powers, the RFBLLP and CFTAS Defendants have moved to compel Mr. Akbar A. Ali (hereinafter "Ali")[1]  to divulge confidential credentials to

---

[1] Over the past several years Ali has filed thousands of tax returns doing business as A.A. Ali C.P.A.

software applications, cloud services, and tax preparation software that provides direct access to the Plaintiffs' confidential and privileged TRI.

7.    The Defendants, collectively, are seeking to profit by harvesting, disseminating, disclosing, and/or inspecting and/or threatening to harvest, disseminate, disclose, and/or inspect thousands of tax returns containing the Plaintiffs' confidential and privileged TRI by seeking a punitive damages award against Ali as a result of alleged violations of a convent not to compete between himself and Tanoli.

8.    The Plaintiffs have not been made a part of the state action.

9.    The state proceeding in question is not an administrative proceeding pertaining to tax administration. Therefore, the Defendants lack the authority under 26 U.S.C.§ 6103 to harvest, discover, disseminate, transmit, or disclose Plaintiffs' confidential and private TRI. Any such disclosure would be a direct violation of federal law protecting taxpayer privacy, unless the Defendants can demonstrate that their actions fall squarely within one of the narrowly defined exceptions provided in the statute, which they cannot.

10.    The Defendants have collectively sought to harvest, disseminate, disclose, and inspect and/or threatened to harvest, disseminate, disclose and inspect thousands of tax returns containing the confidential and privileged TRI by collecting a forensic mirror image of Ali's computers and cell phones to access all

5

tax filings, including returns and extensions, prepared and/or submitted by ALI, and any documents, records, and data relating to such filings created on or after April 8, 2019. *See* Exhibit A.

11. The Defendants are collectively seeking to harvest, disseminate, disclose, and inspect and/or threatened to harvest, disseminate, disclose and inspect thousands of tax returns that may contain the Plaintiffs' confidential and privileged TRI by seeking a Court order to issue subpoenas to A) ShareFile; B) Microsoft; C) NameSecure; D) Google; E) Apple; F) TheSageNext; G) AllDirectCFL.com; H) GoTo Communications, Inc.; and I) Tej Prakash, to seek disclosure of TRI gathered by Ali throughout the several years he prepared tax returns. *See* Comp. Exhibit B.

12. So far, the Lawgical Insight Defendants have illegally collected at least 12,000 records and nearly 100,000 pages of taxpayer records from Ali's devices that contain the Plaintiffs' individual TRI. See Comp. Exhibit C.

## <u>Notice to Defendants</u>

13. The Plaintiffs filed the original Complaint (Doc. 1) pursuant to 26 U.S.C.§ 7431 *et seq.* that provides:

> (a)(2) Inspection or disclosure by a person who is not an employee of United States
>
> If any person who is not an officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any

return or return information with respect to a taxpayer in violation of any provision of section 6103 or in violation of section 6104(c), such taxpayer may bring a civil action for damages against such person in a district court of the United States.

(c)(2) the costs of the action, plus

(c)(3) in the case of a plaintiff which is described in section 7430(c)(4)(A)(ii), reasonable attorney's fees, except that if the defendant is the United States, reasonable attorney's fees may be awarded only if the plaintiff is the prevailing party (as determined under section 7430(c)(4)).

14.    On Friday, December 27, 2024, a copy of the Verified Class Action Complaint, along with this Emergency Motion was provided to the Defendants by email, contemporaneously with the filing of this Emergency Motion.

## Allegations in Support of Injunctive Relief

15.    The Verified Complaint is an action to enforce the provisions of 26 U.S.C.§ 6103 against the Defendants that are unlawfully and illegally seeking to profit off of the use the Plaintiffs' confidential and private TRI.

16.    The Lawgical Defendants seek to profit monetarily by receiving a fee to harvest, disseminate, and disclose the Plaintiffs' confidential TRI.

17.    The RFBLLP Defendants seek to profit monetarily by the receipt of attorney's fees by and through the use of illegal inspection and disclosure of the Plaintiffs' confidential TRI to prove damages on behalf of their client Tanoli in the

state case. In representing a client, a lawyer may not use means that knowingly use methods of obtaining evidence that violate the legal rights of such a person.[2]

18.     The CFTAS Defendants seeks to profit monetarily by seeking actual and punitive damages as a result of an alleged breach of a non-compete agreement on behalf of Ali by and through the use of employing the RFBLLP Defendants to use methods that result in the illegal inspection and disclosure of the Plaintiffs' confidential and privileged TRI as means to determine the amount of tax returns completed by Ali while the non-compete agreement was in effect.

## **Security**

19.     The Court should exercise its discretion and require the Plaintiffs to post no bond or a nominal bond, as the Defendants will incur no costs or damages if a preliminary injunction is entered. Specifically, the Defendants' conduct is unlawful. 26 U.S.C.§ 7213, provides:

> (3) Other persons
>
> It shall be unlawful for any person to whom any return or return information (as defined in section 6103(b)) is disclosed in a manner unauthorized by this title thereafter willfully to print or publish in any manner not provided by law any such return or return information. Any violation of this paragraph shall be a felony punishable by a fine in any amount not exceeding $5,000, or imprisonment of not more than 5 years, or both, together with the costs of prosecution.

---

[2] See Rule 4-4.4, Rules Regulating the Florida Bar.

20.     Despite multiple warnings, the Defendants willfully disregarded the Plaintiffs' rights to non-disclosure of their confidential and privileged TRI.

21.     Given the Defendants' unlawful endeavors, there is no cost exposure to the Defendants. The Defendants cannot recover their attorney fees unless it shows Plaintiffs' lawsuit was frivolous.

## MEMORANDUM OF LAW

### A. Standard of Review

The standard for analyzing a motion for temporary restraining order where the opposing party has notice is the same as a motion for a preliminary injunction: Plaintiff must show (1) a substantial likelihood of success on the merits of the underlying case; (2) irreparable harm in the absence of a restraining order; (3) that the harm suffered by Plaintiff in the absence of a restraining order would exceed the harm suffered by Defendants if the restraining order issued; and (4) that a restraining order would not disserve the public interest. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246–47 (11th Cir. 2002); *Miccosukee Tribe of Indians of Fla. v. United* States, 571 F. Supp. 2d 1280, 1283 (S.D. Fla. 2008).

Further, temporary restraining orders are "extraordinary and drastic remed[ies] not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to *each* of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th

Cir. 1998) (emphasis added). Ultimately, issuing a temporary restraining order should be "the exception rather than the rule." *Siegel*, 234 F.3d at 1176.

## B. The Plaintiffs Have a Substantial Likelihood of Success on the Merits.

The Plaintiffs' claims are straightforward. The Defendants have no legal authority to discover, harvest, disseminate, publish, or disclose TRI. The Defendants will likely argue that pursuant to a trial court's orders, they have the authority to access TRI. The Defendants would also argue that there is a signed confidentiality agreement between Lawgical and RFBLLP to protect the TRI.

First, the Plaintiffs have not been made a part of the state proceedings. Second, the Plaintiffs never entered a confidentiality agreement and never gave consent for the Defendants to access their TRI. Third, the Defendants and the trial court are performing a federal function in seeking to disclose and examine the Plaintiffs' TRI. Pursuant to the Supremacy Clause of the United States Constitution, state and local government agencies cannot enforce a requirement for IRS employees or contractors to sign confidentiality agreements as a condition of their access to facilities or technology.[3] No Defendant is an IRS employee or

---

[3] See Office of Chief Counsel Internal Revenue Service Memorandum CC:PA:BR:07 DL-108980 08, May 7, 2008("Pursuant to the Supremacy Clause, Art. VI, cl.2, "a state is without power ... to provide conditions on which the Federal Government will effectuate its policies." *United States v. Georgia Public Service Comm'n*, 371 U.S. 285, 293 (1963). *See* Exhibit I. State and local government agencies may not encumber the exercise of federal authority. *Id. See also Mayo v. United States*, 319 U.S. 441 (1943) (the activities of the federal government are free from regulation by any state)."). *See* Exhibit J

contractor. Assuming arguendo that Defendants are IRS employees or contractors—which they are not—the state trial court would lack authority to enforce a confidentiality agreement to prevent the unauthorized disclosure of TRI, as such enforcement would contravene the Supremacy Clause of the United States Constitution.

Finally, Florida courts have also prohibited the disclosure of TRI in litigation. *Choice* at 1167 (citing Fla. Stat. § 90.5055) ("Although information may be relevant, it does not follow that relevancy trumps the accountant/client privilege set forth in section 90.5055, Florida Statutes…. [A] court cannot justify finding a waiver of the privilege merely because the information sought is needed by the opposing party to provide information helpful to cross examination or for the defense of a cause of action."). The imposition of punitive damages against Ali provides no legitimate basis for the disclosure of the Plaintiffs' tax returns as a means to calculate damages. This is especially true given that the Plaintiffs are not parties to the non-compete agreement at issue in the state case.

Section 6103 contains some statutory exceptions for disclosure of TRI. However, no exceptions fit the Defendants and their illegal conduct. For the Defendants to prevail in the underlying action, the Defendants would have to show they had a good faith, but erroneous interpretation of section 6103, or the

inspection or disclosure was requested by Plaintiff(s).[4]  The Defendants never possessed a good faith interpretation of § 6103 which led them to believe that they were lawfully permitted to disclosure or inspect the Plaintiffs' TRI. The plain language of § 6103 is unambiguous. Had the Defendants believed that they had lawful access to the Plaintiffs' TRI, they would have requested the TRI directly from the Internal Revenue Service. Instead, the Defendants intentionally sought to steal, and indeed did steal, TRI from Ali's devices and subpoenaed third parties that have access to the privileged TRI belonging to the Plaintiffs. The Plaintiffs' likelihood of success on the merit is great.

### C. The Plaintiffs Are Threatened with Irreparable Harm.

Pursuant to 26 C.F.R. § 301.7216-1(b)(3) the term "tax return information" means "any information, including, but not limited to, a taxpayer's name, address, or identifying number, which is furnished in any form or manner for, or in connection with, the preparation of a tax return of the taxpayer." This includes information that "the taxpayer would not have furnished … to the tax return preparer but for the intention to engage … the tax return preparer to prepare the

---

[4] (b) Exceptions
No liability shall arise under this section with respect to any inspection or disclosure—
(1)      which results from a good faith, but erroneous, interpretation of section 6103, or
(2)      which is requested by the taxpayer.
*See* 26 U.S.C. § 7431 (b)(1)(2).

tax return." 26 C.F.R. § 301.7216-1(b)(3)(D). As such, any information a taxpayer provided to a tax preparation company like A.A. Ali C.P.A. is considered TRI.

Had the Plaintiffs known that their privileged and confidential TRI would be disclosed or released to unauthorized third parties, they would not have shared their privileged and confidential TRI with Ali. Had Plaintiffs known that their privileged and confidential TRI be inspected, disclosed, or released to unauthorized third parties that they could not even predict, they would not have used Ali to complete their tax returns. The Plaintiffs are believed to be numbered in the thousands based on the number of files the Lawgical Defendants harvested. If true, thousands of taxpayers, like the named Plaintiff, will suffer  irreparable injuries in fact, including (i) invasion of privacy; (ii) breach of the confidentiality of their privileged and confidential TRI; and/or (iii) deprivation of the value of their privileged and confidential TRI including the Plaintiffs' full name; phone number; names of dependents, along with other personal identifiers, such as date of birth and social security numbers. Identity thieves can use TRI to open credit accounts, bank accounts, telephone service accounts, and make major purchases – all in the Plaintiff's name. TRI can be used to take over existing accounts or to open new accounts.

The irreparable harms stemming from such disclosures of tax return information (TRI) include the following and potentially others:

1. **Loss of Privacy**:

   - The disclosure of TRI, such as names, addresses, identifying numbers, and other sensitive information, invades the Plaintiffs' right to privacy.

   - Taxpayers provide this information with the expectation of strict confidentiality, as mandated by 26 C.F.R. § 301.7216-1.

2. **Risk of Identity Theft and Fraud**:

   - Unauthorized access to TRI can expose Plaintiffs to identity theft, financial fraud, and misuse of their personal information by malicious actors.

   - Sensitive data, including Social Security numbers and financial details, can be exploited if disclosed to unauthorized third parties.

3. **Loss of Trust in Confidentiality of Tax Processes**:

   - Plaintiffs would no longer feel secure in engaging tax preparers, fearing their private information may be mishandled or shared without consent.

   - This could deter taxpayers from fully and honestly disclosing necessary information for accurate tax return preparation, undermining the tax system's integrity.

4. **Irreparable Reputational Harm**:

- Disclosure of TRI to unauthorized parties can lead to reputational harm, particularly if sensitive financial or personal details become public or are misused.

5. **Economic Harm**:

- Plaintiffs may incur costs to mitigate the effects of such breaches, including expenses related to credit monitoring, legal representation, and addressing potential misuse of their information.

**D. The Harm To Plaintiffs if a Preliminary injunction does not Issue Outweighs the Harm to Defendants if They are Not Enjoined.**

In applying the "balancing of harms" test, the Court should consider the likelihood of success on the merits. "[A] sliding scale can be employed, balancing the hardships associated with the issuance or denial of a preliminary injunction with the degree of likelihood of success on the merits." *Fla. Med. Ass'n v. U.S. Dept. of Health, Educ. and Welfare*, 601 F.2d 199, 201, n. 2 (5th Cir. 1979). Here, Plaintiffs have a significant likelihood of success on the merits, and the Defendants will suffer no hardships.

(a)**Public Police Strongly Favors the Non-Disclosure of Privileged or Confidential Information.**

This case is similar to *Menke v. Broward County School Board*, 916 So.2d 8 (Fla. 4th DCA 2005) where the court issued a writ of certiorari and quashed the trial court's order to produce a party's computers. *Id.* at 8. In *Menke*, Fourth District described rule 1.350(a)(3) as "broad enough to encompass requests to examine a computer hard drive but only in limited and strictly controlled circumstances, acknowledging that unlimited access to anything on the computer would constitute irreparable harm, because it would expose confidential, privileged information to the opposing party." *Id.* at 11 (citing *Strasser v. Yalamancki,* 669 So.2d 1142, 1145 (Fla. 4th DCA 1996)); *see also Holland v. Barfield*, 35 So. 3d 953, 956 (Fla. 5th DCA 2010) (expressing concern that "wholesale access" to a personal computer could "expose confidential communications and matters extraneous to the litigation").

The Eleventh Circuit in *In re BayCare Medical Group, Inc.*, 101 F.4th 1287 (2024), issued a writ of mandamus directing the district court to vacate its disclosure order in discovery phase of physician's employment-discrimination action protecting from disclosure—"patient safety work product." The Eleventh Circuit reasoned:

> Mandamus is BayCare's only possible remedy. Should it have to produce the quality files and referral logs, the disclosure of that information **cannot be undone—regardless of what protective**

16

**measures the court may order.** Because of the importance of privileged information, the seriousness of the injury when disclosed during discovery, and the lack of effective review after disclosure, we have found that mandamus is the appropriate remedy for immediate review in comparable cases. *In re Fink*, 876 F.2d 84, 84 (11th Cir. 1989). (emphasis added).

Florida well-established precedent echoes the reasoning in *BayCare*. Under Florida's broad discovery rules, any **non-privileged information**, including ESI, is discoverable so long as it is relevant to the subject matter of the action. *See* Fla. R. Civ. P. 1.280(b)(1), (b)(3). (emphasis added). However, if there were error, once the private records have been disclosed, no post-judgment appeal can fully remedy the harm. In this way, irreparable harm can exist where a discovery dispute involves otherwise private cellphone records. *See Antico v. Sindt Trucking*, 148 So. 3d 163, 165 (Fla. 1st DCA 2014) (finding that "irreparable harm can be presumed where a discovery order compels production of matters implicating privacy rights"). In *Antico*, the administrator of an estate raised a constitutional privacy challenge to discovery of the contents of the decedent's cell phone.

In *Saints 120, LLC v. Moore*, 292 So. 3d 1209 (Fla 1st DCA 2020), the First DCA considered a petition for writ of certiorari seeking review of two discovery orders in a wrongful death action that was brought by the decedent's estate against a nursing home. *See id.* at 1211. The first order compelled the nursing home to disclose "'all documents' reflecting the names, addresses, and next of kin *of all* of the nursing home's residents who were present in the facility" on the day of the

incident. *Id.* The second order sought "patient information intended to aid the estate's expert witness or witnesses in forming an opinion concerning the estate's allegation of understaffing in the nursing home" at the time of the incident. *Id.* at 1214–15. The First DCA found that the discovery orders could cause irreparable harm by infringing "on the privacy rights of the non-party nursing home residents in the confidentiality of their medical information." *Id.* at 1212. Having found the possibility of irreparable harm, the court considered whether there was a violation of clearly established principles of law, finding that the first order not only sought irrelevant information, but the information was protected under two independent provisions in the Florida Statutes. *See id.* at 1212–14. The trial court thus departed from the essential requirements of law.

It is well-established that orders requiring disclosure of documents protected by an account-client privilege constitute the type of irreparable harm sufficient to satisfy the jurisdictional component for certiorari relief. *See, e.g., Allstate Ins. Co. v. Langston*, 655 So. 2d 91, 94 (Fla. 1995) ("Discovery of certain kinds of information may reasonably cause material injury of an irreparable nature. This includes 'cat out of the bag' material that could be used to injure another person or party outside the context of the litigation, and material protected by privilege, trade secrets, work product, or involving a confidential informant may cause such injury if disclosed); *see also, Am. Med. Sys., LLC v. MSP Recovery Claims, Series LLC*,

290 So. 3d 548 (Fla. 3d DCA 2019) ("[T]he lower court's non-final orders issued in all these pure bill of discovery actions are akin to the proverbial 'cat out of the bag' discovery orders that this Court has found can cause the requisite **irreparable harm** warranting the exercise of this Court's certiorari jurisdiction.")(emphasis added); *Coffey-Garcia v. S. Miami Hosp., Inc.*, 194 So. 3d 533 (Fla. 3d DCA 2016)(recognizing an appellate court has certiorari jurisdiction to quash an order that requires a party to disclose communications protected by the attorney-client privilege).

### (b) Subpoenas Issued by Civil Litigants, as in the State Court Proceeding, Do Not Appear in 26 U.S.C. § 6103(e)-Disclosure to Persons Having a Material Interest:

(1) In general, The return of a person shall, upon written request, be open to inspection by or disclosure to—

(A) in the case of the return of an individual—

(i) that individual,

(ii) the spouse of that individual if the individual and such spouse have signified their consent to consider a gift reported on such return as made one-half by him and one-half by the spouse pursuant to the provisions of section 2513; or

(iii) the child of that individual (or such child's legal representative) to the extent necessary to comply with the provisions of section 1(g);

(B) in the case of an income tax return filed jointly, either of the individuals with respect to whom the return is filed;

(C) in the case of the return of a partnership, any person who was a member of such partnership during any part of the period covered by the return;

(D) in the case of the return of a corporation or a subsidiary thereof—

(i) any person designated by resolution of its board of directors or other similar governing body,

(ii) any officer or employee of such corporation upon written request signed by any principal officer and attested to by the secretary or other officer,

(iii) any bona fide shareholder of record owning 1 percent or more of the outstanding stock of such corporation,

(iv)  if the corporation was an S corporation, any person who was a shareholder during any part of the period covered by such return during which an election under section 1362(a) was in effect, or

(v) if the corporation has been dissolved, any person authorized by applicable State law to act for the corporation or any person who the Secretary finds to have a material interest which will be affected by information contained therein;

(E) in the case of the return of an estate—

(i) the administrator, executor, or trustee of such estate, and

(ii) any heir at law, next of kin, or beneficiary under the will, of the decedent, but only if the Secretary finds that such heir at law, next of kin, or beneficiary has a material interest which will be affected by information contained therein; and

(F) in the case of the return of a trust—

(i)  the trustee or trustees, jointly or separately, and

(ii) any beneficiary of such trust, but only if the Secretary finds that such beneficiary has a material interest which will be affected by information contained therein.

The exceptions set forth in 26 U.S.C. § 6103 (e) involve circumstances where the party requesting the TRI has a material interest that will be affected by the information contained herein. Even assuming arguendo, that the Defendants may have a material interest in the TRI and that the TRI is relevant to the plaintiff's claim for liability, damages, actual or punitive, in the state court proceeding, that alone does not abrogate the statutory policy of non-disclosure. *See Choice Rest. Acquisition Ltd. v. Whitley, Inc.*, 816 So. 2d 1165, 1167 (Fla. 4th DCA 2002) (citing Fla. Stat. § 90.5055) ("Although information may be relevant, it does not follow

that relevancy trumps the accountant/client privilege set forth in section 90.5055,

*Fla. Stat.*, a court cannot justify finding a waiver of the privilege merely because

the information sought is needed by the opposing party to provide information

helpful to cross examination or for the defense of a cause of action.").

### (c) The Amount of Damages Allegedly Owed by Ali in the State Court Proceeding Can Be Proven Without Disclosing the Confidential and Privileged TRI of Non-Party Tax Payers.

In the Order dated January 6, 2025, this Court astutely admonishes:

> CFTAS and Tanoli, through RFB LLP, Miller, and Segal, are conducting discovery in the state court proceeding with the help of Lawgical, Russo, and Bauta pursuant to orders issued by the state court. (*E.g.*, Dkt. 1-1.) This discovery is presumably calculated to allow CFTAS to prosecute its claims against Ali and the other defendants in the state court proceeding. *See Genovese v. Provident Life & Accident Ins. Co.*, 74 So. 3d 1064, 1068 (Fla. 2011) ("Part of the purpose of discovery is to 'provide each party with all available sources of proof as early as possible to facilitate trial preparation.'" (quoting *Dodson v. Persell*, 390 So. 2d 704, 706 (Fla. 1980))). Although issuance of a TRO or preliminary injunction will likely impede the efforts to obtain discovery and thus to prosecute the claims…" (*See* Dkt. 6 at 4, 5).

These issues merit further discussion.

In the state court proceedings, the CFTAS and RFBLLP Defendants are

seeking damages against Ali for breach of contract, recission, fraudulent

inducement, punitive damages, and attorney's fees. The CFTAS and RFBLLP

Defendants have already engaged in extensive discovery and have shown the

amount of damages allegedly owed by Ali can be determined without the

disclosure of third parties confidential and privileged TRI. These Defendants engaged Richard M. Dotson ("Dotson"), CPA/ABV, CFF, as an expert witness to determine amounts alleged by Ali to CTFAS. Dotson prepared his Preliminary Expert Witness Report dated November 8, 2023, ("the Report"). *See* Exhibit H.

According to the Report, Dotson examined:

> [V]arious types of documentation such as deposit slips and checks, bank statements, tax returns, TaxWise reports, income statements and various agreements. Generally, in damages cases we request accounting records such as invoices, general ledgers, detailed accounts receivable records, cash receipts journals and digital accounting records (such as QuickBooks or other accounting software files). *Id*. at 5.

Based on the review of the foregoing, Dotson proffered the following in his Report[5]:

> 6. Plaintiff is due $806,704 for disgorgement for accounting and tax services rendered by Ali and AAA for the period from 4/9/2019 (day after date of closing referenced in line 15 below) to 5/31/2023 (last statement date we have been provided). This is for clients of Ali and/or AAA that were not CFTAS clients in 2019. This is the remedy requested for Counts IV, V, VIII, X, XI, XIII, and XVI.

> 7. Plaintiff is due $31,244 for lost profits for accounting and tax services rendered by Ali and AAA for the period from 4/9/2019 (day after date of closing referenced in line 15 below) to 5/31/2023 (last statement date we have been provided). This is for clients CFTAS had in 2019 that were taken by Ali and/or AAA. This is the remedy requested for Count III.

---

[5] Ali opposes and denies the calculus and methodology used by Dotson in his Report to determine liability and/or damages. The proffer of Dotson's report herein does not constitute an admission of liability or damages on behalf Ali in the state court proceeding, but rather shows proof of damages does not require the disclosure of Plaintiffs' TRI.

8. Plaintiff is due $1,300,000.00 for rescission of the Asset Purchase Agreement. This is the remedy requested for Count XX.

9. Plaintiff is due $837,948 for breach of contract of the Independent Contractor Agreement and the Asset Purchase Agreement. This is the remedy requested for Counts XI and XIII. Breach of Contract (The Asset Purchase Agreement).

*Id*. at 2, 3.

**Breach of Contract**

To prove damages for breach of contract, *e.g.,* covenant not to compete,

Dotson seemed to heavily rely on Ali's deposit information and bank statements:

> [W]e identified deposits of $261,968 from identifiable clients/payors. From this, we have deducted the $69,430 utilized in calculating lost profits in EXHIBIT D. This results in a disgorgement of $192,538 for those revenues. Our analysis also identified $160,249 in deposits from Merchant Services, $96,982 in net deposits from Square (estimated to be approximately $100,000 in total charges before fees), and $356,933 in unknown deposits where the payee was not able to be identified. The unknown deposits are included as they comprise amounts that were deposited into the AAA bank accounts or other bank accounts that had received client payments. These four categories totaled $806,704. *Id*. at 12.

Likewise, Dotson's report is void of any opinion that the privileged and

confidential TRI of third parties without notice is necessary to demonstrate Ali's

liability or damages owed by Ali. Dotson's report does not indicate that TRI is

needed to determine whether Ali breached the covenant not to compete. For

example, a tax return of a non-party would be unlikely to show whether Ali was

inside or outside the 50-mile radius when the tax return was prepared.

23

*Recission*

As to rescission damages, the objective is to undo the Asset Purchase Agreement and restore the parties to the former status quo. If CTFAS prevails, as the purchaser, CFTAS may recover the consideration paid ($1,300,000.00) and Ali, as the Seller, is entitled to return of the items purchased, *i.e.*, the tangible and intangible assets which were the subject of the Asset Purchase Agreement. The disclosure and inspection of confidential and privileged TRI is unnecessary to determine the amount of damages awarded under rescission. Accordingly, the Defendants will suffer no harm in this regard if this motion is granted.

*Attorneys' Fees*

Likewise, the disclosure and inspection of confidential and privileged TRI is also incongruent in seeking an award of attorney's fees, and the Defendants will suffer no harm if this motion is granted.

Finally, as argued *infra*, as a matter of law, the harm to Plaintiffs is irreparable. In the context of "accountant-client privilege" and "irreparable harm," it means that if Ali, a CPA, is forced to disclose confidential information shared by a client, it could significantly damage Ali's client's business interests' or reputation to a point where it cannot be easily repaired, essentially causing "irreparable harm" because the sensitive financial details are revealed to parties with whom they did not intend to share. Ali's clients have not sought disclosure of their privileged and

confidential TRI. The challenged order infringes upon third party rights to the confidentiality of their TRI. The order under review here is not narrowly tailored to the discovery of confidential and non-privileged relevant information as contemplated by the April 14, 2024, order.

The Plaintiffs have shown that the Defendants' pursuit of disclosing and inspecting confidential and privileged TRI of third-party taxpayers is superfluous and incongruent with the remedies sought in the state court proceeding. It necessarily follows that the Defendants will suffer minimal to no harm if this Court enters a temporary restraining order. Thus, the Court should find that the benefits of granting the Plaintiffs' injunctive relief to protect their legitimate interests and entering the relief set forth below outweighs any harm to Defendants such relief might cause.

### E. A Preliminary Injunction Is Not Contrary to the Public Interest.

An injunction preventing the Defendants from unlawfully inspecting, disseminating, transmitting any return or return information in violation of any provision of 26 U.S.C.§ 6103. Confidentiality of TRI is guaranteed under the Taxpayer Bills of Rights:

> Taxpayers have the right to expect that any information they provide to the IRS will not be disclosed unless authorized by the taxpayer or by law. Taxpayers have the right to expect appropriate action will be taken against employees, return

preparers, and others who wrongfully use or disclose taxpayer
return information.[6]

This provision is codified by 26 U.S.C.§ 6103. The issuance of a preliminary
injunction in the enforcement of Plaintiffs' rights to confidential TRI is not contrary
to the public interest. In fact, the opposite is true. The issuance of a preliminary
injunction will serve the public interests by protecting thousands of taxpayers like
the named Plaintiff in this action.

**WHEREFORE**, the Plaintiff, Ansari Mohamad, moves for entry of a
Temporary Restraining Order and Preliminary Injunction enjoining the
Defendants from inspecting, disseminating, transmitting any return or return
information with respect to the unlawful disclosure of his private tax return(s) in
violation of any provision of 26 U.S.C.§§ 6103 and 7431.

## CERTIFICATION

The undersigned hereby certifies, pursuant to Rule 65(b)(1)(B), Fed.R.Civ.P.,
the efforts to give notice and the reasons why prior notice is not required as
follows: On December 12, 2024, the Defendants were previously made aware that
they were disseminating confidential taxpayer information via email. *See* Exhibit
D. On December 12, 2024, the undersigned filed a Response to a motion to compel
advising the RFBLLP Defendants that the dissemination of the over 12,000 records,

---

[6] *See* IRS, *Taxpayer Bill of Rights: Confidentiality*, https://www.irs.gov/taxpayer-bill-of-
rights#confidentiality (last visited January 14, 2025)

including 100,000 pages of was confidential and privileged taxpayer records. *See*
Exhibit E. On December 14, 2024, a Motion for Protective Order was filed in the
state proceedings to which the RFBLLP Defendants objected. *See* Exhibit F. The
Defendant(s) refused to acknowledge that the TRI in the possession of Ali was
privileged. *See* Exhibit G. The Defendants know or should know that their conduct
is illegal. The Defendants are knowingly engaging in illegal conduct by engaging
in dishonesty, deceit, and misrepresentation by accessing and attempting to access
the privileged TRI of the Plaintiff, and others similarly situated.

The underlying Verified Class Action Complaint was filed on December 27,
2024. A copy of this Emergency Motion will be made available to the Defendants
as soon as it is filed and additionally will be served on the Defendants via email
by the undersigned at the time of filing.

Dated: January 15, 2025

Respectfully submitted,

**J. BRIAN PHILLIPS, P.A. ATTORNEY AT LAW**

<u>/s/ Jason Brian Phillips, Esquire</u>
Jason Brian Phillips, Esq.
Florida Bar No: 0089841
P.O. Box 621176
Orlando, FL 32862-1176
Tel. (407) 493-7183
jason@jbrianphillipsesq.com
celina.reis@jbrianphillipsesq.com
Trial Counsel for the Plaintiff,
Ansari Mohamad

27

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANSARI MOHAMAD, on behalf of
himself and others similarly
situated,

        Plaintiffs,

v.

LAWGICAL INSIGHT, LLC,
ANDREW BAUTA,
MICHAEL RUSSO,
ROTTENSTREICH FARLEY
BRONSTEIN FISHER
POTTER HODAS LLP,
MELIZA MILLER,
RICHARD I. SEGAL,
CENTRAL FLORIDA TAX AND
ACCOUNTING, INC, and
ANEES AHMAD TANOLI,

        Defendants.

_____ /

## ORDER GRANTING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

Having considered the Verified Complaint and Plaintiff's Motion for a

Temporary Restraining Order ("TRO") pursuant to Fed. R. Civ. P. 65, the parties'

arguments and submissions related thereto, the Court finds that Plaintiff has met

the requirements for entry of a temporary restraining order, including that

Plaintiffs have a likelihood of success against Defendants pursuant to 26 U.S.C.§
7431 *et. seq.*

The Court finds that Plaintiffs have a protectable interest in its statutorily
provided confidential and privileged tax return information Further, the Court
concludes the Plaintiffs will suffer irreparable injury due the lack of confidentiality
in his confidential and privileged tax return information and have no adequate
remedy at law in the absence of a TRO as the preliminary injunction issues in this
action proceed.

In addition, the Court finds that the benefits of granting Plaintiffs' injunctive
relief to protect their legitimate interests and entering the relief set forth below
outweighs any harm to Defendants such relief might cause. Finally, the issuance
of a TRO will serve the public interest in the protection privileged and confidential
tax return information.

Accordingly, IT IS HEREBY ORDERED THAT:

A. The Temporary Restraining Order Motion is GRANTED.

B. Pending a hearing and determination of Plaintiffs' motion for a preliminary
injunction, or upon further Order of the Court:

C. Each Defendant, and any person acting in concert with him, whether in
response to a subpoena or otherwise, with actual notice of this Order, is
prohibited from discovering, disseminating, inspecting, or disclosing any of

Plaintiffs' privileged and confidential tax return information, or using such information to benefit himself or any third party;

D.  Defendants shall participate in a forensic remediation process, conducted by a Court-appointed forensic neutral and at Plaintiffs' initial expense, with the final assessment of expense to be determined later. This is to ensure that all of the named Plaintiff's information, and others similarly situated, is returned to Plaintiff and/or securely removed from Defendants' possession, custody, or control and returned to Plaintiff; and

E.  Defendants shall not destroy, alter, transmit or move (except in compliance with the Court's orders below) any documents, in whatever form, which may contain or reflect Plaintiffs' tax return information.

F.  Plaintiffs shall deposit with the Clerk of the Court $100.00 as security, pursuant to Fed. R. Civ. P. 65(c), within seven (7) days of this Order.

G.  Plaintiffs shall serve each Defendant by Federal Express (no signature required) and Email a copy of (a) this Order, (b) the summons, (c) the complaint; (d) each motion, brief, affidavit, exhibit, proposed order, or other paper submitted to support the motion for the temporary restraining order; (e) each additional paper the moving party will submit to support converting the temporary restraining order into a preliminary injunction;

and (f) a notice of any hearing upon Defendant or his counsel within 24 hours, filing proof of service when served.

H. This matter is set for hearing before the undersigned on _____, at _____ am/pm in the United States Courthouse, 401 West Central Boulevard, Orlando, Florida 32801.

I. This Order will expire at _____ p.m. on _____, 2025.

DONE AND ORDERED at Orlando, Florida, at _____.

# EXHIBIT A

Filing # 196449215 E-Filed 04/18/2024 07:37:49 AM

IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT IN
AND FOR ORANGE COUNTY,
FLORIDA

GENERAL         JURISDICTION
DIVISION

CASE NO. 2021-CA-011761-O

CENTRAL FLORIDA TAX AND ACCOUNTING
SERVICES, INC., a Florida corporation,

      Plaintiff,

v.

AKBAR A. ALI, an individual, A.A. ALI, CPA, P.A.,
a Florida corporation, MALIKA ALI, an individual,
and JBARA CONSULTING, LLC, a Florida Limited
Liability Company,

      Defendants.

_____/

## AGREED ORDER REGARDING FORENSIC EXAMINATION

THIS MATTER comes before the Court on its March 18, 2024 Orders on

Plaintiff's Omnibus Motion to Compel and Plaintiff's Motion to Compel

Compliance with Court Order, for Sanctions and an Adverse Inference at Trial (the

"March 18 Discovery Orders"), specifically as to the Court's order for a third-party

to conduct a forensic examination of Defendants, Akbar A. Ali and A.A. Ali CPA,

P.A.'s ("Defendants") computer(s) and program(s) (the "Forensic Examination"),

and upon the parties' agreement as to parameters and search protocols for the



Forensic Examination, and the Court being otherwise fully informed, it is hereby
ORDERED and ADJUDGED that:

1.    The parties have mutually selected and agreed upon Lawgical Insight
to perform the Forensic Examination (the "Forensic Examiner").

2.    The Forensic Examiner's fees and costs shall be borne 50/50 by
Plaintiff, Central Florida Tax and Accounting Services, Inc. ("CFTAS") and
Defendants, (CFTAS and Defendants are referred to herein as the "Parties"), with
CFTAS to cover costs associated with travel from Miami to Defendants' office
located at 2277 Lakeville Road, Apoka, Florida 32703.

3.    The purpose and scope of the Forensic Examination is limited to a
search of all documents responsive to Plaintiff's discovery requests as set forth in
the March 18 Discovery Orders.

4.    The Forensic Examiner and the Forensic Examination will be governed
by the terms of this Order.

A. **Collection of the Forensic Mirror-Image**

5.    At a mutually agreed upon time ("the Collection Date"), but no later
than May 15, 2024, ALI will make his computer(s) and other electronic storage
devices ("Computer Devices[1]") available to the Forensic Examiner, including all

---

[1] Computer Devices includes all computers and other electronic storage devices
utilized by Defendants since April 1, 2019 through the present.

passwords, keys, or other credentials needed to access any applications and/or programs located on Defendants' Computer Devices, to enable the Forensic Examiner to make and collect a forensic mirror-image of these devices (the "Image").

6.    The Parties shall cooperate with the Forensic Examiner insofar as promptly supplying non-privileged information and passwords and credentials required to access and decrypt data on the Image and accurately interpret same. No passwords or credentials obtained from the image or furnished by the parties will be used by the Examiner to access data other than found on the Image.

7.    During collection of the Image, the Forensic Examiner will access Defendants' network to identify all devices, including network attached storage, cloud storage accounts, and/or productivity accounts, to identify all other devices[2] and sources containing electronically stored information ("ESI") to be collected as part of the Image. If other devices and sources are identified, Defendants shall make same available on the Collection Date.

8.    If the Forensic Examiner is not able to identify use of any cloud storage or productivity accounts during collection of the Image, but does identify same during the creation of the Production (defined and detailed below), the Forensic

_____

[2] All other devices includes without limitation desktop and laptop computers, tablets, and smartphones.

3

Examiner shall provide written notice via email to counsel for CFTAS and counsel for Defendants. Within two (2) business days of said notice, Defendants shall provide the Forensic Examiner with access to the cloud or productivity accounts so that a forensic mirror-image may be collected as part of the Image.

**B. Search Protocols**

9. After the Image is collected, the Forensic Examiner will use and apply the following parameters to separate the data and documents to create the forensic production to be provided to the Parties (the "Production"):

   a. Search for all tax filings, including returns and extensions, prepared and/or submitted by ALI, and any documents, records, and data relating to such filings created on or after April 8, 2019;

   b. Search for all documents, records, and data, created on or after April 8, 2019, that contain reference to EFINs 594511, 594831, and 590549;

   c. Search for all documents, records, logs, reports, and data, created on or after April 8, 2019, from the TaxWise software/program used by ALI;

   d. Generate all reports necessary within the TaxWise software/program, desktop and online versions, to locate and obtain all of the records in subparagraphs (a), (b) and (c) above;

   e. Search for all documents, records, logs, reports, and data, created on or after April 8, 2019, related to any accounting and/or bookkeeping

4

software, including but not limited to Sage 50 Accounting ("Sage",
formerly Peachtree) and Quickbooks;

f.  Search for all documents, records, and data, created on or after April 8,
    2019, relating to accounting and/or bookkeeping records created or
    stored outside of an accounting and/or bookkeeping software, including
    but not limited to financial statements, profit and loss statements,
    general ledgers, balance sheets, spread sheets, accounting books,
    records, work papers, notes, calculations, adjusted journal entries, price
    sheets, price lists, accounts receivables, accounts payable, and customer
    invoices

g.  Search for all documents, records, and data, relating to aged receivables
    created from January 1, 2019 through April 8, 2019; and

h.  Generate all reports necessary within Sage, Quickbooks and all other
    accounting and/or bookkeeping software utilized by Defendants, to
    locate and obtain all of the records in subparagraphs (e), (f) and (g)
    above.

10.    The Forensic Examiner will also evaluate the Image for instances of
applications employed to alter file metadata and/or delete/erase files or data from
applications or programs. Should the Forensic Examiner find evidence of such
applications related to the documents, records, and data outlined above, it will be

included as part of the Production.

11.    The documents, records, and data resulting from the aforementioned searches and reports in paragraphs 9 and 10 shall be separated from the Image and the Production placed onto thumb-drives to be delivered to Plaintiff and Defendant. The Forensic Examiner will store the Production and the Image in its protected network for three (3) months after delivery to the Parties, and upon the expiration of the three (3) month period will delete the Production and the Image and any copies thereof in its possession.

12.    The Production shall include the documents and records in their native, desktop, and/or online form, and contain all audit trails that provide information about the transactions, including when each transaction was recorded, changed, or deleted.

### C. Confidentiality and Privilege

13.    To the extent the Forensic Examiner has direct or indirect access to information protected by the attorney-client privilege through the creation of the Image and/or the Production, such access will not result in a waiver of the attorney-client privilege.

14.    The Forensic Examiner shall not use the devices and storage media tendered for examination, or any information or credentials derived from same, to access any electronic information not present on the devices and storage media when

tendered for examination.

DONE AND ORDERED in Orange County, Florida on

04/18/2024 07:20:29

e$igned by John Jordan /04/18/2024 07:20:29 AVXXIvek

John E. Jordan, Circuit Judge

cc:
Mark Van Valkenburgh, Esq., mvanvalkenburgh@orlandolaw.net
Steven Sambol, Esq., ssambol@orlandolaw.net
Richard I. Segal, Esq., rich@segalzuckerman.com
Ana H. Barban, Esq., abarban@RFBllp.com
Meliza Y. Miller, Esq., mmiller@RFBllp.com
Micayla Roth, Esq., mroth@RFBllp.com

# EXHIBIT B

Filing # 213536434 E-Filed 12/27/2024 10:05:20 AM

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

GENERAL JURISDICTION
DIVISION

CASE NO. 2022-CA-007934-O
Consolidated into
CASE NO. 2021-CA-011761-O

CENTRAL FLORIDA TAX AND ACCOUNTING
SERVICES, INC., a Florida corporation,

     Plaintiff,

v.

AKBAR A. ALI, an individual, A.A. ALI, CPA, P.A.,
a Florida corporation, MALIKA ALI, an individual,
and JBARA CONSULTING, LLC, a Florida Limited
Liability Company,

     Defendants.

_____/

## ORDER GRANTING PLAINTIFF'S AMENDED MOTION TO COMPEL DEFENDANTS, AKBAR A. ALI AND A.A. ALI CPA, P.A.'s COMPLIANCE WITH AGREED ORDER REGARDING FORENSIC EXAMINATION AND FOR SANCTIONS AND ORDER TO SHOW CAUSE

This cause came before the Court on December 18, 2024, for hearing on

Plaintiff's Amended Motion to Compel Defendants, Akbar A. Ali and A.A. Ali

CPA, P.A.'s Compliance with Agreed Order Regarding Forensic Examination and

for Sanctions ("the Motion"), and the Court having reviewed the Motion, the



EXHIBIT

B

response in opposition to the Motion, and the record, having heard argument of counsel, and being otherwise fully apprised in the premises, it is thereupon:

ADJUDGED as follows:

1.    The Motion is GRANTED.

2.    The Court's Order on Plaintiff's Omnibus Motion to Compel and Order on Plaintiff's Motion to Compel Compliance With Court Order, for Sanctions and an Adverse Inference at Trial, both entered on March 18, 2024 (the "March 18 Orders"), ordered a forensic examination of the Defendants' computers and programs.

3.    The Agreed Order Regarding Forensic Examination, entered on April 18, 2024 ("Agreed Order"), set forth the protocol for the forensic examination.

4.    On August 30, 2024, the Court's Order on Motion for Status Conference, Leave to Conduct Additional Discovery, and Extension of Pretrial Deadlines, directed the forensic examination to proceed and reiterated that Defendants shall pay for 50% of the costs associated with the forensic examiner.

5.    Defendants, AKBAR A. ALI and A.A. ALI, CPA, P.A. ("Defendants"), have not fully complied with the Court's orders and have impeded the court-ordered forensic examination.

6.    Within five (5) business days from the date of this Order, Defendants shall produce for forensic examination all actual computer devices utilized by the

Defendants which contain all sources of discoverable electronically stored information ("ESI") as contemplated by the March 18 Orders and the Agreed Order.

7.     Within five (5) business days from the date of this Order, Defendants shall produce all login credentials, passwords and other information necessary for the forensic examiner to access the ESI for all accounts described on **Exhibit "A"** and for all other undisclosed sources of discoverable ESI.

8.     Should Defendants fail to comply with this Order, Defendants shall appear in person before the presiding judge of the Business Court Division of the Ninth Judicial Circuit, at a rule to show cause hearing on **March 11, 2025 at 8:30 a.m.** at 425 North Orange Avenue, Hearing Room 1700.01, Orlando, Florida 32801 to present evidence why they should not be held in contempt of court. Plaintiff shall also file a notice of Non-Compliance with a copy provided to this Court via email.

9.     Subpoenas to the following nonparties identified on **Exhibit "A"** shall be issued forthwith: A) ShareFile; B) Microsoft; C) NameSecure; D) Google; E) Apple; F) TheSageNext; G) AllDirectCFL.com; H) GoTo Communications, Inc.; and I) Tej Prakash.

10.     The Court reserves ruling on an award of attorneys' fees and costs to the Plaintiff, which include without limitation the cost of the forensic examination. Until entry of such order, the parties shall continue to equally share the cost of the forensic examination in accordance with the Court's prior orders.

**DONE AND ORDERED** in Orlando, Orange County, Florida on

*[signature]*

JOHN E. JORDAN, CIRCUIT JUDGE

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was filed with the Clerk of the Court by using the Florida Courts E-Filing Portal System. Accordingly, a copy of the foregoing is being served on this day to all attorney(s)/interested parties identified on the ePortal Electronic Service list, via transmission of Notices of Electronic Filing generated by the ePortal System.

Cathy Stephens, Judicial Assistant to Judge John E. Jordan

**If you are a person with a disability who needs any accommodations in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Human Resources, Orange County Courthouse, 425 N. Orange Avenue, Suite 510, Orlando, Florida, (407) 836-2302, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

4

# EXHIBIT "A"

A. **ShareFile**

Any and all accounts associated with the aaalicpa.com domain, Allan Ali, or any known affiliated entities—including without limitation allan@aaalicpa.com and allanlicpa@gmail.com.

B. **Microsoft**

1. "aaalicpa.com" | Organization/Tenant ID: C18d057c-f6c3-4226-943a-45bb09dac87e

2. **allan@aaalicpa.com**; this is a personal account within Microsoft that is different from the business account, above.

3. **dbrowntbsfl@hotmail.com**; this is the account that was registered to the Acer at the time of the collection. We note that in the most recent filing from Mr. Ali, the screenshot of the IP address shows that Mr. Ali still using this account.

4. Any and all accounts associated with the aaalicpa.com domain, Allan Ali, or any known affiliated entities—including without limitation allan@aaalicpa.com and allanlicpa@gmail.com

C. **NameSecure**

This is the domain registrar for aaalicpa.com. During the time Mr. Ali had his environment wiped, and while we had limited access, there may have been a window where the MX (mail exchange) was changed to NameSecure and there may be attendant mailboxes with responsive ESI.

D. **Google**

1. allanlicpa@gmail.com

2. allan@aaalicpa.com

3. alldirectcflsend@gmail.com (at minimum, request for subscriber information will clarify ownership)

4. sharp5778@gmail.com          (at minimum, request for subscriber
   information will clarify ownership)

5. Any and all accounts associated with the aaalicpa.com domain, Allan Ali,
   or any known affiliated entities—including without limitation
   allan@aaalicpa.com and allanlicpa@gmail.com.

E. **Apple**

   1. allan@aaalicpa.com

   2. allanlicpa@gmail.com

   3. allan1322@gmail.com

   4. Any and all accounts associated with the aaalicpa.com domain, Allan Ali,
      or any known affiliated entities—including without limitation
      allan@aaalicpa.com and allanlicpa@gmail.com.

F. **TheSageNext**

   1. ACPA.thesagenext.com

   2. Any and all accounts associated with the aaalicpa.com domain, Allan Ali,
      or any known affiliated entities—including without limitation
      allan@aaalicpa.com and allanlicpa@gmail.com

G. **Tax1099**

Any and all accounts associated with the aaalicpa.com domain, Allan Ali, or any
known affiliated entities—including without limitation allan@aaalicpa.com and
allanlicpa@gmail.com

H. **AllDirectCFL.com**

Any and all accounts associated with the aaalicpa.com domain, Allan Ali, or any
known affiliated entities—including without limitation allan@aaalicpa.com and
allanlicpa@gmail.com

I. **GoTo Communications, Inc.:**

Customer ID: CN-069068-1912

Any and all accounts associated with the aaalicpa.com domain, Allan Ali, or any known affiliated entities—including without limitation allan@aaalicpa.com and allanlicpa@gmail.com

J. **Tej Prakash**

Any and all services, communications, invoices, or accounts associated with the aaalicpa.com domain, Allan Ali, or any known affiliated entities—including without limitation allan@aaalicpa.com and allanlicpa@gmail.com.

**EXHIBIT C**

 Outlook

## Re: CFTAS v. Ali - FORENSIC EXAMINATION - REQUEST FOR PRIOR PRODUCTIONS

**From** Andrew Bauta <abauta@lawgicalinsight.com>

**Date** Wed 12/4/2024 3:41 PM

**To** Richard I. Segal <rsegal@rfbllp.com>; Meliza Miller <mmiller@rfbllp.com>; Daniel Thompson <dthompson@lawgicalinsight.com>; Kathleen M. Shaw <kshaw@rfbllp.com>

**Cc** Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>; Micayla Roth <MRoth@rfbllp.com>; 'Anthony Legendre' <anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com <michael.paralegal.legendre@gmail.com>; vanessa.paralegal.legendre@gmail.com <vanessa.paralegal.legendre@gmail.com>; Angela Beasley <angie.beasley@jbrianphillipsesq.com>; Michael Russo <mrusso@lawgicalinsight.com>

It's about 12,000 records totaling just under 100,000 pages. The file size as it sits in our review database is just under 7GB. The exact count / size will vary somewhat based on how we produce (i.e. standard production versus loose files).

This does *not* include additional relevant data (such as audit logs, system files, file artifacts, etc.) that were part of our forensic analysis, but which were not included in the Order's search parameters as part of this production.

Respectfully,

**Andrew Bauta, Esq. | COO**
abauta@lawgicalinsight.com
**Office**: 786-687-4075 | **Mobile**: 305-484-6695
**Fax**: 786-685-2061
2 South Biscayne Blvd. Suite 1600
Miami, FL 33131
www.lawgicalinsight.com

---

**From:** Richard I. Segal <rsegal@rfbllp.com>
**Sent:** Wednesday, December 4, 2024 1:59 PM
**To:** Andrew Bauta <abauta@lawgicalinsight.com>; Meliza Miller <mmiller@rfbllp.com>; Daniel Thompson <dthompson@lawgicalinsight.com>; Kathleen M. Shaw <kshaw@rfbllp.com>
**Cc:** Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>; Micayla Roth <MRoth@rfbllp.com>; 'Anthony Legendre' <anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com
<michael.paralegal.legendre@gmail.com>; vanessa.paralegal.legendre@gmail.com <vanessa.paralegal.legendre@gmail.com>; Angela Beasley
<angie.beasley@jbrianphillipsesq.com>; Michael Russo <mrusso@lawgicalinsight.com>
**Subject:** RE: CFTAS v. Ali - FORENSIC EXAMINATION - REQUEST FOR PRIOR PRODUCTIONS

How big is the production?  What would be the approximate pages or bates range?

Thanks

Richard I. Segal, Esq.
**Rottenstreich Farley Bronstein Fisher Potter Hodas LLP**
201 S. Biscayne Blvd, Suite 840
Miami, FL 33131
305-921-1880 – Main
305-921-1871 – Direct
305-761-0326 – Cell
rsegal@rfbllp.com

*This message and any attachments may contain confidential or privileged information and is only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the sender by return email and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachment is prohibited and may be unlawful.*
*******************

*Any Federal tax advice contained herein is not intended or written to be used, and cannot be used by you or any other person, for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Code. This disclosure is made in accordance with the rules of the Treasury Department Circular 230 governing standards of practice before the Internal Revenue Service. Any written statement contained herein relating to any Federal tax transaction or matter may not be used by any person without the express prior written permission in each instance of a partner of this firm to support the promotion or marketing of or to recommend any Federal tax tran...*

**From:** Andrew Bauta <abauta@lawgicalinsight.com>
**Sent:** Wednesday, December 4, 2024 1:28 PM
**To:** Meliza Miller <mmiller@rfbllp.com>; Daniel Thompson <dthom......n M. Shaw <kshaw@rfbllp.com>

**EXHIBIT C**

Cc: Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>; Micayla Roth <MRoth@rfbllp.com>; 'Anthony Legendre' <anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com; vanessa.paralegal.legendre@gmail.com; Angela Beasley <angie.beasley@jbrianphillipsesq.com>; Richard I. Segal <rsegal@rfbllp.com>; Michael Russo <mrusso@lawgicalinsight.com>
**Subject:** Re: CFTAS v. Ali - FORENSIC EXAMINATION - REQUEST FOR PRIOR PRODUCTIONS

***First***, we have processed the prior productions from the link last week to attempt to de-dupe the productions against the data we've successfully collected to date. We note that the prior productions do not contain load files with attendant original metadata, and many documents were likely not produced as they were maintained in the ordinary course of business (e.g. multiple separate .pdfs are joined into a new, single .pdf). We do not opine here on this issue. Instead, we note the issue to explain that the deduplication process had limited results, and the parties should expect duplicate records—at least in content, if not in form.

For example, if a series of ten (10) tax records were previously produced as a long, single .pdf file, this aggregate file will not necessarily dedupe against each of the ten (10) original, individual tax records.

***Second***, in anticipation of our production to the parties, we ask for clarity on the deliverable. Typically, we would create a Bates-labeled production with load files to preserve as much meta-data as reasonable, as well as facilitate review (e.g. make the records searchable in a legal review platform like Relativity). However, such a production requires a review platform to properly use. We are not sure if either party is using a legal review platform (e.g. Relativity) in this case. If there is interest in using a review platform, and a party does not otherwise have one available, we can suggest some low-cost options. Please let us know if we should _produce in this standard format_.

If, instead, the parties want _a loose-file production_—to include natives—we can prepare that, instead.

In either case, is there _a preferred Bates label suffix / range_ we should use / continue? Otherwise, we will start with LI-00000001.

***Third***, we expect to finalize our analysis of the existing state of devices and accounts by Friday, with our report published to the parties by the middle of next week.

Respectfully,

**Andrew Bauta, Esq. | COO**
abauta@lawgicalinsight.com
**Office:** 786-687-4075 | **Mobile:** 305-484-6695
**Fax:** 786-685-2061
2 South Biscayne Blvd. Suite 1600
Miami, FL 33131
www.lawgicalinsight.com

---

**From:** Meliza Miller <mmiller@rfbllp.com>
**Sent:** Wednesday, December 4, 2024 11:41 AM
**To:** Daniel Thompson <dthompson@lawgicalinsight.com>; Kathleen M. Shaw <kshaw@rfbllp.com>
**Cc:** Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>; Micayla Roth <MRoth@rfbllp.com>; 'Anthony Legendre' <anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com <michael.paralegal.legendre@gmail.com>; vanessa.paralegal.legendre@gmail.com; Angela Beasley <angie.beasley@jbrianphillipsesq.com>; Richard I. Segal <rsegal@rfbllp.com>; Michael Russo <mrusso@lawgicalinsight.com>; Andrew Bauta <abauta@lawgicalinsight.com>
**Subject:** RE: CFTAS v. Ali - FORENSIC EXAMINATION - REQUEST FOR PRIOR PRODUCTIONS

Lawgical Insight Team,

May we have an update on the ETA for the preliminary findings?

Thank you,

Meliza Miller, Esq.
Attorney At Law
**Rottenstreich Farley Bronstein Fisher Potter Hodas LLP**
515 N Flagler Drive Suite 800
West Palm Beach, FL 33401
561-832-1005 – tel
mmiller@rfbllp.com

_This message and any attachments may contain confidential or privileged information and is only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the sender by return email and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachment is prohibited and may be unlawful._
*************************************************************************************************

Any Federal tax advice contained herein is not intended or written to be used, and cannot be used by you or any other person, for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Code. This disclosure is made in accordance with the rules of the Treasury Department Circular 230 governing standards of practice before the Internal Revenue Service. Any written statement contained herein relating to any Federal tax transaction or matter may not be used by any person without the express prior written permission in each instance of a partner of this firm to support the promotion or marketing of or to recommend any Federal tax transaction(s) or matter(s) addressed herein.

**From:** Daniel Thompson <dthompson@lawgicalinsight.com>
**Sent:** Monday, November 25, 2024 12:39 PM
**To:** Kathleen M. Shaw <kshaw@rfbllp.com>
**Cc:** Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>; Micayla Roth <MRoth@rfbllp.com>; 'Anthony Legendre' <anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com; vanessa.paralegal.legendre@gmail.com; Angela Beasley <angie.beasley@jbrianphillipsesq.com>; Richard I. Segal <rsegal@rfbllp.com>; Michael Russo <mrusso@lawgicalinsight.com>; Andrew Bauta <abauta@lawgicalinsight.com>; Meliza Miller <mmiller@rfbllp.com>
**Subject:** Re: CFTAS v. Ali - FORENSIC EXAMINATION - REQUEST FOR PRIOR PRODUCTIONS

Confirming successful receipt of production documents.

Thank you,

**Daniel J. Thompson | eDiscovery Specialist**
dthompson@lawgicalinsight.com
**Office:** 786-687-4076
**Fax:** 786-685-2061
2 South Biscayne Blvd. Suite 1600
Miami, FL 33131
www.lawgicalinsight.com

**From:** Daniel Thompson <dthompson@lawgicalinsight.com>
**Sent:** Monday, November 25, 2024 9:10 AM
**To:** Kathleen M. Shaw <kshaw@rfbllp.com>
**Cc:** Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>; Micayla Roth <MRoth@rfbllp.com>; 'Anthony Legendre' <anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com <michael.paralegal.legendre@gmail.com>; vanessa.paralegal.legendre@gmail.com <vanessa.paralegal.legendre@gmail.com>; Angela Beasley <angie.beasley@jbrianphillipsesq.com>; Richard I. Segal <rsegal@rfbllp.com>; Michael Russo <mrusso@lawgicalinsight.com>; Andrew Bauta <abauta@lawgicalinsight.com>; Meliza Miller <mmiller@rfbllp.com>
**Subject:** Re: CFTAS v. Ali - FORENSIC EXAMINATION - REQUEST FOR PRIOR PRODUCTIONS

Good morning, Kathleen.

Here is a link to our shared file repository where you can upload the productions.

CFTAS v Ali - Prior Productions Upload

Please let me know if you have any questions or trouble accessing the link.

Thank you,

**Daniel J. Thompson | eDiscovery Specialist**
dthompson@lawgicalinsight.com
**Office:** 786-687-4076
**Fax:** 786-685-2061
2 South Biscayne Blvd. Suite 1600
Miami, FL 33131
www.lawgicalinsight.com

**From:** Kathleen M. Shaw <kshaw@rfbllp.com>
**Sent:** Saturday, November 23, 2024 4:12 PM
**To:** Daniel Thompson <dthompson@lawgicalinsight.com>
**Cc:** Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>; Micayla Roth <MRoth@rfbllp.com>; 'Anthony Legendre' <anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com <michael.paralegal.legendre@gmail.com>; vanessa.paralegal.legendre@gmail.com <vanessa.paralegal.legendre@gmail.com>; Angela Beasley <angie.beasley@jbrianphillipsesq.com>; Richard I. Segal <rsegal@rfbllp.com>; Michael Russo <mrusso@lawgicalinsight.com>; Daniel Thompson

<dthompson@lawgicalinsight.com>; Andrew Bauta <abauta@lawgicalinsight.com>; Meliza Miller <mmiller@rfbllp.com>
**Subject:** RE: CFTAS v. Ali - FORENSIC EXAMINATION - REQUEST FOR PRIOR PRODUCTIONS

Daniel, the defendants' productions total about 2-1/2 GB of data. If you could send me a link from your sharefile, I will upload the data for you to review. Thanks.


Kathleen M. Shaw
Paralegal
**Rottenstreich Farley Bronstein Fisher Potter Hodas LLP**
201 S. Biscayne Blvd, Suite 840
Miami, FL 33131
305-921-1878 – tel
kshaw@rfbllp.com

*This message and any attachments may contain confidential or privileged information and is only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the sender by return email and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachment is prohibited and may be unlawful.*
*****************************************************************************************************
*Any Federal tax advice contained herein is not intended or written to be used, and cannot be used by you or any other person, for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Code. This disclosure is made in accordance with the rules of the Treasury Department Circular 230 governing standards of practice before the Internal Revenue Service. Any written statement contained herein relating to any Federal tax transaction or matter may not be used by any person without the express prior written permission in each instance of a partner of this firm to support the promotion or marketing of or to recommend any Federal tax transaction(s) or matter(s) addressed herein.*

**From:** Andrew Bauta <abauta@lawgicalinsight.com>
**Sent:** Friday, November 22, 2024 5:26 PM
**To:** Meliza Miller <mmiller@rfbllp.com>
**Cc:** Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>; Kathleen M. Shaw <kshaw@rfbllp.com>; Micayla Roth <MRoth@rfbllp.com>; 'Anthony Legendre' <anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com; vanessa.paralegal.legendre@gmail.com; Angela Beasley <angie.beasley@jbrianphillipsesq.com>; Richard I. Segal <rsegal@rfbllp.com>; Michael Russo <mrusso@lawgicalinsight.com>; Daniel Thompson <dthompson@lawgicalinsight.com>
**Subject:** Re: CFTAS v. Ali - FORENSIC EXAMINATION - REQUEST FOR PRIOR PRODUCTIONS


@Meliza Miller understood.

We have not heard back regarding transferring the prior productions (last email snipped below):

> To: Meliza Miller <mmiller@rfbllp.com>                                                                                    Mon 11/4/2024 1:30 PM
> Cc: Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>; Kathleen M. Shaw <kshaw@rfbllp.com>; +8 others
>
> PDFs with attendant load files or cross-reference sheets? That is, with the linked metadata for the PDFs such as Beg(in) Bates, End Bates, File Name, File Path, etc.?
>
> Respectfully,

We have a couple of options w/r/t this dataset.

**First**, we can forgo reasonable efforts to dedupe against the prior productions. So we'd just produce whatever we have found that is responsive to the protocol, without making efforts to ensure that it has *not* been previously produced. This is faster and cheaper. In which case, I think we could get the report out by Friday of next week. Thanksgiving may push it to Monday, but we'd do our best. And we should be able to get our production to the parties out the week after Thanksgiving. With the caveat that we are in trial that week; currently only scheduled for one day of testimony.

**Second**, we can wait for the dedupe. How long this takes will depend on the quality of the prior productions (i.e. the questions from the above email snippet). If there is no linked metadata, that dedupe process will take longer. We'd finish the report a few days after the dedupe, with production about a week after that.

Respectfully,



**Andrew Bauta, Esq. |** COO
abauta@lawgicalinsight.com
**Office:** 786-687-4075 **| Mobile:** 305-484-6695
**Fax:** 786-685-2061
2 South Biscayne Blvd. Suite 1600
Miami, FL 33131
www.lawgicalinsight.com

**From:** Meliza Miller <mmiller@rfbllp.com>
**Sent:** Friday, November 22, 2024 8:43 AM
**To:** Andrew Bauta <abauta@lawgicalinsight.com>
**Cc:** Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>; Kathleen M. Shaw <kshaw@rfbllp.com>; Micayla Roth <MRoth@rfbllp.com>; 'Anthony Legendre' <anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com <michael.paralegal.legendre@gmail.com>; vanessa.paralegal.legendre@gmail.com <vanessa.paralegal.legendre@gmail.com>; Angela Beasley <angie.beasley@jbrianphillipsesq.com>; Richard I. Segal <rsegal@rfbllp.com>; Michael Russo <mrusso@lawgicalinsight.com>; Daniel Thompson <dthompson@lawgicalinsight.com>
**Subject:** RE: CFTAS v. Ali - FORENSIC EXAMINATION - REQUEST FOR PRIOR PRODUCTIONS

Good Morning,

We are requesting a preliminary written report, which also reflects what remains outstanding and what Mr. Ali has failed to provide access to.

Would you please also provide an eta?

Thank you,


Meliza Miller, Esq.
Attorney At Law
**Rottenstreich Farley Bronstein Fisher Potter Hodas LLP**
515 N Flagler Drive Suite 800
West Palm Beach, FL 33401
561-832-1005 – tel
mmiller@rfbllp.com

*This message and any attachments may contain confidential or privileged information and is only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the sender by return email and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachment is prohibited and may be unlawful.*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Any Federal tax advice contained herein is not intended or written to be used, and cannot be used by you or any other person, for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Code. This disclosure is made in accordance with the rules of the Treasury Department Circular 230 governing standards of practice before the Internal Revenue Service. Any written statement contained herein relating to any Federal tax transaction or matter may not be used by any person without the express prior written permission in each instance of a partner of this firm to support the promotion or marketing of or to recommend any Federal tax transaction(s) or matter(s) addressed herein.*

**From:** Andrew Bauta <abauta@lawgicalinsight.com>
**Sent:** Thursday, November 21, 2024 10:41 AM
**To:** Meliza Miller <mmiller@rfbllp.com>
**Cc:** Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>; Kathleen M. Shaw <kshaw@rfbllp.com>; Micayla Roth <MRoth@rfbllp.com>; 'Anthony Legendre' <anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com; vanessa.paralegal.legendre@gmail.com; Angela Beasley <angie.beasley@jbrianphillipsesq.com>; Richard I. Segal <rsegal@rfbllp.com>; Michael Russo <mrusso@lawgicalinsight.com>; Daniel Thompson <dthompson@lawgicalinsight.com>
**Subject:** Re: CFTAS v. Ali - FORENSIC EXAMINATION - REQUEST FOR PRIOR PRODUCTIONS

We understood we should be in a holding pattern, pending motion practice related to the outstanding accounts. Should we just wrap it up as-is?

Respectfully,


**Andrew Bauta, Esq. | COO**
abauta@lawgicalinsight.com
**Office**: 786-687-4075 | **Mobile**: 305-484-6695
**Fax**: 786-685-2061
2 South Biscayne Blvd. Suite 1600
Miami, FL 33131
www.lawgicalinsight.com

**From:** Meliza Miller <mmiller@rfbllp.com>
**Sent:** Thursday, November 21, 2024 10:30:39 AM
**To:** Andrew Bauta <abauta@lawgicalinsight.com>
**Cc:** Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>; Kathleen M. Shaw <kshaw@rfbllp.com>; Micayla Roth <MRoth@rfbllp.com>; 'Anthony Legendre' <anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com <michael.paralegal.legendre@gmail.com>; vanessa.paralegal.legendre@gmail.com <vanessa.paralegal.legendre@gmail.com>; Angela Beasley

<angie.beasley@jbrianphillipsesq.com>; Richard I. Segal <rsegal@rfbllp.com>; Michael Russo <mrusso@lawgicalinsight.com>; Daniel Thompson <dthompson@lawgicalinsight.com>
**Subject:** RE: CFTAS v. Ali - FORENSIC EXAMINATION - REQUEST FOR PRIOR PRODUCTIONS

Andrew,

Would you please provide us with an update on the status of the FE?
We understand that you have not received the outstanding credentials below.

Meliza Miller, Esq.
Attorney At Law
**Rottenstreich Farley Bronstein Fisher Potter Hodas LLP**
515 N Flagler Drive Suite 800
West Palm Beach, FL 33401
561-832-1005 – tel
mmiller@rfbllp.com

*This message and any attachments may contain confidential or privileged information and is only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the sender by return email and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachment is prohibited and may be unlawful.*
*************************************************************************************************

*Any Federal tax advice contained herein is not intended or written to be used, and cannot be used by you or any other person, for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Code. This disclosure is made in accordance with the rules of the Treasury Department Circular 230 governing standards of practice before the Internal Revenue Service. Any written statement contained herein relating to any Federal tax transaction or matter may not be used by any person without the express prior written permission in each instance of a partner of this firm to support the promotion or marketing of or to recommend any Federal tax transaction(s) or matter(s) addressed herein.*

**From:** Andrew Bauta <abauta@lawgicalinsight.com>
**Sent:** Monday, November 4, 2024 5:29 PM
**To:** Meliza Miller <mmiller@rfbllp.com>
**Cc:** Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>; Kathleen M. Shaw <kshaw@rfbllp.com>; Micayla Roth <MRoth@rfbllp.com>; 'Anthony Legendre' <anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com; vanessa.paralegal.legendre@gmail.com; Angela Beasley <angie.beasley@jbrianphillipsesq.com>; Richard I. Segal <rsegal@rfbllp.com>; Michael Russo <mrusso@lawgicalinsight.com>; Daniel Thompson <dthompson@lawgicalinsight.com>
**Subject:** Re: CFTAS v. Ali - FORENSIC EXAMINATION - REQUEST FOR PRIOR PRODUCTIONS

All,

Today was our latest attempt to exchange credentials with Mr. Ali. As an update,
(1) We have been given renewed access to Mr. Ali's Microsoft Office 365 cloud productivity environment.
    a. We asked for access to last through the completion of our investigation, or at least through the end of the week. On today's call, Mr. Ali has unilaterally given us less than 24-hour access, only.
    b. It can take up to 24 hours for the full set of permissions to update and propagate to our user account within Mr. Ali's environment. We are provisioning our own account within Mr. Ali's environment (as before) so that our activity is separate from Mr. Ali's.
    c. We note that Mr. Ali's environment does *not* have the complete set of audit logs enabled. Audit logs capture user and administrative activity, as well as security and compliance actions.
    d. If Mr. Ali does not agree that we can have continuing access to this resource throughout the pendency of our investigation, **we strongly recommend that we be authorized to turn on these audit logs and that the logs remain on throughout the litigation**. Based on Mr. Ali's current subscription, this is a no-cost feature. We note that such audit logs are standard IT practice, and Microsoft has enabled such logs by default for new tenants since approximately January of 2019.
(2) Mr. Ali affirmatively refused to provide credentials or access for the following accounts:
    a. acpa.thesagenext.com
    b. sharp5778@gmail.com
(3) We also have still not received credentials or access for the following accounts:
    a. malikajbara@hotmail.com
    b. allan1322@gmail.com
    c. ethan7811@gmail.com
    d. kbell104@hotmail.com
And I'm just moving this up the thread, so it doesn't get lost ... re: the prior productions. "PDFs with attendant load files or cross-reference sheets? That is, with the linked metadata for the PDFs such as Beg(in) Bates, End Bates, File Name, File Path, etc.?"

Respectfully,

**Andrew Bauta, Esq. | COO**
abauta@lawgicalinsight.com
**Office**: 786-687-4075 | **Mobile**: 305-484-6695
**Fax**: 786-685-2061
2 South Biscayne Blvd. Suite 1600
Miami, FL 33131
www.lawgicalinsight.com

**From:** Andrew Bauta <abauta@lawgicalinsight.com>
**Sent:** Monday, November 4, 2024 1:30 PM
**To:** Meliza Miller <mmiller@rfbllp.com>
**Cc:** Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>; Kathleen M. Shaw <kshaw@rfbllp.com>; Micayla Roth <MRoth@rfbllp.com>; 'Anthony Legendre' <anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com <michael.paralegal.legendre@gmail.com>; vanessa.paralegal.legendre@gmail.com <vanessa.paralegal.legendre@gmail.com>; Angela Beasley <angie.beasley@jbrianphillipsesq.com>; Richard I. Segal <rsegal@rfbllp.com>; Michael Russo <mrusso@lawgicalinsight.com>; Daniel Thompson <dthompson@lawgicalinsight.com>
**Subject:** Re: CFTAS v. Ali - FORENSIC EXAMINATION - REQUEST FOR PRIOR PRODUCTIONS

PDFs with attendant load files or cross-reference sheets? That is, with the linked metadata for the PDFs such as Beg(in) Bates, End Bates, File Name, File Path, etc.?

Respectfully,

**Andrew Bauta, Esq. | COO**
abauta@lawgicalinsight.com
**Office**: 786-687-4075 | **Mobile**: 305-484-6695
**Fax**: 786-685-2061
2 South Biscayne Blvd. Suite 1600
Miami, FL 33131
www.lawgicalinsight.com

**From:** Meliza Miller <mmiller@rfbllp.com>
**Sent:** Monday, November 4, 2024 11:34 AM
**To:** Andrew Bauta <abauta@lawgicalinsight.com>
**Cc:** Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>; Kathleen M. Shaw <kshaw@rfbllp.com>; Micayla Roth <MRoth@rfbllp.com>; 'Anthony Legendre' <anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com <michael.paralegal.legendre@gmail.com>; vanessa.paralegal.legendre@gmail.com <vanessa.paralegal.legendre@gmail.com>; Angela Beasley <angie.beasley@jbrianphillipsesq.com>; Richard I. Segal <rsegal@rfbllp.com>; Michael Russo <mrusso@lawgicalinsight.com>; Daniel Thompson <dthompson@lawgicalinsight.com>
**Subject:** RE: CFTAS v. Ali - FORENSIC EXAMINATION - REQUEST FOR PRIOR PRODUCTIONS

Andrew,

Most of the production is in PDF format.

Meliza Miller, Esq.
Attorney At Law
**Rottenstreich Farley Bronstein Fisher Potter Hodas LLP**
515 N Flagler Drive Suite 800
West Palm Beach, FL 33401
561-832-1005 – tel
mmiller@rfbllp.com

*This message and any attachments may contain confidential or privileged information and is only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the sender by return email and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachment is prohibited and may be unlawful.*
*****************************************************************************************************

*Any Federal tax advice contained herein is not intended or written to be used, and cannot be used by you or any other person, for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Code. This disclosure is made in accordance with the rules of the Treasury Department Circular 230 governing standards of practice before the Internal Revenue Service. Any written statement contained herein relating to any Federal tax transaction or matter may not be used by any person without the express prior written permission in each instance of a partner of this firm to support the promotion or marketing of or to recommend any Federal tax transaction(s) or matter(s) addressed herein.*

**From:** Andrew Bauta <abauta@lawgicalinsight.com>
**Sent:** Tuesday, October 29, 2024 3:04 PM
**Cc:** Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>; Kathleen M. Shaw <kshaw@rfbllp.com>; Micayla Roth <MRoth@rfbllp.com>; 'Anthony Legendre' <anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com; vanessa.paralegal.legendre@gmail.com; Angela Beasley <angie.beasley@jbrianphillipsesq.com>; Meliza Miller <mmiller@rfbllp.com>; Richard I. Segal <rsegal@rfbllp.com>; Michael Russo <mrusso@lawgicalinsight.com>; Daniel Thompson <dthompson@lawgicalinsight.com>
**Subject:** CFTAS v. Ali - FORENSIC EXAMINATION - REQUEST FOR PRIOR PRODUCTIONS

It would aid our forensic examination and attendant production of additional materials if we could get access to—or a copy of—each of the productions from Defendants to Plaintiffs, as they were produced (e.g. with load files if with load files, natives if natives, etc.).

Respectfully,


**Andrew Bauta, Esq. | COO**
abauta@lawgicalinsight.com
**Office**: 786-687-4075 | **Mobile**: 305-484-6695
**Fax**: 786-685-2061
2 South Biscayne Blvd. Suite 1600
Miami, FL 33131
www.lawgicalinsight.com

Lawgical Insight, LLC Confidentiality Notice: This e-mail message including its attachments are classified as confidential. It is intended for the person(s) or Entity to which it is addressed and may contain confidential material. Lawgical Insight controls the distribution of company confidential assets, as such any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient of this message, please, contact us at support@lawgicalinsight.com and please destroy all copies of the original message.

# EXHIBIT D

 Outlook

## Re: CFTAS v. Ali - FORENSIC EXAMINATION - REQUEST FOR PRIOR PRODUCTIONS

**From** Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>

**Date** Thu 12/12/2024 9:00 PM

**To** Andrew Bauta <abauta@lawgicalinsight.com>; Meliza Miller <mmiller@rfbllp.com>; Daniel Thompson <dthompson@lawgicalinsight.com>; Kathleen M. Shaw <kshaw@rfbllp.com>

**Cc** Celina Reis <celina.reis@jbrianphillipsesq.com>; Micayla Roth <MRoth@rfbllp.com>; 'Anthony Legendre' <anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com <michael.paralegal.legendre@gmail.com>; vanessa.paralegal.legendre@gmail.com <vanessa.paralegal.legendre@gmail.com>; Angela Beasley <angie.beasley@jbrianphillipsesq.com>; Richard I. Segal <rsegal@rfbllp.com>; Michael Russo <mrusso@lawgicalinsight.com>

**As a part of publication to of the Preliminary Report, please do not disseminate confidential, privileged taxpayer information to email addresses associated with my office including jason@jbrianphillipsesq.com, angie.beasley@jbrianphillipsesq.com and celina.reis @jbrianphillipsesq.com as my office will not be examining the same.**

**Jason Brian Phillips, Esq.**
J. Brian Phillips, P.A.
*Civil Litigation and Corporate Counsel*
P.O. Box 621176
Orlando, Florida 32862-1176
(407) 493-7183

*Licensed in Florida and Texas.*

E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited. By sending and receiving electronic communications to this email address you agree to the terms and conditions that can be found here http://www.jbrianphillipsesq.com/terms-and-conditions.html which includes an arbitration provision.

PLEASE CONSIDER THE ENVIRONMENT BEFORE YOU PRINT THIS MESSAGE

---

**From:** Andrew Bauta <abauta@lawgicalinsight.com>
**Sent:** Thursday, December 12, 2024 12:09 PM
**To:** Meliza Miller <mmiller@rfbllp.com>; Daniel Thompson <dthompson@lawgicalinsight.com>; Kathleen M. Shaw <kshaw@rfbllp.com>
**Cc:** Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>; Micayla Roth <MRoth@rfbllp.com>; 'Anthony Legendre' <anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com <michael.paralegal.legendre@gmail.com>; vanessa.paralegal.legendre@gmail.com <vanessa.paralegal.legendre@gmail.com>; Angela Beasley <angie.beasley@jbrianphillipsesq.com>; Richard I. Segal <rsegal@rfbllp.com>; Michael Russo <mrusso@lawgicalinsight.com>
**Subject:** Re: CFTAS v. Ali - FORENSIC EXAMINATION - REQUEST FOR PRIOR PRODUCTIONS

I write to update the parties on our timing for publication of the preliminary report. Unfortunately, our lead forensic investigator on this matter had a family emergency Friday evening and just returned to work yesterday. We hoped to have the report out this morning, but we are still wrapping up. I am hopeful we will have the report finalized and published to the parties by tomorrow afternoon.

I sincerely apologize for our delay in getting our report to you all.

Respectfully,



**Andrew Bauta, Esq. | COO**
abauta@lawgicalinsight.com
**Office:** 786-687-4075 | **Mobile:** 305-484-6695
**Fax:** 786-685-2061
2 South Biscayne Blvd. Suite 1600
Miami, FL 33131
www.lawgicalinsight.com





EXHIBIT

D

**From:** Andrew Bauta <abauta@lawgicalinsight.com>
**Sent:** Wednesday, December 4, 2024 1:28 PM
**To:** Meliza Miller <mmiller@rfbllp.com>; Daniel Thompson <dthompson@lawgicalinsight.com>; Kathleen M. Shaw <kshaw@rfbllp.com>
**Cc:** Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>; Micayla Roth
<MRoth@rfbllp.com>; 'Anthony Legendre' <anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com
<michael.paralegal.legendre@gmail.com>; vanessa.paralegal.legendre@gmail.com <vanessa.paralegal.legendre@gmail.com>; Angela Beasley
<angie.beasley@jbrianphillipsesq.com>; Richard I. Segal <rsegal@rfbllp.com>; Michael Russo <mrusso@lawgicalinsight.com>
**Subject:** Re: CFTAS v. Ali - FORENSIC EXAMINATION - REQUEST FOR PRIOR PRODUCTIONS

*First*, we have processed the prior productions from the link last week to attempt to de-dupe the productions against the data we've successfully collected to date. We note that the prior productions do not contain load files with attendant original metadata, and many documents were likely not produced as they were maintained in the ordinary course of business (e.g. multiple separate .pdfs are joined into a new, single .pdf). We do not opine here on this issue. Instead, we note the issue to explain that the deduplication process had limited results, and the parties should expect duplicate records—at least in content, if not in form.

For example, if a series of ten (10) tax records were previously produced as a long, single .pdf file, this aggregate file will not necessarily dedupe against each of the ten (10) original, individual tax records.

*Second*, in anticipation of our production to the parties, we ask for clarity on the deliverable. Typically, we would create a Bates-labeled production with load files to preserve as much meta-data as reasonable, as well as facilitate review (e.g. make the records searchable in a legal review platform like Relativity). However, such a production requires a review platform to properly use. We are not sure if either party is using a legal review platform (e.g. Relativity) in this case. If there is interest in using a review platform, and a party does not otherwise have one available, we can suggest some low-cost options. Please let us know if we should *produce in this standard format*.

If, instead, the parties want *a loose-file production*—to create natives—we can prepare that, instead.

In either case, is there *a preferred Bates label suffix / range* we should use / continue? Otherwise, we will start with LI-00000001.

*Third*, we expect to finalize our analysis of the existing state of devices and accounts by Friday, with our report published to the parties by the middle of next week.

Respectfully,



**Andrew Bauta, Esq.** | COO
abauta@lawgicalinsight.com
**Office:** 786-687-4075 | **Mobile:** 305-484-6695
**Fax:** 786-685-2061
2 South Biscayne Blvd. Suite 1600
Miami, FL 33131
www.lawgicalinsight.com



---

**From:** Meliza Miller <mmiller@rfbllp.com>
**Sent:** Wednesday, December 4, 2024 11:41 AM
**To:** Daniel Thompson <dthompson@lawgicalinsight.com>; Kathleen M. Shaw <kshaw@rfbllp.com>
**Cc:** Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>; Micayla Roth
<MRoth@rfbllp.com>; 'Anthony Legendre' <anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com
<michael.paralegal.legendre@gmail.com>; vanessa.paralegal.legendre@gmail.com <vanessa.paralegal.legendre@gmail.com>; Angela Beasley
<angie.beasley@jbrianphillipsesq.com>; Richard I. Segal <rsegal@rfbllp.com>; Michael Russo <mrusso@lawgicalinsight.com>; Andrew Bauta
<abauta@lawgicalinsight.com>
**Subject:** RE: CFTAS v. Ali - FORENSIC EXAMINATION - REQUEST FOR PRIOR PRODUCTIONS

Lawgical Insight Team,

May we have an update on the ETA for the preliminary findings?

Thank you,

Meliza Miller, Esq.
Attorney At Law
**Rottenstreich Farley Bronstein Fisher Potter Hodas LLP**
515 N Flagler Drive Suite 800
West Palm Beach, FL 33401
561-832-1005 – tel
mmiller@rfbllp.com

*This message and any attachments may contain confidential or privileged information and is only for the use of the intended recipient of this message. If you are not the intended recipient, please*

**EXHIBIT E**

Filing # 212764926 E-Filed 12/12/2024 05:58:04 PM

IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT, IN
AND FOR ORANGE COUNTY,
FLORIDA

CASE NO. 2021-CA-011761-O
DIVISION: 43
BUSINESS COURT

CENTRAL FLORIDA TAX AND
ACCOUNTING SERVICES, INC.,
a Florida corporation,

        Plaintiff,

v.

AKBAR A. ALI, an individual, A.A.
ALI, CPA, P.A., a Florida corporation,
MALIKA ALI, an individual, and
JBARA CONSULTING, LLC, a Florida
Limited Liability Company,

        Defendants.

_____/

## DEFENDANT'S AKBAR ALLEN ALI, VERIFIED RESPONSE IN OBJECTION TO THE PLAINTIFF'S, CENTRAL FLORIDA TAX AND ACCOUNTING SERVICES, INC., AMENDED MOTION TO COMPEL FILED ON NOVEMBER 11, 2024

        The Defendant, Akbar Allen Ali, by and through the undersigned counsel, files

this as his verified response to the Plaintiff's Amended Motion to Compel filed on

November 11, 2024, and respectfully state that said motion is without merit and due

to be denied, and would respectfully submit:



1.    Mr. Ali has complied with the Order of the Court and provided
passwords in his possession and knowledge to the forensic examiner.

2.    First and foremost, on October 1, 2024, the undersigned attempted to
meet and confer with Plaintiff's counsel regarding the forensic examination, but I
was referred to Andrew Bauta of Lawgical Insight, the forensic examiner:

**From** Meliza Miller <mmiller@rfbllp.com>
**Sent** Tuesday, October 1, 2024 2:46:59 PM
**To** Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Andrew Bauta <abauta@lawgicalinsight.com>; Richard I. Segal <rsegal@rfbllp.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>
**Cc** Kathleen M. Shaw <kshaw@rfbllp.com>; Micayla Roth <MRoth@rfbllp.com>; anthonylegendre@live.com <anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com <michael.paralegal.legendre@gmail.com>; vanessa.paralegal.legendre@gmail.com <vanessa.paralegal.legendre@gmail.com>
**Subject** RE: CFTAS v. Ali - FORENSIC EXAMINATION

Jason,

I have removed your client from the email chain. I am available in the morning, however, I don't have specific information on what the forensic examiner needs. I think you should be speaking directly with Mr. Bauta.

Meliza Miller, Esq.
**Rottenstreich Farley Bronstein Fisher Potter Hodas LLP**
515 N Flagler Drive Suite 800
West Palm Beach, FL 33401
561-832-1005 – tel
mmiller@rfbllp.com

3.    Thereafter, Mr. Ali and the undersigned participated in three (3)
separate phone calls with Daniel Thompson, a representative of Lawgical Insight,
on October 10, 2024; October 13, 2024, and November 4, 2024, to provide login-
credentials and two-factor authentication.

4.    As a result, of Mr. Ali providing login credentials and two-party
authentication, Lawgical Insight harvested over 12,000 records, including 100,000
pages of seemingly confidential and privileged taxpayer records, as indicated by the
email below.



5.    The production is the result of Mr. Ali presumably providing the credentials of business his email addresses of allan@aaalicpa.com and allan1322@gmail.com.

Since providing the credentials, Mr. Ali's business email has been the subject of cyber-attacks from London, United Arab Emirates, Virgina, Nevada, India, Ohio, Wyoming, and Russia. *See* Comp. Exhibit A attached hereto. The disclosure of his business email address to Lawgical Insight seems to have compromised confidential and privileged taxpayer information for which Mr. Ali is responsible.

6.    The credentials for allan1322@gmail.com have been provided along with two factor authentication on or about October 13, 2024, to Daniel Thompson.

7.    Mr. Ali no longer has credentials for acpa.sagenext.com as this account no longer exists and does not ping a live service. *See* Comp. Exhibit B attached hereto.

8.    Mr. Ali has never had access to the following:

sharp5778@gmail.com is a printer server maintained by a third-party
scan@aaalicpa.com is a printer server maintained by a third-party.
ethan7811@gmail.com – Mr. Ali has no knowledge of this account.
kbell104@hotmail.com – Mr. Ali has no knowledge of this account.

9.    The email address malikajbara@hotmail.com is maintained by co-Defendant, Malika Ali, whose is represented by counsel in this action.

10.    Mr. Ali is in substantial compliance, if not 100% compliance, with the Agreed Order Regarding Forensic Examination entered on April 18, 2024

11.    That based on Lawgical Insight's harvest of over 100,000 pages of 12,000 taxpayer records, any further disclosure would be futile and superfluous, and likely lead to non-discoverable and non-admissible evidence.[1]

**Under penalties of perjury of the laws of the State of Florida, I declare that I have read the foregoing and that the facts stated in it are true.**

_Akbar Allen Ali_ _____                  <u>Dec 12, 2024</u>

Akbar A. Ali                                          Date

---

[1] Florida has enacted statutory law which protects communications between a public accountant and its client made in the rendition of accounting services to the client. Fla. Stat. § 473.316; Fla. Stat. § 90.5055.[1] This privilege extends to auditing work product and related documents prepared by an accountant. *See In re Hillsborough Holdings Corp.*, 176 B.R. 223, 236 (M.D. Fla. 1994).

WHEREFORE, the Defendant, Akbar Allen Ali, respectfully requests that the Court deny the Plaintiff's Amended Motion to Compel and find that he is substantial compliance with the Agreed Order Regarding Forensic Examination entered on April 18, 2024.

Dated: December 12, 2024

Respectfully submitted by:

/s/ Jason Brian Phillips, Esquire
Jason Brian Phillips, Esq.
Florida Bar No: 0089841
J. BRIAN PHILLIPS, P.A. Attorney at Law
P.O. Box 621176
Orlando, FL 32862-1176
Tel. (407) 493-7183
jason@jbrianphillipsesq.com
celina.reis@jbrianphillipsesq.com
Attorney for Defendant Akbar A. Ali

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th of day of December, 2024, a true and correct copy of the foregoing was filed via Florida's e-filing portal and furnished to the email addresses listed thereon pursuant to Rule 2.516, Florida Rules of Judicial Practice and Judicial Administration.

/s/ Jason Brian Phillips, Esquire
By: Jason Brian Phillips, Esq.
Florida Bar No: 0089841

# EXHIBIT F

Filing # 212851460 E-Filed 12/14/2024 12:55:20 PM

IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT, IN
AND FOR ORANGE COUNTY,
FLORIDA

CASE NO. 2021-CA-011761-O
DIVISION: 43
BUSINESS COURT

CENTRAL FLORIDA TAX AND
ACCOUNTING SERVICES, INC.,
a Florida corporation,

        Plaintiff,

v.

AKBAR A. ALI, an individual, A.A.
ALI, CPA, P.A., a Florida corporation,
MALIKA ALI, an individual, and
JBARA CONSULTING, LLC, a Florida
Limited Liability Company,

        Defendants.

_____/

### DEFENDANT'S AKBAR ALLEN ALI, MOTION FOR PROTECTIVE ORDER TO PROHIBIT ACCOUNTANT-CLIENT PRIVILEGED DOCUMENTS FROM BEING PRODUCED IN RESPONSE TO SUBPOENAS TO NON-PARTIES, FOR AN IN CAMERA REVIEW, AND MOTION IN LIMINE TO EXCLUDE PREVIOUS DISCLOSED DOCUMENTS

      The Defendant, Akbar Allen Ali, respectfully moves for a protective order to

prohibit accountant-client privileged documents from being produced in response to

the Plaintiff's, Central Florida Tax and Accounting Services, Inc's, non-party

subpoenas filed into the Court on November 19, 2024, for an in camera review, and



1

Motion in Limine to Exclude Previous Disclosed Privileged Documents and submits
as follows:

## Introduction

This is an action to enforce the restrictive covenant, *e.g.* non-compete
agreement. The Plaintiff is seeking to collect and use confidential and protected
documents to profit from the Defendant's alleged violations of the convent not to
compete. The Defendant seeks to exclude documents produced by non-party, Grant
Hemmingway, Custodian of Records and Vice President of Operations of Sigma Tax
Pro.[1] Based on Mr. Hemmingway's sworn deposition testimony on November 22,
2024, Mr. Ali is informed and believed that Tax Pro did not receive consent of the
Taxpayer before it released the tax return information to the Plaintiff.

On November 19, 2024, the Plaintiff issued a subpoena to thirteen (13) non-
parties, a copy of which is attached as Exhibit A (the "Taxpayer Subpoena")[2]. The
Subpoena requires taxpayers to produce documents that include:

---

[1] In this situation, the Sigma Tax Pro, as the software provider is a tax return preparer
under paragraph (b)(2)(i)(B) of this section and the information that the Taxpayer
provides to register her purchase is tax return information because she is providing
it in connection with the preparation of a tax return. *See* Legal Information Institute,
https://www.law.cornell.edu/cfr/text/26/301.7216-1 (last visited November 29,
2024)

[2] For purposes of brevity, the Defendant attaches only one copy of Notice of
Production to Non-Party and attached Subpoena

2

1. All Documents and Communication exchanged between You and the Defendant from January 1, 2021 through the present which relate in any way to any of the following topics:

a. The Plaintiff

b. The tax and accounting practice located at 1322 Pine Hills Road, Orlando, Florida

c. The preparation of tax returns, tax extensions or any other tax or accounting work

d. Ali's retirement or semi-retirement

e. Any agreements, written or verbal, between you and Ali

f. This lawsuit

g. Any meetings or potential meetings between You and Ali

h. Payment for any tax, accounting, bookkeeping or other professional services rendered by Ali.

The Defendant objects to the Taxpayers production of these documents based on Florida's statutory accountant-client privileges, Fla. Stat. § 473.316 and Fla. Stat. § 90.5055(2).

## The Requested Documents are Protected by the Accountant-Client Privilege and Not Subject to Production

Mr. Ali performed tax services for the Taxpayers named in the subpoenas. Mr. Ali is a licensed Certified Public Accountant (CPA) in Florida. Mr. Ali's documents are confidential and were not intended to be disclosed to the public. The documents may include tax returns, audits, and recommendations. The documents are protected

from discovery because they are confidential communications made in the rendition

of accounting services to the taxpayers and includes other confidential information

obtained from the taxpayers for the purpose of rendering accounting advice.

Florida has enacted statutory law which protects communications between a

public accountant and its client made in the rendition of accounting services to the

client. Fla. Stat. § 473.316; Fla. Stat. § 90.5055.[3] This privilege extends to auditing

work product and related documents prepared by an accountant. *See In re*

*Hillsborough Holdings Corp.*, 176 B.R. 223, 236 (M.D. Fla. 1994).

Florida's accountant-client privilege is set forth as part of the evidence code

§ 90.5055, Fla. Stat., and in Florida Statute's Section on "Public Accountancy," §

473.316, Fla. Stat., which states in relevant part:

**473.316. Communications between the accountant and client privileged**

> (1) For purposes of this section:
> (a) An "accountant" is a certified public accountant.
> (b) A "client" is any person, public officer, corporation, association, or
> other organization or entity, either public or private, who agrees with

---

[3] Moreover, Florida courts have permitted the invocation of the privilege to prevent
disclosure of audit workpapers and related documents prepared by an accountant.
*See Deloitte* 566 So. 2d at 906 (quashing circuit court order requiring discovery of
financial records and workpapers in accountant's possession); *Affiliated of Florida,
Inc. v. U–Need Sundries, Inc.*, 397 So. 2d 764, 765 (Fla. 3d DCA 1981) (confidential
memorandum prepared by accountant concerning the viability of a contract is
privileged).

an accountant or accountant's employer to receive professional
services.
(c) A communication between an accountant and her or his client is
"confidential" if it is not intended to be disclosed to third persons
other than:
1. Those to whom disclosure is in furtherance of the rendition of
accounting services to the client.
2. Those reasonably necessary for the transmission of the
communication.
...
(2) A client has a privilege to refuse to disclose, and to prevent any other
person from disclosing, the contents of confidential communications
with an accountant when such other person learned of the
communications because they were made in the rendition of accounting
services to the client. This privilege includes other confidential
information obtained by the accountant from the client for the purpose
of rendering accounting advice. *Fla. Stat.* § 473.316 (1)(a), (b), (c); *Fla.
Stat.* § 90.5055 (same).

There are statutory exceptions to the accountant-client privilege. For example,

the privilege does not exist when: "(a) [t]he services of the accountant were sought

or obtained to enable or aid anyone to commit or plan to commit what the client

knew or should have known was a crime or fraud[; or] (b) [a] communication is

relevant to an issue of breach of duty by the accountant to her or his client or by the

client to her or his accountant." *Fla. Stat.* § 473.316(4)(a), (b); Fla. Stat. § 90.5055

(same). Additionally, "[t]he accountant-client privilege may be waived by the

client." *Savino v. Luciano*, 92 So. 2d 817, 819 (Fla. 1957). "The justification for the

privilege lies not in the fact of communication, but in the interest of the persons

concerned that the subject matter should not become public." *Id.* (internal quotation

5

marks and citation omitted). Thus, a party waives the privilege if it "ceases to treat a matter as confidential." *Id.*

Even assuming arguendo, the Taxpayer documents are relevant to Plaintiff's claim for damages, actual or punitive, that alone does not abrogate the statutory policy of non-disclosure. *See Choice Rest. Acquisition Ltd. v. Whitley, Inc.*, 816 So. 2d 1165, 1167 (Fla. 4th DCA 2002) (citing Fla. Stat. § 90.5055) (that "[a]lthough information may be relevant, it does not follow that relevancy trumps the accountant/client privilege set forth in section 90.5055, Florida Statutes." a court cannot justify finding a waiver of the privilege merely because the information sought is needed by the opposing party to provide information helpful to cross examination or for the defense of a cause of action).

The subject taxpayers have not used their relationship with the Mr. Ali to commit fraud, nor is it alleged the tax payers were involved in criminal or fraudulent conduct when receiving service from Mr. Ali; *See Deloitte, Haskins & Sells v. S. Fin. Holding Corp.*, 566 So. 2d 906 (Fla. 4th DCA 1990) (accountant's records on behalf of his client could not be discovered unless client was shown to have waived its accountant-client privilege or there was prima facie evidence that client used its relationship with accountant to promote an intended or actual fraud).

6

## Conclusion

The Defendant, Mr. Ali, respectfully requests this Court enter a protective order prohibiting accountant- client privileged documents from being produced in response to the Tax Payers subpoenas intended to be issued pursuant to the Notice of Production of Non-Party filed on November 11, 2024, for an in camera review of the documents produced in response to subpoena[4], and to exclude previously produced documents that contain privileged taxpayer information, *e.g.* names of Taxpayers, so as not to infringe on the accountant-client privilege[5], and order such other and additional relief the Court deems just and proper.

## Certification of Conference

On December 9, 2024, a meet and confer was held by telephone between the undersigned and Meliza Miller, Esq., counsel for Plaintiff, CTFAS. The Plaintiff objects to the relief requested herein and the parties were unable to reach resolve.

Dated: December 14, 2024          Respectfully submitted by:

/s/ Jason Brian Phillips, Esquire
Jason Brian Phillips, Esq.

---

[4] Mr. Ali reserves the right to object to and seek additional protection if Plaintiff seeks documents beyond those delineated in its Subpoena.

[5] Those topics include Section III – Schedule A of the Taxpayer Subpoenas a, b, c, d, e, and h, Ex. A.

Florida Bar No: 0089841
J. BRIAN PHILLIPS, P.A. Attorney at Law
P.O. Box 621176
Orlando, FL 32862-1176
Tel. (407) 493-7183
jason@jbrianphillipsesq.com
celina.reis@jbrianphillipsesq.com
Attorney for Defendant Akbar A. Ali

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th of day of December, 2024, a true and correct copy of the foregoing was filed via Florida's e-filing portal and furnished to the email addresses listed thereon pursuant to Rule 2.516, Florida Rules of Judicial Practice and Judicial Administration.

/s/ Jason Brian Phillips, Esquire
By: Jason Brian Phillips, Esq.
Florida Bar No: 0089841

Filing # 211289160 E-Filed 11/19/2024 03:39:10 PM

# EXHBIT A

IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT IN AND
FOR ORANGE COUNTY, FLORIDA

GENERALJURISDICTION DIVISION

CASE NO. 2021-CA-011761-O

CENTRAL FLORIDA TAX AND ACCOUNTING
SERVICES, INC., a Florida corporation,
    Plaintiff,

v.

AKBAR A. ALI, an individual, A.A. ALI, CPA, P.A.,
a Florida corporation, MALIKA ALI, an individual,
and JBARA CONSULTING, LLC, a Florida Limited
Liability Company,
    Defendants.

_____/

## NOTICE OF PRODUCTION FROM NON-PARTY

    Plaintiff, CENTRAL FLORIDA TAX AND ACCOUNTING SERVICE,

INC., by and through undersigned counsel and pursuant to Rule 1.351(b) of the

Florida Rules of Civil Procedure, files and serves this Notice of Production from

Non-Party and attached Subpoena Duces Tecum Without Deposition on the

following non-party:

    **RIO HOMES AND INVESTMENTS, LLC**
    **By Serving its registered agent:**
    **Alreyas Baksh**
    **129 Lombard Circle**
    **Clermont, FL  34711**

Any party desiring to object to the issuance of the attached Subpoena shall do so within the time periods set forth in the Florida Rules of Civil Procedure, in writing, and serve same upon the undersigned counsel.

WE HEREBY CERTIFY that on this 19th day of November 2024, a true and correct copy of the foregoing has been electronically filed with the Clerk of the Court and served via electronic mail through the Florida Courts E-Portal system to all parties on the below service list.

Respectfully submitted,

**ROTTENSTREICH FARLEY BRONSTEIN FISHER POTTER HODAS, LLP**
201 S. Biscayne Blvd, Suite 840
Miami, Florida 33131
Telephone: (305) 921-1872
*Attorneys for Plaintiff*

By: */s/ Meliza Y. Miller*
    Richard I. Segal, Esq.
    Florida Bar No. 0057187
    rsegal@RFBllp.com
    Meliza Miller, Esq.
    Florida Bar No. 1033479
    mmiller@RFBllp.com
    Micayla Roth, Esq.
    Florida Bar No. 125708
    mroth@RFBllp.com

## SERVICE LIST

Jason Brian Phillips, Esq.
J. Brian Phillips, P.A.
P.O. Box 621176
Orlando, FL 32862-1176
jason@jbrianphillipsesq.com
Celina.reis@jbrianphillipsesq.com
Angela.beasley@jbrianphillipsesq.com
*Counsel for Defendants Akbar A. Ali;*
*A.A. ALI, CPA, P.A.; and JBara*
*Consulting, LLC*

Anthony N. Legendre, II, Esq.
LAW OFFICES OF LEGENDRE &
LEGENDRE, PLLC
P.O. Box 948599
Maitland, FL 32794-8599
Tel: (407) 460-8525
anthonylegendre@live.com
Anthony@Law-Legends.com
Ronald@Law-legends.com
*Counsel for Defendant MALIKA ALI*

IN THE CIRCUIT COURT OF THE NINTH
JUDICIAL   CIRCUIT   IN   AND   FOR
ORANGE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2021-CA-011761-O

CENTRAL FLORIDA TAX AND ACCOUNTING
SERVICES, INC., a Florida corporation,

     Plaintiff,

v.

AKBAR A. ALI, an individual, A.A. ALI, CPA, P.A.,
a Florida corporation, MALIKA ALI, an individual,
and JBARA CONSULTING, LLC, a Florida Limited
Liability Company,

     Defendants.

_____/

## **SUBPOENA DUCES TECUM WITHOUT DEPOSITION**

THE STATE OF FLORIDA:

TO: **RIO HOMES AND INVESTMENTS, LLC**
     **By Serving its registered agent:**
     **Alreyas Baksh**
     **129 Lombard Circle**
     **Clermont, FL  34711**

     **YOU ARE COMMANDED** to appear at the offices of Legal Realtime

Reporting, Clermont Professional Executive Offices, 15701 FL-50 #204,

Clermont, FL   34711, on **DECEMBER 20, 2024,** and to have with you at that

place and time the following:

4

### SEE SCHEDULE "A" ATTACHED

These items will be inspected and may be copied at that time. You will not be required to surrender the original items. **You may comply with this Subpoena by providing legible copies of the items to be produced via e-mail to** eservice@rfbllp.com **with a copy to Meliza Miller, Esq.** mmiller@rfbllp.com **on or before the scheduled date of production**. You may condition the preparation of the copies upon the payment in advance of the reasonable cost of preparation. You have the right to object to the production pursuant to this Subpoena at any time before production by giving written notice to the attorney whose name appears on this Subpoena.

**THIS IS NOT A DEPOSITION.  NO TESTIMONY WILL BE TAKEN.**

**IF YOU FAIL TO:** (1) appear as specified; or (2) furnish the records instead of appearing as provided above; or (3) object to this Subpoena, you may be in contempt of Court.

**YOU ARE SUBPOENAED** to appear by the following attorney, and unless excused from this Subpoena by the attorney(s) whose name appears on this Subpoena or the Court, you shall respond to this Subpoena as directed.

Dated: November _____, 2024.

                    FOR THE CLERK OF THE COURT

                    **ROTTENSTREICH FARLEY
BRONSTEIN FISHER POTTER
HODAS, LLP**
201 S. Biscayne Boulevard, Suite 840
Miami, Florida 33131
Telephone: (305) 921-1880
mmiller@rfbllp.com


                    By:_____
                        **Meliza Y. Miller**
                        For the Clerk of the Court

Meliza Miller, Esq.
Florida Bar No. 1033479
ROTTENSTREICH FARLEY BRONSTEIN
FISHER POTTER HODAS, LLP
201 S. Biscayne Boulevard
Suite 840
Miami, Florida 33131
Telephone: (305) 921-1800
eserivce@rfbllp.com
mmiller@rfbllp.com

**In accordance with The Americans With Disabilities Act of 1990 (ADA), persons with disabilities needing a special accommodation to participate in this proceeding should contact ADA Coordinator, Human Resources, Orange County Courthouse, 425 N. Orange Avenue, Suite 510, Orlando, Florida, (407) 836-2303, fax: 407-836-2204, or if hearing or speech impaired, call TDD/TTY 1-800-955-8771 or 711 to reach the Florida Relay Service, at least seven (7) days before your scheduled deposition.**

6

## I.   **DEFINITIONS**

1.   "<u>You</u>" or "<u>Your</u>" or "<u>the Entity</u>" refers to Rio Homes and Investments, LLC, to whom this Subpoena is addressed, <u>including</u> its employees, agents, servants, subsidiaries, parent company, affiliated company, and other persons acting or purporting to act on its behalf, including its Representatives (as defined below).

2.   "<u>Plaintiff</u>" means Central Florida Tax and Accounting Services, Inc., a Florida corporation, including its employees, agents, servants, subsidiaries, parent company, affiliated company, and other persons acting or purporting to act on its behalf, including its Representatives (as defined below).

3.   "<u>Defendant</u>" means individually or collectively, Akbar A. Ali, and individual; A.A. Ali, CPA, P.A., a Florida corporation;  Malika Ali, an individual;  and Jbara Consulting, LLC.

4.   "<u>Ali</u>" refers to Defendant, Akbar A. Ali and/or A.A. Ali, CPA, P.A., individually or collectively, including its employees, agents, servants, subsidiaries, parent company, affiliated company, and other persons acting or purporting to act on its behalf, including its Representatives (as defined below).

5.   "<u>Jbara Consulting, LLC</u>" refers to Defendant, Jbara Consulting, LLC, including its employees, agents, servants, subsidiaries, parent company, affiliated company, and other persons acting or purporting to act on its behalf, including its Representatives (as defined below).

6.   "<u>Person</u>" means any natural individual in any capacity whatsoever or any entity or organization, including divisions, departments, and other units herein, and shall include, but not be limited to, public or private corporations, partnerships, joint ventures, voluntary or unincorporated associations, organization, proprietorships, trusts, estates, governmental agencies, commissions, bureaus, or departments, and the agents, servants, and employees of same.

7.   "<u>Representative</u>" means any and all agents, employees, servants, officers, directors, attorneys, or other persons acting or purporting to act on behalf of the person in question.

8.  "Document(s)" shall include every record of every type, and is used in the broadest sense to include any medium upon which intelligence or information can be recorded and further includes, but is not limited to, all originals, non-identical copies and drafts of the following items, whether printed, handwritten, typed, recorded, or stored on any electro-magnetic storage device, or reproduced by hand, including without limitation correspondence, memoranda, emails, invoices, receipts, records, ledger cards or other accounting records, voucher, check, shop order, diary, calendar, instruction, summaries of personal conversations or interviews, minutes or records of meetings or conferences, transcripts, opinions or reports of consultants, projections, drafts, contracts, agreements, confirmations, statistical statements, studies, telegrams, telexes, books, notes, reports, logs, diaries, tape recordings, video cassettes and data compilations from which information can be obtained, charts, photographs, notebooks, drawings, plans, printed materials of any kind, charts and interoffice communications, and any other writing of whatever description, including but not limited to any information contained in any computer, or represented by a computer program, signed or unsigned, regardless of whether approved, signed, sent, received, redrafted, or executed, study, work paper, handwritten note, draft, demand, chart, paper, print, laboratory record, drawing sketch, diagram, form, graph, index, list, tape, photograph, microfilm, data sheet, data processing card, or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced and reproduced.

9.  "Communication" means any oral or written statement, dialog, colloquy, discussion or conversation, and also means any transfer of thoughts or ideas between persons by means of documents and includes any transfer of data from one location to another by electronic or similar means.

10. "Relate to", "relating to" or "pertaining to", shall mean directly or indirectly, refer to, embodies, mentions, constitutes, supports, corroborates, evidences, demonstrates, shows, reflects, describes, pertains to, arises out of or in connection with, or in any way legally, logically, or factually be connected with the matter discussed.

11. If not expressly stated, "control" means in Your possession, custody, or control or under Your direction, and includes in the possession, custody or control of those under the direction of You or Your employees, subordinates,

8

counsel, accountant, consultant, expert, parent or affiliated corporation, and
any person purporting to act on Your behalf.

12.     "Including" shall mean including, but not limited to.

13.     The words "and" and "or" shall be construed either disjunctively or
        conjunctively as necessary to bring within the scope hereof any responses to
        interrogatories, documents, or communications, which might otherwise be
        construed to be outside the scope hereof.

## II.    **DIRECTIONS**

1.    You are required by Florida law to produce all of the requested Documents, wherever they may be located, which are in Your possession, custody or control, including documents which You have a right to compel the production of from any third party.

2.    If you assert that any Document which has been requested is privileged or immune from discovery, please identify each such Document fully, and provide the following information:

      a.    The privilege or basis for the immunity which You assert with respect to the Document;

      b.    The facts that You contend support Your assertion of privilege or immunity.

3.    If You assert that any requested Document has been lost, destroyed, or discarded, please identify each such Document as completely as possible, and provide the following information:

      a.    The date of loss, destruction or discarding.

      b.    The circumstances of the loss, destruction or discarding.

      c.    If destroyed or discarded:

            (1)    the manner of destruction or discarding;

            (2)    the reason for destruction or discarding;

            (3)    the identity of the person authorizing the destruction or discarding the document.

## III.    SCHEDULE "A"

## DOCUMENTS TO BE PRODUCED

1.    All Documents and Communication exchanged between You and the Defendant from January 1, 2021 through the present which relate in any way to any of the following topics:

   a. The Plaintiff
   b. The tax and accounting practice located at 1322 Pine Hills Road, Orlando, Florida
   c. The preparation of tax returns, tax extensions or any other tax or accounting work
   d. Ali's retirement or semi-retirement
   e. Any agreements, written or verbal, between you and Ali
   f. This lawsuit
   g. Any meetings or potential meetings between You and Ali
   h. Payment for any tax, accounting, bookkeeping or other professional services rendered by Ali


**Please sign and provide the attached
Declaration of Authenticity with your production.**

## DECLARATION OF AUTHENTICITY

I, _____, am over the age of 18 and am qualified to make this Declaration of Authenticity. I hereby state the following under penalty of perjury:

a. I am a records custodian for **Rio Homes and Investments LLC** (the "Company"). This Declaration is made in response to the subpoena (the "Subpoena") served on the Company in in connection with Case Number 2021-CA-011761-O, Central Florida Tax and Accounting Services, Inc. v. Akbar A., Ali, et al., in the Circuit Court of the Ninth Judicial Circuit In and For Orange County, Florida.

b. The records produced by the Company are attached and consist of _____ pages.

c. The Records were kept in the course of regularly conducted business activity of the Company.

d. The Records are duplicate copies of domestic (United States) business records, which are true and correct copies of the original records prepared and/or maintained by the Company.

e. The Records were made by the Company at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person having knowledge of those matters.

f. The Records were kept in the ordinary course of a regularly conducted activity by the Company.

g. The Records were made as a regular practice in the course of regularly conducted business activity by the Company, at or about the time of the act, condition, or event recorded.

h. The Records produced constitute, to the best of the Company's knowledge, a complete production of records responsive to the Subpoena.

I hereby declare, certify, and state, under penalty of perjury, that I have read the foregoing document and that its contents are true and correct.

Executed this _____ day of _____, 2024.

By: _____

Printed name: _____

Address: _____

_____

Telephone: _____

Email: _____

12

**EXHIBIT G**



  Outlook

---

## RE: CFTAS v. Ali - FORENSIC EXAMINATION

---

**From** Richard I. Segal <rsegal@rfbllp.com>

**Date** Tue 10/8/2024 9:13 AM

**To**  Andrew Bauta <abauta@lawgicalinsight.com>; Jason Brian Phillips, Esq jbrianphillipsesq.com
<jason@jbrianphillipsesq.com>; Meliza Miller <mmiller@rfbllp.com>; Celina Reis
<celina.reis@jbrianphillipsesq.com>; Daniel Thompson <dthompson@lawgicalinsight.com>

**Cc**  Kathleen M. Shaw <kshaw@rfbllp.com>; Micayla Roth <MRoth@rfbllp.com>; anthonylegendre@live.com
<anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com
<michael.paralegal.legendre@gmail.com>; vanessa.paralegal.legendre@gmail.com
<vanessa.paralegal.legendre@gmail.com>; Michael Russo <mrusso@lawgicalinsight.com>; Angela Beasley
<angie.beasley@jbrianphillipsesq.com>

So that we are very clear about CFTAS' position:

We strongly disagree that anything is privileged or that Mr. Ali has any ability to block court ordered
discovery.

All the below should be examined by Mr. Bauta. Please no further delay.

Richard I. Segal, Esq.
**Rottenstreich Farley Bronstein Fisher Potter Hodas LLP**
201 S. Biscayne Blvd, Suite 840
Miami, FL 33131
305-921-1880 – Main
305-921-1871 – Direct
305-761-0326 – Cell
rsegal@rfbllp.com

*This message and any attachments may contain confidential or privileged information and is only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the sender by return email and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachment is prohibited and may be unlawful.*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Any Federal tax advice contained herein is not intended or written to be used, and cannot be used by you or any other person, for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Code. This disclosure is made in accordance with the rules of the Treasury Department Circular 230 governing standards of practice before the Internal Revenue Service. Any written statement contained herein relating to any Federal tax transaction or matter may not be used by any person without the express prior written permission in each instance of a partner of this firm to support the promotion or marketing of or to recommend any Federal tax transaction(s) or matter(s) addressed herein.*

**From:** Andrew Bauta <abauta@lawgicalinsight.com>


EXHIBIT
G

**Sent:** Monday, October 7, 2024 4:54 PM
**To:** Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Meliza Miller
<mmiller@rfbllp.com>; Richard I. Segal <rsegal@rfbllp.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>;
Daniel Thompson <dthompson@lawgicalinsight.com>
**Cc:** Kathleen M. Shaw <kshaw@rfbllp.com>; Micayla Roth <MRoth@rfbllp.com>; anthonylegendre@live.com;
michael.paralegal.legendre@gmail.com; vanessa.paralegal.legendre@gmail.com; Michael Russo
<mrusso@lawgicalinsight.com>; Angela Beasley <angie.beasley@jbrianphillipsesq.com>
**Subject:** Re: CFTAS v. Ali - FORENSIC EXAMINATION

Our responses / clarifications are below.

Mr. Ali claims **privilege** for the following credentials and refused access. *The procedure from the Court's Order and attendant forensic examination is that we (as Forensic Examiner) inspect all sources covered by the protocol. This is distinct from the stage at which we produce evidence resulting from our examination. To be clear, we are not yet at the stage of producing materials to both sides.*

*Is Mr. Ali refusing to grant us access to the below datasets to continue the forensic examination?*

1. allan@aaalicpa.com

2. scan@aaalicpa.com *First, to what printer is this in reference? Mr. Ali represented he had no additional office locations, and we were not granted access during the physical inspection to a network printer. Second, how is ownership of a printer related to ownership of the productivity account? That is, the domain "aaalicpa.com" belongs to Mr. Ali.*

3. Sharp5778@gmail.com *These credentials have not been previously shared with us.*

4. Sigma Tax Pro Software *These credentials have not been previously shared with us. Mr. Ali shared credentials for the virtual machine (VM) where this software is installed, but not the credentials for this software / information source within the VM.*

Regarding the below account, Mr. Ali represents this is the **personal** email of Mr. Ali's wife, Malika Ali.

5. malikajbara@hotmail.com

Mr. Ali represented he would make an attempt to **recover** the following credentials. He represents he has not accessed these accounts in a long time, so he must (a) reset the credentials or (b) may have the password saved on an old PC. We understand this to mean an old PC that was not presented to us for examination.

*Please advise when these credentials will be available.*

6. Aaalicpa@gmail.com

7. allan1985.ali@gmail.com

8. allan1322@gmail.com

Mr. Ali represented he **does not know** about **or no longer has access** to the following credentials / services.

9. acpa.thesagenext.com (Says it is inactive/closed) *As of the date of our physical*

6. Aaalicpa@gmail.com - Mr. Ali is gathering the credentials.

7. allan1985.ali@gmail.com - Mr. Ali is gathering the credentials.

8. allan1322@gmail.com - Mr. Ali is gathering the credentials.

   This is not to mean that Mr. Ali has an old PC that was never presented. Mr. Ali represented that these passwords were on "autofill" on the computer(s) previously presented. So, he has to search for the password or reset the password previously presented.

9. acpa.thesagenext.com (Says it is inactive/closed) - this account merged with sharp5778@gmail.com

10. ethan7811@gmail.com (Has no knowledge) - not my client's account

11. kbell104@hotmail.com (Has no knowledge)- not my client's account
I hope this helps. Please let me know if you need further clarification.

Thank you. Jason

**Jason Brian Phillips, Esq.**
J. Brian Phillips, P.A.
*Civil Litigation and Corporate Counsel*
P.O. Box 621176
Orlando, Florida 32862-1176
(407) 493-7183

*Licensed in Florida and Texas.*

E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited. By sending and receiving electronic communications to this email address you agree to the terms and conditions that can be found here http://www.jbrianphillipsesq.com/terms-and-conditions.html which includes an arbitration provision.

PLEASE CONSIDER THE ENVIRONMENT BEFORE YOU PRINT THIS MESSAGE

**From:** Andrew Bauta <abauta@lawgicalinsight.com>
**Sent:** Monday, October 7, 2024 10:56 AM
**To:** Jason Brian Phillips, Esq jbrianphillipsesq.com <jason@jbrianphillipsesq.com>; Meliza Miller <mmiller@rfbllp.com>; Richard I. Segal <rsegal@rfbllp.com>; Celina Reis <celina.reis@jbrianphillipsesq.com>; Daniel Thompson <dthompson@lawgicalinsight.com>
**Cc:** Kathleen M. Shaw <kshaw@rfbllp.com>; Micayla Roth <MRoth@rfbllp.com>; anthonylegendre@live.com

# EXHIBIT H

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA

CASE NO.    2021–CA-011761-O

CENTRAL FLORIDA TAX AND
ACCOUNTING SERVICES, INC.

      Plaintiff,

v.

AKBARA ALI,

      Defendant/Counter-Plaintiff,

and

A.A. ALI, CPA, P.A., a Florida corporation,
MALIKA ALI, an individual, and
JBARA CONSUTING, LLC, a Florida
Limited Liability Company,

      Defendants.

_____/

# EXPERT REPORT OF RICHARD M. DOTSON, CPA/ABV, CFF

## NOVEMEBER 8, 2023

## PRELIMINARY REPORT

Expert reserves the right to amend/update this report as discovery is still ongoing, documents are outstanding, depositions are still occurring and leave of court to add additional claims is pending.

SE Forensic Accountants, LLC
43 S. Powerline Road, #339
Pompano Beach, FL 33069

**500**

Anees Ahmad Tanoli ("Tanoli") on behalf of Central Florida Tax and Accounting Services Inc. ("Plaintiff" or "CFTAS") retained SE Forensic Accountants, LLC ("**SEFA**") to provide forensic accounting services in connection with Plaintiff's claim with respect to Akbar Ali ("Defendant" or "Ali") and defendants in this matter: A.A. Ali, CPA, P.A. ("AAA"), Malika Ali ("Malika"), and Jbara Consulting LLC ("Jbara").

## QUALIFICATIONS OF EXPERT

1. I am a partner in the forensic accounting firm SE Forensic Accountants, LLC. Our firm provides forensic accounting, litigation support consulting and valuation services.

2. I have served as a consultant and an expert witness and I have testified at trial and arbitration on damages, business valuation, and forensic accounting throughout my 35-year professional career.

3. I attached a copy of my curriculum vitae, which more fully presents my credentials and qualifications to serve as an expert witness in this matter (see **EXHIBIT A**).

4. The attached **EXHIBIT B** lists the cases where I provided testimony during at least the past 4 years.

5. I am not expressing any expert opinions on legal or other issues that are outside of my area of expertise in this matter.

## EXECUTIVE SUMMARY OF PRELIMINARY FINDINGS

6. Plaintiff is due $806,704 for disgorgement for accounting and tax services rendered by Ali and AAA for the period from 4/9/2019 (day after date of closing referenced in line 15 below) to 5/31/2023 (last statement date we have been provided).  This is for clients of Ali and/or AAA that were not CFTAS clients in 2019.  This is the remedy requested for Counts IV, V, VIII,

**501**

X, XI, XIII, and XVI.

7. Plaintiff is due $31,244 for lost profits for accounting and tax services rendered by Ali and AAA for the period from 4/9/2019 (day after date of closing referenced in line 15 below) to 5/31/2023 (last statement date we have been provided). This is for clients CFTAS had in 2019 that were taken by Ali and/or AAA. This is the remedy requested for Count III. This analysis is still ongoing pending additional documentation to be produced.

8. Plaintiff is due $1,300,000 for rescission of the Asset Purchase Agreement. This is the remedy requested for Count XX.

9. Plaintiff is due $837,948 for breach of contract of the Independent Contractor Agreement and the Asset Purchase Agreement. This is the remedy requested for Counts XI and XIII.

10. A willing buyer would not have paid the price paid for the AAA accounting practice had the buyer known Ali would violate the non-compete agreement.

11. Plaintiff has also moved for leave of court to assert punitive damages.

12. Plaintiff has incurred attorney fees and costs, court costs and other costs in relation to this lawsuit that may be taxed to the non-prevailing party. These fees and costs are continuing and have not been quantified at this time.

13. Should we receive additional/updated documentation, as requested but not yet provided, this report may be updated.

## BACKGROUND AND DISCUSSION

14. **CFTAS** was formed in Florida on January 7, 2019.

15. The majority shareholder and President of CFTAS is Anees Tanoli.

**502**

16. CFTAS was formed to acquire various tangible and intangible assets of A.A. Ali, CPA, P.A. ("AAA").

17. CFTAS acquired certain tangible and intangible assets of AAA on April 8, 2019.

18. As a part of the APA (First Amendment to the APA), AAA agreed to a noncompetition covenant and on the date of the sale, Ali and AAA executed a Covenant Not to Compete ("non-compete agreement") that provided that Ali and AAA would not directly or indirectly engage in any business activity in competition with Plaintiff.

19. As a part of the sale, Ali also executed an Independent Contractor Agreement ("ICA") that provided that Ali would perform tax and accounting services on behalf of Plaintiff.

20. Thereafter, Plaintiff discovered that Defendant had breached the non-compete agreement and the ICA.

21. Plaintiff filed the Complaint against Ali on December 14, 2021, an Amended Complaint on March 1, 2022 and the operative Second Amended Complaint on November 7, 2022.

## **ASSIGNMENT**

22. I have been requested to provide the following services in this matter:

- Calculate the lost profits suffered by CFTAS for Ali's and AAA's violation of the non-compete agreement.

- Calculate any disgorgement of profits gained by Ali due to Ali and AAA's misappropriation of confidential information and trade secrets in violation of the non-compete agreement, independent contractor

**503**

agreement and asset purchase agreement, Ali's breaches of fiduciary duties, and the defendants' tortious interference with CFTAS' business and contractual relationship.

- Calculate any rescission damages due to CFTAS for Ali's and AAA's violation of the APA.

- Calculate any breach of contract damages due to CFTAS for Ali's and AAA's violation of the APA.

23. We received documentation from CFTAS counsel that had been provided by Ali and AAA.

24. We reviewed and sorted this production into various types of documentation such as deposit slips and checks, bank statements, tax returns, TaxWise reports, income statements and various agreements.  Generally, in damages cases we request accounting records such as invoices, general ledgers, detailed accounts receivable records, cash receipts journals and digital accounting records (such as QuickBooks or other accounting software files). While it is our understanding such records have been requested, it is also our understanding that it has been represented that such accounting records were not maintained by Ali or AAA, although such records were maintained by AAA prior to the acquisition on April 8, 2019.

25. Although paragraph 4.a. of the APA references Exhibit 4, a list of accounts receivable at the date of the closing, no such list has been provided by Ali and/or AAA.

26. Paragraph 9.e. of the APA also addresses customer lists, customer accounts and dailies; however, none of these items have been produced by Ali and/or AAA.

27. Year-end income statements for AAA have been produced for 2019 (April 8 through December 31), 2020, 2021 and an interim income statement through

5

**504**

April 30, 2022 along with check registers for these periods (Bates 2225 – 2239). These records appear to have been computer generated but we have not received any digital accounting records. For 2020 and 2021, we noted deposits to the business bank account exceeded the amount of revenues reported on the income statements.

28. The 2020 income statement does not match the federal tax return for AAA for 2020.

29. Although invoices have been requested, it has been represented by Ali and/or AAA that there are none. However, on various check copies reviewed, we saw notations that referenced an invoice number. Additionally, we identified an invoice from AAA to Mr. and Mrs. Hakeek dated 12/6/2020 for the preparation of two tax returns.

30. The absence of invoices prevented us from identifying the number of tax returns paid for with each payment or if additional accounting services were provided.

31. TaxWise reports provided by Ali and/or AAA consisted of multiple reports generated at different times resulting in duplication that had to be removed from the reports.

32. The TaxWise reports do not provide first names. In situations where a last name appeared on multiple occasions during a tax year, we eliminated duplications by comparing EFIN numbers per the TaxWise report.

33. The TaxWise reports do not identify the type of tax return prepared.

34. In our analysis of payments to AAA, we noted a wide range of amounts received for services, ranging from $250 or less up to in excess of $1,000. This would likely indicate a differing amount of time for each client. However, Ali and/or AAA did not provide any time sheets or time records for any client.

**505**

35.  In the check registers, we noted payments from AAA to subcontractors; however, Ali and/or AAA did not provide time or billing records for these subcontractors.

36.  The PNC Bank statements in the name of Jbara Consulting LLC that were produced by Ali and/or AAA or Jbara were heavily redacted, with all amounts and transaction information redacted rendering them unhelpful.

37.  Many of the client tax returns that were produced by Ali and/or AAA had all information (except filer's name) redacted including the tax form number (1040, 1120, 1065).  Information such as the filer's address, filing date, tax form and all other information was redacted on those returns.

38.  Instead of analyzing accounting and billing records normally maintained in the course of business, including those that were previously maintained by Ali and AAA prior to April 8, 2019, we have had to create a client list and revenues through matching payor check copies, deposit slips and bank statements.

39.  Because Ali and/or AAA have not provided bank statements, deposit slips and check copies for all deposits, there are deposits whereby the source is unable to be identified.

40.  We identified the total BB&T Merchant Services deposits to the AAA business account; however, the cardholders for these deposits are not identified.   Ali and/or AAA have not provided executed credit card authorization forms identifying the various sources of the BB&T Merchant Services deposits.  Such forms are common for businesses that accept credit card payments remotely.

41.  We identified the total Square deposits to the AAA business account; however, the cardholders for these deposits are not identified.  Ali and/or AAA have not provided executed credit card authorization forms identifying

**506**

the various sources of the Square deposits.  Such forms are common for businesses that accept credit card payments remotely.

42. Ali and/or AAA have not provided any engagement letters or contracts for services for client work.  Such documents are common with professional service businesses.

43. Despite these limitations, this report includes my preliminary findings and opinions based on the information provided to date. Plaintiff has requested additional documentation that has yet to be provided. Upon receipt of any additional documentation, I reserve the right to update and modify this report, if warranted, including deposition testimony of fact or expert witnesses.


## **LOST PROFITS**

44. Because invoices, general ledgers, digital accounting records, detailed accounts receivable records and cash receipts journals were not provided by Ali and/or AAA, we relied on banking documentation to determine clients serviced by Ali and AAA subsequent to April 8, 2019.

45. We prepared a database of activity from deposit slips and check copies for items that had been deposited into the Chase bank account ending 2996 INO AAA, the Truist (fka BB&T) bank account ending 5018 INO AAA, the Truist (fka SunTrust) joint bank account ending 9794 INO Akbar A. Ali or Malika J. Ali, and the Regions joint bank account ending 6470 INO Akbar A. Ali or Malika J. Ali.  This database includes the following information, if available: the account where the funds were deposited, deposit date, payor, payee, and check amount.  In some instances, we had both the check copy and the deposit slip.  In other instances, we had the check copy but not the deposit slip or we had the deposit slip but were missing the check copy.

**507**

46. In some cases, we did not have copies of the statement, deposit slip or the check. These documents were requested from Ali/AAA but have not been received as of this writing.

47. We prepared a database of deposit activity from bank statements for accounts in the name of AAA and joint accounts Ali held with Malika J. Ali indicated in Paragraph 45 above.  Additional accounts included in this database are the Bank of America account ending 5823 INO AAA, the TD Bank account ending 8952 INO AAA, the CIBC bank account ending 9215 INO AAA, the CIBC bank account ending 0289 INO Sabirah Gafoor and Akbar Ali and the CIBC bank account ending 0119 INO AAA, CA.  This database includes the following information, if available: the account where the funds were deposited, statement ending date, transaction date, transaction type, payor, and amount.  This analysis was to determine deposits from Zelle, BB&T Merchant Services and Square as well as other deposits that were not identified in the first database from Paragraph 45 above.

48. Although the bank statements indicated the payor from where the Zelle funds originated (the sender), this information was not available for the BB&T Merchant Services deposits nor for the Square deposits.

49. From these databases, we were able to prepare a listing of the payors that had made payments to any of the accounts indicated in Paragraph 45 above.  This allowed us to identify clients serviced by Ali and/or AAA.  We were only able to complete this analysis to the extent that portions of the documentation have been provided and payors were able to be identified.  Those identified through this analysis are shown in EXHIBIT C.

50. In order to determine lost profits, we used the annual Administration Report for 2019 for CFTAS, which lists clients and the work performed during 2019, and the TaxWise Reports for 2019, 2020, 2021 and 2022 that list the tax

9

**508**

returns filed by Ali and AAA during those years.

51. We compared our payor/client list in EXHIBIT C with the 2019 Administration Report to determine those that were also clients of the acquired business or CFTAS. We then searched for any matches from that comparison to the TaxWise Reports. Any matches were deemed to be a violation of the non-compete agreement, as they were clients of CFTAS that were later taken by Ali and/or AAA.

52. The results of this analysis are shown in EXHIBIT D. These clients comprise lost profits, as they were originally clients of the acquired business that were later serviced by Ali and/or AAA.

53. We reviewed the Profit & Loss statements for CFTAS for 2019 and 2020 to determine the amount of profit realized on revenues. Per our analysis of the expenses for CFTAS, we began with net income and added back non-operating expenses such as amortization, interest and acquisition charges to arrive at earnings Before Interest, Taxes, Depreciation and Amortization ("EBITDA"). Dividing EBITDA by total revenues results in the profit margin, shown below.

|  | 2019 | 2020 |
|---|---|---|
| Net income | 396,843 | 484,679.00 |
| Amortization | 86,667 | 86,667.00 |
| Interest | 46,388 | 44,089.00 |
| Closing Costs | 16,042 |  |
| EBITDA | 545,940 | 615,435 |
| Revenues | 1,156,583 | 1,427,667 |
| Profit Margin | 47% | 43% |

54. The average of the two years is 45%, which we have used as the profit margin for the lost profits calculation. Applying a 45% profit margin to the $69,430 total from EXHIBIT D results in lost profits of $31,244.

**DISGORGEMENT**

10

**509**

55. Because invoices, general ledgers, digital accounting records, detailed accounts receivable records and cash receipts journals were not provided by Ali and/or AAA, we relied on banking documentation to determine profits gained by Ali and AAA subsequent to April 8, 2019.

56. We prepared a database of activity from deposit slips and check copies for items that had been deposited into the Chase bank account ending 2996 INO AAA, the Truist (fka BB&T) bank account ending 5018 INO AAA, the Truist (fka SunTrust) joint bank account ending 9794 INO Akbar A. Ali or Malika J. Ali, and the Regions joint bank account ending 6470 INO Akbar A. Ali or Malika J. Ali. This database includes the following information, if available: the account where the funds were deposited, deposit date, payor, payee, and check amount. In some instances, we had both the check copy and the deposit slip. In other instances, we had the check copy but not the deposit slip or we had the deposit slip but were missing the check copy.

57. In some cases, we did not have copies of the statement, deposit slip or the check. These documents were requested from Ali/AAA but have not been received as of this writing.

58. We prepared a database of deposit activity from bank statements for accounts in the name of AAA and joint accounts Ali held with Malika J. Ali indicated in Paragraph 56 above. Additional accounts included in this database are the Bank of America account ending 5823 INO AAA, the TD Bank account ending 8952 INO AAA, the CIBC bank account ending 9215 INO AAA, the CIBC bank account ending 0289 INO Sabirah Gafoor and Akbar Ali and the CIBC bank account ending 0119 INO AAA, CA. This database includes the following information, if available: the account where the funds were deposited, statement ending date, transaction date, transaction type, payor, and amount. This analysis was to determine deposits from Zelle, BB&T

**510**

Merchant Services and Square as well as other deposits that were not identified in the first database from Paragraph 56 above.

59. Although the bank statements indicated the party from where the Zelle funds originated (the sender), this information was not available for the BB&T Merchant Services deposits nor for the Square deposits.

60. From our analysis of this documentation and the procedures further described in the LOST PROFITS analysis we compiled the list shown in EXHIBIT D which was used in our calculation of lost profits. These clients comprise lost profits, as they were originally clients of the acquired business that were later serviced by Ali and/or AAA.

61. Based on our analysis of the deposit information and bank statements, we identified deposits of $261,968 from identifiable clients/payors. From this, we have deducted the $69,430 utilized in calculating lost profits in EXHIBIT D. This results in a disgorgement of $192,538 for those revenues. Our analysis also identified $160,249 in deposits from Merchant Services, $96,982 in net deposits from Square (estimated to be approximately $100,000 in total charges before fees), and $356,933 in unknown deposits where the payee was not able to be identified. The unknown deposits are included as they comprise amounts that were deposited into the AAA bank accounts or other bank accounts that had received client payments. These four categories totaled $806,704.

| | |
|---|---|
| **Client Total** | **192,539** |
| **Merchant Svcs Total** | **160,249** |
| **Square Income Total** | **96,983** |
| **Unknown Deposits Total** | **356,933** |
| **Grand Total** | 806,704 |

We have requested additional information in order to identify the source of those items comprising the unknown deposits total.

## RESCISSION

62.  If the Court determines that CFTAS is entitled to the equitable remedy of
rescission, the objective is to undo the Asset Purchase Agreement and restore
the parties to the former status quo.  In that case, as the purchaser, CFTAS
may recover the consideration paid and Ali, as the Seller, is entitled to return
of the items purchased, i.e., the tangible and intangible assets which were the
subject of the Asset Purchase Agreement.

## BREACH OF CONTRACT (THE ASSET PURCHASE AGREEMENT)

63.  Compensatory damages for breach of the APA would be monetary damages
that would put CFTAS in the same position it would have been in had Ali not
breached the APA.  In other words, if Ali had not breached the APA, CFTAS
would have been in the position of earning increased revenue and profits
from the CFTAS clients that Ali serviced.

## OTHER DAMAGES

64.  This analysis does not include a number for punitive damages related to the
fraud claims in Counts XVIII and XIX.  Should punitive damages be
allowed, this report will be amended accordingly.

65.  Attorney fees and costs – Plaintiff has incurred attorneys' fees and costs.  The
total damages for this category are continuing until this matter concludes.  The
total costs incurred will be analyzed prior to the commencement of the trial.

## COMPENSATION

66.  SEFA's compensation is not contingent on the outcome of this matter.  My

**512**

standard hourly billing rate is $275, and the current hourly billing rates of other professionals that worked on this matter range from $90 to $160.

Respectfully submitted,

Richard M. Dotson, CPA/ABV, CFF

November 8, 2023

**513**

# EXHIBIT A

# RICHARD M. DOTSON CPA/ABV, CFF
### CURRICULUM VITAE

## EDUCATION & CERTIFICATION

Graduated University of North Florida, Jacksonville, Florida, Bachelor of Business Administration, May 1983
Certified Public Accountant, in Florida since 2000
AICPA Accredited in Business Valuation since 2001
AICPA Certified in Financial Forensics since 2010

## PROFESSIONAL EXPERIENCE

Mr. Dotson is a partner of SE Forensic Accountants, LLC, a firm specializing in business valuations, forensic accounting, and litigation consulting services.

He has served as an expert witness and provided forensic accounting services in cases involving business valuation, receivership, family law matters, fraud, lost wages claims, valuing life care plans, and quantifying economic damages. He has testified in various venues ranging from Small Claims Court to Federal Criminal Court and Federal Bankruptcy Court. Litigation matters have included breach of contract, shareholder disputes, fraudulent inducement, patent/copyright infringement, bankruptcy (insolvency analysis/determination and quantification of fraudulent transfers), insurance claims and criminal matters.

As an appraisal consultant, he focuses primarily on the valuation of privately held business entities and various intangible assets. He has more than 30 years of valuation experience consisting of the appraisal of more than 600 business entities and various intangible assets such as copyrights, trademarks, patents and contingent liabilities/assets. His valuations have been utilized in estate and gift matters, purchase price allocations, impairment testing, fairness opinions, employee stock ownership plans, business transactions, bankruptcy and litigation matters.

Prior to forming SE Forensic Accountants, LLC, he was a partner at a South Florida forensic accounting firm. At two previous accounting firms he established and grew each firm's Business Valuation practice and worked with the audit department of one firm in establishing due diligence services.

## LECTURER

Richard has spoken for the California Society of CPAs, for Accountants' Global Network's North American Regional Meeting, for various Florida Institute of CPA chapters and for local professional groups and associations. Topics have included employee stock ownership plans, valuations in estate planning, financial analysis, marketability discounts and other valuation issues.

## AFFILIATIONS

Current and past memberships and affiliations in professional organizations include the American Institute of Certified Public Accountants, the Florida Institute of Certified Public Accountants, the American Society of Appraisers, the Greater Boca Raton Estate Planning Council, Accountants' Global Network, the ESOP Association (former Public Relations Chairman, Florida), and the National Center for Employee Ownership.

# EXHIBIT B

Ernesto Rodriguez v. Nidia Rodriguez
Case No. 16-003130 FC 04(17)

Perez Simons v. Martins
Case No. 2017-004212FC04

Debra Silberberg v. Aaron Silberberg
Case No. 50-2018DR011394BFY

Broker's Title Group, LLC v. Felipe Munoz and Corporate Assets, LLC
Case No. 2017-026056CA01

Adolphine Lazowick-Keith v. Eliot Lazowick
Case No. FMCE18-008714(33/91)

John Fennessy v. Michelle Vaughn Fennessy
Case No. 50-2019DR010222XXXXMB
Anne Marie Silva v. Warley Silva
Case No. FMCE-20-008357

Keith Blessitt v. Joanna Jackowska
Case No. 2020DR470NC

Evolution, The Salon Source Inc. v. Jeffery Cohen, et al.
Case No. 502021CA006688XXXXMB Div. AK

Attila Mathe v. All Ways Home Care, Inc. et al.
Case No. 2021-026942-CA-01

Michael Odsess v. Judith Hark Odsess
Case No. 502021DR007120XXXXSB

**515**

# EXHIBIT C

**Discovery is ongoing and subject to change.**

| Payor | Transaction Type | Amount |
|---|---|---|
| ███████████ | Check Deposit | 125.00 |
| ███████████ | ████ | ████ |
| | Deposit Slip | 25.00 |
| | Deposit Slip | 25.00 |
| | Deposit Slip | 25.00 |
| | Check Deposit | 25.00 |
| | Check Deposit | 5.25 |
| | Check Deposit | 35.00 |
| | Check Deposit | 85.00 |
| | Check Deposit | 155.00 |
| | Check Deposit | 25.00 |
| | Check Deposit | 35.00 |
| | Check Deposit | 400.00 |
| | Check Deposit | 135.00 |
| | Check Deposit | 35.00 |
| | Check Deposit | 300.00 |
| | Check Deposit | 800.00 |
| | Check Deposit | 300.00 |
| | Check Deposit | 6.81 |
| | Check Deposit | 125.00 |
| | Check Deposit | 450.00 |
| | Check Deposit | 125.00 |
| | Check Deposit | 200.00 |
| | Check Deposit | 700.00 |
| | Zelle | 100.00 |
| | Check Deposit | 100.00 |
| | Check Deposit | 100.00 |
| | Check Deposit | 150.00 |
| | Check Deposit | 450.00 |
| | Check Deposit | 475.00 |
| | Check Deposit | 100.00 |
| | Check Deposit | 200.00 |
| | Check Deposit | 650.00 |
| | Zelle | 1,000.00 |
| | Check Deposit | 1,350.00 |
| | Check Deposit | 225.00 |
| | Check Deposit | 50.00 |
| | Check Deposit | 400.00 |
| | Zelle | 200.00 |
| | Check Deposit | 100.00 |
| | Check Deposit | 125.00 |
| | Check Deposit | 125.00 |

517

**Discovery is ongoing and subject to change.*



| Payor | Transaction Type | Amount |
|---|---|---|
| | Check Deposit | 125.00 |
| | Check Deposit | 750.00 |
| | Check Deposit | 600.00 |
| | Check Deposit | 100.00 |
| | Check Deposit | 50.00 |
| | Zelle | 450.00 |
| | Zelle | 100.00 |
| | Zelle | 500.00 |
| | Zelle | 250.00 |
| | Zelle | 500.00 |
| | Zelle | 400.00 |
| | Check Deposit | 50.00 |
| | Check Deposit | 200.00 |
| | Deposit | 5,000.00 |
| | Check Deposit | 330.00 |
| | Check Deposit | 50.00 |
| | Check Deposit | 350.00 |
| | Check Deposit | 1,000.00 |
| | Zelle | 189.00 |
| | Check Deposit | 50.00 |
| | Zelle | 600.00 |
| | Check Deposit | 900.00 |
| | Check Deposit | 180.00 |
| | Check Deposit | 50.00 |
| | Check Deposit | 1,000.00 |
| | Check Deposit | 100.00 |
| | Check Deposit | 1,325.00 |
| | Check Deposit | 400.00 |
| | Check Deposit | 2,900.00 |
| | Check Deposit | 600.00 |
| | Check Deposit | 125.00 |
| | Check Deposit | 125.00 |
| | Check Deposit | 125.00 |
| | Check Deposit | 125.00 |
| | Check Deposit | 850.00 |
| | Zelle | 450.00 |
| | Check Deposit | 60.00 |
| | Zelle | 250.00 |
| | Zelle | 250.00 |
| | Check Deposit | 550.00 |
| | Deposit | 1,400.00 |
| | Zelle | 150.00 |

518

***Discovery is ongoing and subject to change.**

| Payor | Transaction Type | Amount |
|---|---|---|
| | Zelle | 400.00 |
| | Zelle | 600.00 |
| | Check Deposit | 200.00 |
| | Check Deposit | 85.00 |
| | Check Deposit | 750.00 |
| | Check Deposit | 200.00 |
| | Check Deposit | 250.00 |
| | Check Deposit | 50.00 |
| | Check Deposit | 550.00 |
| | Check Deposit | 300.00 |
| | Check Deposit | 750.00 |
| | Check Deposit | 136.67 |
| | Check Deposit | 136.67 |
| | Check Deposit | 150.00 |
| | Check Deposit | 250.00 |
| | Check Deposit | 550.00 |
| | Zelle | 701.00 |
| | Zelle | 601.00 |
| | Zelle | 310.00 |
| | Check Deposit | 200.00 |
| | Check Deposit | 225.00 |
| | Check Deposit | 50.00 |
| | Check Deposit | 600.00 |
| | Check Deposit | 100.00 |
| | Check Deposit | 225.00 |
| | Check Deposit | 800.00 |
| | Check Deposit | 50.00 |
| | Zelle | 750.00 |
| | Check Deposit | 275.00 |
| | Check Deposit | 150.00 |
| | Check Deposit | 475.00 |
| | Check Deposit | 785.00 |
| | Zelle | 745.00 |
| | Zelle | 5.00 |
| | Zelle | 125.00 |
| | Check Deposit | 125.00 |
| | Check Deposit | 125.00 |
| | Deposit Slip | 125.00 |
| | Check Deposit | 150.00 |
| | Check Deposit | 700.00 |
| | Zelle | 50.00 |
| | Check Deposit | 225.00 |

**519**

**Discovery is ongoing and subject to change.*

| Payor | Transaction Type | Amount |
|---|---|---|
| | Check Deposit | 225.00 |
| | Check Deposit | 300.00 |
| | Check Deposit | 250.00 |
| | Check Deposit | 250.00 |
| | Check Deposit | 500.00 |
| | Check Deposit | 125.00 |
| | Check Deposit | 125.00 |
| | Check Deposit | 125.00 |
| | Check Deposit | 150.00 |
| | Check Deposit | 750.00 |
| | Check Deposit | 350.00 |
| | Zelle | 200.00 |
| | Check Deposit | 750.00 |
| | Zelle | 300.00 |
| | Zelle | 250.00 |
| | Check Deposit | 1,200.00 |
| | Zelle | 750.00 |
| | Check Deposit | 50.00 |
| | Check Deposit | 175.00 |
| | Check Deposit | 50.00 |
| | Check Deposit | 100.00 |
| | Check Deposit | 500.00 |
| | Check Deposit | 300.00 |
| | Check Deposit | 200.00 |
| | Zelle | 250.00 |
| | Zelle | 700.00 |
| | Zelle | 350.00 |
| | Check Deposit | 250.00 |
| | Check Deposit | 250.00 |
| | Check Deposit | 225.00 |
| | Check Deposit | 50.00 |
| | Check Deposit | 300.00 |
| | Check Deposit | 750.00 |
| | Check Deposit | 200.00 |
| | Zelle | 490.00 |
| | Zelle | 10.00 |
| | Check Deposit | 100.00 |
| | Check Deposit | 50.00 |
| | Check Deposit | 400.00 |
| | Zelle | 400.00 |
| | Zelle | 400.00 |
| | Zelle | 150.00 |

**520**

**Discovery is ongoing and subject to change.*

| Transaction Type | Amount |
|---|---|
| Check Deposit | 200.00 |
| Check Deposit | 1,200.00 |
| Check Deposit | 260.00 |
| Zelle | 100.00 |
| Check Deposit | 225.00 |
| Check Deposit | 225.00 |
| Check Deposit | 225.00 |
| Check Deposit | 2,050.00 |
| Check Deposit | 125.00 |
| Check Deposit | 125.00 |
| Check Deposit | 125.00 |
| Check Deposit | 3,500.00 |
| Check Deposit | 2,000.00 |
| Check Deposit | 230.00 |
| Check Deposit | 450.00 |
| Check Deposit | 300.00 |
| Check Deposit | 350.00 |
| Check Deposit | 500.00 |
| Zelle | 600.00 |
| Deposit Slip | 125.00 |
| Check Deposit | 450.00 |
| Check Deposit | 150.00 |
| Deposit Slip | 150.00 |
| Zelle | 250.00 |
| Zelle | 290.00 |
| Zelle | 300.00 |
| Check Deposit | 750.00 |
| Check Deposit | 85.00 |
| Check Deposit | 35.00 |
| Check Deposit | 35.00 |
| Check Deposit | 150.00 |
| Deposit Slip | 150.00 |
| Check Deposit | 85.00 |
| Check Deposit | 35.00 |
| Zelle | 200.00 |
| Zelle | 500.00 |
| Check Deposit | 204.00 |
| Check Deposit | 500.00 |
| Check Deposit | 135.00 |
| Check Deposit | 750.00 |
| Check Deposit | 135.00 |
| Check Deposit | 135.00 |

**521**

**Discovery is ongoing and subject to change.*

| Transaction Type | Amount |
|---|---|
| Zelle | 749.00 |
| Zelle | 1.00 |
| Zelle | 400.00 |
| Check Deposit | 180.00 |
| Zelle | 750.00 |
| Zelle | 100.00 |
| Zelle | 100.00 |
| Check Deposit | 900.00 |
| Deposit | 600.00 |
| Zelle | 400.00 |
| Zelle | 250.00 |
| Check Deposit | 385.00 |
| Zelle | 750.00 |
| Check Deposit | 150.00 |
| Check Deposit | 220.00 |
| Check Deposit | 70.00 |
| Check Deposit | 150.00 |
| Check Deposit | 150.00 |
| Check Deposit | 150.00 |
| Check Deposit | 1,200.00 |
| Check Deposit | 500.00 |
| Check Deposit | 1,200.00 |
| Zelle | 1,500.00 |
| Check Deposit | 1,560.00 |
| Check Deposit | 25,000.00 |
| Zelle | 750.00 |
| Check Deposit | 450.00 |
| Zelle | 55.00 |
| Check Deposit | 500.00 |
| Check Deposit | 200.00 |
| Check Deposit | 125.00 |
| Check Deposit | 125.00 |
| Check Deposit | 125.00 |
| Check Deposit | 750.00 |
| Zelle | 450.00 |
| Zelle | 400.00 |
| Check Deposit | 750.00 |
| Check Deposit | 1,150.00 |
| Zelle | 450.00 |
| Check Deposit | 300.00 |
| Zelle | 350.00 |
| Check Deposit | 250.00 |

**522**

**Discovery is ongoing and subject to change.*

| Transaction Type | Amount |
|---|---|
| Check Deposit | 2,000.00 |
| Check Deposit | 700.00 |
| Zelle | 100.00 |
| Zelle | 250.00 |
| Check Deposit | 550.00 |
| Check Deposit | 750.00 |
| Check Deposit | 250.00 |
| Check Deposit | 250.00 |
| Check Deposit | 1,950.00 |
| Check Deposit | 180.00 |
| Check Deposit | 50.00 |
| Check Deposit | 440.00 |
| Zelle | 1,500.00 |
| Check Deposit | 425.00 |
| Zelle | 175.00 |
| Check Deposit | 900.00 |
| Check Deposit | 325.00 |
| Check Deposit | 300.00 |
| Zelle | 1.00 |
| Zelle | 750.00 |
| Zelle | 250.00 |
| Zelle | 125.00 |
| Check Deposit | 120.00 |
| Zelle | 450.00 |
| Zelle | 250.00 |
| Check Deposit | 50.00 |
| Check Deposit | 1,325.00 |
| Check Deposit | 250.00 |
| Zelle | 500.00 |
| Check Deposit | 50.00 |
| Check Deposit | 3,250.00 |
| Zelle | 750.00 |
| Check Deposit | 750.00 |
| Check Deposit | 200.00 |
| Zelle | 50.00 |
| Zelle | 300.00 |
| Zelle | 600.00 |
| Check Deposit | 50.00 |
| Check Deposit | 125.00 |
| Check Deposit | 50.00 |
| Check Deposit | 125.00 |
| Check Deposit | 50.00 |

523

**Discovery is ongoing and subject to change.*

| Transaction Type | Amount |
|---|---|
| Check Deposit | 125.00 |
| Check Deposit | 50.00 |
| Check Deposit | 150.00 |
| Check Deposit | 200.00 |
| Check Deposit | 200.00 |
| Check Deposit | 200.00 |
| Check Deposit | 600.00 |
| Check Deposit | 50.00 |
| Zelle | 662.00 |
| Check Deposit | 100.00 |
| Check Deposit | 100.00 |
| Check Deposit | 300.00 |
| Check Deposit | 100.00 |
| Zelle | 400.00 |
| Zelle | 250.00 |
| Check Deposit | 1,350.00 |
| Check Deposit | 150.00 |
| Zelle | 349.00 |
| Zelle | 1.00 |
| Zelle | 349.00 |
| Zelle | 1.00 |
| Check Deposit | 330.00 |
| Check Deposit | 50.00 |
| Zelle | 600.00 |
| Check Deposit | 1,100.00 |
| Zelle | 550.00 |
| Zelle | 200.00 |
| Check Deposit | 50.00 |
| Check Deposit | 100.00 |
| Zelle | 250.00 |
| Check Deposit | 825.00 |
| Zelle | 200.00 |
| Zelle | 200.00 |
| Zelle | 700.00 |
| Zelle | 200.00 |
| Check Deposit | 200.00 |
| Deposit Slip | 310.00 |
| Check Deposit | 650.00 |
| Check Deposit | 435.00 |
| Check Deposit | 150.00 |
| Check Deposit | 2,060.00 |
| Zelle | 700.00 |

**524**

**Discovery is ongoing and subject to change.*

| Transaction Type | Amount |
|---|---|
| Zelle | 700.00 |
| Zelle | 250.00 |
| Check Deposit | 400.00 |
| Zelle | 450.00 |
| Zelle | 200.00 |
| Check Deposit | 900.00 |
| Zelle | 250.00 |
| Check Deposit | 125.00 |
| Check Deposit | 125.00 |
| Check Deposit | 125.00 |
| Zelle | 700.00 |
| Check Deposit | 200.00 |
| Check Deposit | 500.00 |
| Check Deposit | 180.00 |
| Check Deposit | 180.00 |
| Check Deposit | 150.00 |
| Check Deposit | 125.00 |
| Check Deposit | 125.00 |
| Check Deposit | 125.00 |
| Zelle | 350.00 |
| Zelle | 5.00 |
| Zelle | 350.00 |
| Zelle | 1,500.00 |
| Zelle | 2,000.00 |
| Check Deposit | 200.00 |
| Zelle | 800.00 |
| Zelle | 800.00 |
| Zelle | 500.00 |
| Check Deposit | 50.00 |
| Check Deposit | 50.00 |
| Check Deposit | 750.00 |
| Deposit Slip | 150.00 |
| Check Deposit | 150.00 |
| Check Deposit | 1,542.10 |
| Check Deposit | 5,000.00 |
| Check Deposit | 650.00 |
| Zelle | 800.00 |
| Zelle | 750.00 |
| Check Deposit | 50.00 |
| Check Deposit | 2,850.00 |
| Zelle | 800.00 |
| Check Deposit | 200.00 |

9

**525**

***Discovery is ongoing and subject to change.**

| Transaction Type | Amount |
|---|---:|
| Check Deposit | 1,000.00 |
| Check Deposit | 50.00 |
| Check Deposit | 1,500.00 |
| Check Deposit | 350.00 |
| Zelle | 100.00 |
| Zelle | 400.00 |
| Check Deposit | 450.00 |
| Check Deposit | 250.00 |
| Check Deposit | 1,000.00 |
| Check Deposit | 1,000.00 |
| Zelle | 500.00 |
| Zelle | 250.00 |
| Check Deposit | 136.67 |
| Check Deposit | 136.67 |
| Check Deposit | 150.00 |
| Check Deposit | 450.00 |
| Check Deposit | 950.00 |
| Check Deposit | 75.00 |
| Check Deposit | 500.00 |
| Check Deposit | 3,800.00 |
| Zelle | 150.00 |
| Check Deposit | 1,325.00 |
| Deposit Slip | 100.00 |
| Check Deposit | 475.00 |
| Zelle | 400.00 |
| Zelle | 450.00 |
| Zelle | 400.00 |
| Check Deposit | 400.00 |
| Zelle | 1,000.00 |
| Zelle | 850.00 |
| Zelle | 800.00 |
| Check Deposit | 300.00 |
| Zelle | 250.00 |
| Check Deposit | 125.00 |
| Zelle | 150.00 |
| Zelle | 100.00 |
| Check Deposit | 100.00 |
| Zelle | 350.00 |
| Zelle | 350.00 |
| Check Deposit | 500.00 |
| Check Deposit | 500.00 |
| Check Deposit | 500.00 |

10

**526**

**Discovery is ongoing and subject to change.**

| Transaction Type | Amount |
|---|---|
| Check Deposit | 100.00 |
| Zelle | 250.00 |
| Check Deposit | 200.00 |
| Check Deposit | 200.00 |
| Check Deposit | 200.00 |
| Check Deposit | 450.00 |
| Check Deposit | 260.00 |
| Check Deposit | 500.00 |
| Check Deposit | 25.00 |
| Zelle | 300.00 |
| Check Deposit | 100.00 |
| Check Deposit | 200.00 |
| Check Deposit | 175.00 |
| Zelle | 250.00 |
| Check Deposit | 555.00 |
| Check Deposit | 555.00 |
| Check Deposit | 555.00 |
| Check Deposit | 450.00 |
| Check Deposit | 750.00 |
| Zelle | 250.00 |
| Zelle | 3,000.00 |
| Check Deposit | 50.00 |
| Zelle | 250.00 |
| Check Deposit | 200.00 |
| Zelle | 600.00 |
| Check Deposit | 800.00 |
| Check Deposit | 650.00 |
| Check Deposit | 200.00 |
| Zelle | 1,150.00 |
| Zelle | 600.00 |
| Zelle | 1,250.00 |
| Zelle | 200.00 |
| Zelle | 250.00 |
| Check Deposit | 305.00 |
| Check Deposit | 200.00 |
| Zelle | 1,000.00 |
| Zelle | 300.00 |
| Check Deposit | 450.00 |
| Check Deposit | 600.00 |
| Check Deposit | 35.00 |
| Check Deposit | 35.00 |
| Check Deposit | 800.00 |

**527**

**Discovery is ongoing and subject to change.*

| Transaction Type | Amount |
|---|---|
| Check Deposit | 400.00 |
| Check Deposit | 25.00 |
| Zelle | 100.00 |
| Check Deposit | 50.00 |
| Check Deposit | 150.00 |
| Zelle | 150.00 |
| Zelle | 350.00 |
| Zelle | 125.00 |
| Check Deposit | 125.00 |
| Check Deposit | 125.00 |
| Check Deposit | 125.00 |
| Check Deposit | 380.00 |
| Zelle | 450.00 |
| Check Deposit | 2,650.00 |
| Check Deposit | 50.00 |
| Check Deposit | 50.00 |
| Check Deposit | 900.00 |
| Check Deposit | 25.00 |
| Zelle | 400.00 |
| Check Deposit | 200.00 |
| Zelle | 550.00 |
| Zelle | 500.00 |
| Check Deposit | 700.00 |
| Check Deposit | 100.00 |
| Check Deposit | 1,500.00 |
| Check Deposit | 1,200.00 |
| Check Deposit | 450.00 |
| Check Deposit | 200.00 |
| Zelle | 750.00 |
| Check Deposit | 200.00 |
| Zelle | 750.00 |
| Zelle | 750.00 |
| Zelle | 300.00 |
| Check Deposit | 840.00 |
| Zelle | 750.00 |
| Zelle | 1,200.00 |
| Check Deposit | 225.00 |
| Check Deposit | 300.00 |
| Deposit Slip | 225.00 |
| Check Deposit | 175.00 |
| Check Deposit | 1,910.00 |
| Check Deposit | 175.00 |

**528**

***Discovery is ongoing and subject to change.**

| Transaction Type | Amount |
|---|---|
| Check Deposit | 500.00 |
| Check Deposit | 500.00 |
| Check Deposit | 180.00 |
| Check Deposit | 700.00 |
| Zelle | 200.00 |
| Zelle | 200.00 |
| Zelle | 550.00 |
| Check Deposit | 175.00 |
| Check Deposit | 175.00 |
| Check Deposit | 175.00 |
| Check Deposit | 50.00 |
| Check Deposit | 50.00 |
| Check Deposit | 1,200.00 |
| Check Deposit | 50.00 |
| Check Deposit | 600.00 |
| Check Deposit | 400.00 |
| Zelle | 450.00 |
| Check Deposit | 600.00 |
| Zelle | 350.00 |
| Zelle | 500.00 |
| Zelle | 450.00 |
| Zelle | 100.00 |
| Check Deposit | 125.00 |
| Check Deposit | 125.00 |
| Zelle | 350.00 |
| Check Deposit | 200.00 |
| Check Deposit | 950.00 |
| Check Deposit | 250.00 |
| Check Deposit | 250.00 |
| Zelle | 250.00 |
| Zelle | 500.00 |
| Check Deposit | 750.00 |
| Check Deposit | 150.00 |
| Zelle | 350.00 |
| | **261,968.84** |

**529**

**EXHIBIT D**

***Discovery is ongoing and subject to change.**

| Amount | 2019 Taxwise Filings | 2020 Taxwise Filings | 2021 Taxwise Filings | 2022 Taxwise Filings |
|---|---|---|---|---|
| 850.00 | | | Yes | |
| 1,000.00 | | | Yes | Yes |
| 200.00 | | Yes | Yes | Yes |
| 600.00 | | | Yes | Yes |
| 850.00 | | | | Yes |
| 250.00 | | | Yes | Yes |
| 250.00 | | | Yes | Yes |
| 550.00 | | | Yes | |
| 1,400.00 | | | Yes | |
| 400.00 | Yes | | | Yes |
| 300.00 | | | Yes | Yes |
| 701.00 | | | Yes | |
| 601.00 | | | Yes | |
| 310.00 | | | | Yes |
| 50.00 | | | Yes | |
| 750.00 | | | Yes | Yes |
| 250.00 | | | Yes | |
| 50.00 | | | | Yes |
| 300.00 | | | | Yes |
| 200.00 | | | Yes | |
| 250.00 | | | Yes | |
| 350.00 | Yes | Yes | Yes | Yes |
| 250.00 | Yes | Yes | | |
| 250.00 | | | Yes | Yes |
| 150.00 | | Yes | Yes | Yes |
| 100.00 | | | | Yes |
| 250.00 | | | | Yes |
| 290.00 | | | | Yes |
| 300.00 | | | | Yes |
| 500.00 | | Yes | Yes | Yes |
| 400.00 | | | Yes | Yes |
| 450.00 | yes | yes | Yes | |
| 450.00 | | | Yes | |
| 400.00 | | | Yes | Yes |
| 750.00 | | Yes | Yes | Yes |
| 350.00 | | | Yes | |
| 250.00 | | Yes | Yes | Yes |
| 1,950.00 | | | Yes | |
| 1,500.00 | | | Yes | |
| 175.00 | | | Yes | Yes |
| 1.00 | | | Yes | Yes |
| 750.00 | | | Yes | Yes |
| 250.00 | | | | Yes |

1

**531**

**Discovery is ongoing and subject to change.**

| Amount | 2019 Taxwise Filings | 2020 Taxwise Filings | 2021 Taxwise Filings | 2022 Taxwise Filings |
|---|---|---|---|---|
| 125.00 | Yes | Yes | Yes | |
| 450.00 | | | Yes | |
| 250.00 | | | Yes | |
| 500.00 | | | Yes | Yes |
| 750.00 | | | Yes | |
| 200.00 | | | Yes | Yes |
| 50.00 | | | Yes | Yes |
| 300.00 | | | | |
| 662.00 | | Yes | Yes | Yes |
| 400.00 | | | | Yes |
| 250.00 | | | | Yes |
| 330.00 | Yes | Yes | Yes | Yes |
| 600.00 | | | Yes | |
| 200.00 | | | Yes | Yes |
| 200.00 | Yes | Yes | Yes | Yes |
| 200.00 | Yes | Yes | Yes | Yes |
| 200.00 | | | Yes | |
| 250.00 | Yes | Yes | Yes | |
| 400.00 | | | Yes | Yes |
| 250.00 | | | Yes | |
| 700.00 | Yes | | | Yes |
| 350.00 | | | | Yes |
| 5.00 | | | | Yes |
| 350.00 | | | | Yes |
| 1,500.00 | | | Yes | |
| 2,000.00 | | | | |
| 800.00 | | | Yes | Yes |
| 800.00 | | | Yes | Yes |
| 800.00 | | | Yes | |
| 750.00 | | | Yes | |
| 800.00 | | Yes | Yes | Yes |
| 200.00 | | Yes | Yes | Yes |
| 150.00 | Yes | Yes | Yes | Yes |
| 400.00 | | | Yes | |
| 450.00 | | | | |
| 400.00 | | | Yes | Yes |
| 850.00 | | | Yes | Yes |
| 800.00 | | | Yes | Yes |
| 300.00 | | | | Yes |
| 450.00 | | Yes | Yes | Yes |
| 500.00 | | Yes | Yes | Yes |
| 25.00 | | | Yes | |
| 300.00 | | | Yes | |

**532**

***Discovery is ongoing and subject to change.**

| Amount | 2019 Taxwise Filings | 2020 Taxwise Filings | 2021 Taxwise Filings | 2022 Taxwise Filings |
|---|---|---|---|---|
| 250.00 | Yes | Yes | Yes | Yes |
| 450.00 | | | Yes | Yes |
| 200.00 | Yes | | Yes | Yes |
| 600.00 | | | Yes | |
| 650.00 | | | Yes | |
| 1,150.00 | | | Yes | Yes |
| 600.00 | | | Yes | Yes |
| 1,250.00 | | | Yes | Yes |
| 200.00 | | | Yes | Yes |
| 250.00 | | | Yes | Yes |
| 300.00 | | | | Yes |
| 100.00 | | | Yes | |
| 150.00 | | | | Yes |
| 350.00 | | | | Yes |
| 125.00 | Yes | | | |
| 550.00 | | | | Yes |
| 500.00 | | | Yes | |
| 100.00 | | | Yes | |
| 750.00 | | | Yes | |
| 750.00 | | | Yes | Yes |
| 750.00 | | | Yes | Yes |
| 400.00 | | | Yes | |
| 450.00 | | | Yes | |
| 350.00 | | | Yes | |
| 500.00 | | | Yes | |
| 250.00 | | | Yes | Yes |
| 500.00 | | | Yes | Yes |
| 150.00 | Yes | Yes | Yes | Yes |
| 200.00 | | | | Yes |
| 250.00 | | | | Yes |
| 500.00 | | | Yes | |
| 1,000.00 | | | Yes | |
| 50.00 | | | Yes | |
| 475.00 | | | Yes | Yes |
| 100.00 | | | Yes | |
| 50.00 | | | Yes | |
| 50.00 | | | Yes | |
| 1,000.00 | | | Yes | |
| 100.00 | | | Yes | |
| 125.00 | | | Yes | |
| 125.00 | | | Yes | |
| 125.00 | | | Yes | |
| 125.00 | | | Yes | |

3

**533**

**Discovery is ongoing and subject to change.*

| | Amount | 2019 Taxwise Filings | 2020 Taxwise Filings | 2021 Taxwise Filings | 2022 Taxwise Filings |
|---|---|---|---|---|---|
| | 750.00 | | | Yes | |
| | 750.00 | | | Yes | Yes |
| | 400.00 | | | Yes | |
| | 400.00 | | | Yes | |
| | 600.00 | | | Yes | |
| | 85.00 | | | Yes | |
| | 35.00 | | | Yes | |
| | 1,200.00 | | | | Yes |
| | 500.00 | | | Yes | |
| | 1,500.00 | | | | |
| | 1,560.00 | | | Yes | |
| | 1,325.00 | | | Yes | |
| | 250.00 | | | Yes | |
| | 1,100.00 | | | Yes | |
| | 550.00 | | | Yes | |
| | 200.00 | | | Yes | |
| | 200.00 | | | | |
| | 50.00 | | | Yes | |
| | 25.00 | | | Yes | |
| | 225.00 | | | Yes | |
| | 350.00 | | | Yes | |
| | **69,430.00** | | | | |

**534**

<anthonylegendre@live.com>; michael.paralegal.legendre@gmail.com
<michael.paralegal.legendre@gmail.com>; vanessa.paralegal.legendre@gmail.com
<vanessa.paralegal.legendre@gmail.com>; Michael Russo <mrusso@lawgicalinsight.com>
**Subject:** Re: CFTAS v. Ali - FORENSIC EXAMINATION

I write to summarize this morning's exchange of credentials. In short, we received no
credentials. See below for details.

Mr. Ali claims **privilege** for the following credentials and refused access.

1. allan@aaalicpa.com

2. scan@aaalicpa.com

3. sharp5778@gmail.com

4. Sigma Tax Pro Software
Regarding the below account, Mr. Ali represents this is the **personal** email of Mr. Ali's wife,
Malika Ali.

5. malikajbara@hotmail.com
Mr. Ali represented he would make an attempt to **recover** the following credentials. He
represents he has not accessed these accounts in a long time, so he must (a) reset the
credentials or (b) may have the password saved on an old PC. We understand this to mean
an old PC that was not presented to us for examination.

6. Aaalicpa@gmail.com

7. allan1985.ali@gmail.com

8. allan1322@gmail.com
Mr. Ali represented he **does not know** about **or no longer has access** to the following
credentials / services.

9. acpa.thesagenext.com (Says it is inactive/closed)

10. ethan7811@gmail.com (Has no knowledge)

11. kbell104@hotmail.com (Has no knowledge)
Respectfully,

**Andrew Bauta, Esq. |** COO
abauta@lawgicalinsight.com
**Office**: 786-687-4075 **| Mobile:** 305-484-6695
**Fax**: 786-685-2061
2 South Biscayne Blvd. Suite 1600
Miami, FL 33131
www.lawgicalinsight.com

# EXHIBIT I

**U.S. v. Georgia Public Service Commission, 371 U.S. 285 (1963)**
83 S.Ct. 397, 9 L.Ed.2d 317, 47 P.U.R.3d 321

KeyCite Yellow Flag - Negative Treatment
Distinguished by Management Ass'n for Private Photogrammetric Surveyors
v. U.S., E.D.Va., December 13, 2006

83 S.Ct. 397
Supreme Court of the United States

UNITED STATES, Appellant,

v.

GEORGIA PUBLIC
SERVICE COMMISSION.

No. 81.
|
Argued Oct. 18, 1962.
|
Decided Jan. 14, 1963.

**Synopsis**

Action by United States to prevent Georgia Public Service
Commission from regulating tariff charge for intrastate
shipment of household goods of government employees
under contracts between carriers and General Services
Administration. The United States District Court for the
Northern District of Georgia, 197 F.Supp. 793, rendered
judgment for defendants, and the United States appealed.
The Supreme Court, Mr. Justice Douglas, held that Georgia
regulations requiring higher rates on shipments must yield to
lower rate in contract between carrier and General Services
Administration for intrastate transportation of household
goods of federal employees.

Reversed.

Mr. Justice Stewart, Mr. Justice Harlan and Mr. Justice
Goldberg, dissented.

West Headnotes (7)

**[1]**    **Federal Courts**    Three-judge courts

Supreme Court has jurisdiction of direct appeal
if case was required to be heard by district court
of three judges. 28 U.S.C.A. § 1253.

6 Cases that cite this headnote

**[2]**    **Federal Courts**    Supremacy Clause and
preemption in general

Suit presenting question whether Georgia Public
Service Commission regulations sought to be
applied to carriers, which contracted with
government agency, burdened federal officers
in carrying out federal functions and conflicted
with federal procurement policy required three-
judge court. 28 U.S.C.A. § 2281.

16 Cases that cite this headnote

**[3]**    **Federal Courts**    Composition of court,
powers, and procedure

Once three-judge district court has been properly
convened, case can be disposed of below or on
appeal on any ground, whether or not it would
have justified calling of three-judge court. 28
U.S.C.A. § 2281.

18 Cases that cite this headnote

**[4]**    **Carriers**    Scope and validity of regulations
in general

**Federal Preemption**    Carriers in general

Provision that General Services Administrator
may seek before state agency preferential
treatment for federal shipments does not
require that state fixed rates govern unless he
can get them changed. Federal Property and
Administrative Service Act of 1949, § 201, and
subd. (a), 40 U.S.C.A. § 481 and subd. (a);
Interstate Commerce Act, § 22, 49 U.S.C.A. § 22.

2 Cases that cite this headnote

**[5]**    **Carriers**    Scope and validity of regulations
in general

**Federal Preemption**    Carriers in general

Georgia Public Service Commission regulations
requiring higher rates on shipments must yield
to lower rate in contract between carrier and
General Services Administration for intrastate
transportation of household goods of federal
employees. 10 U.S.C.A. § 2301 et seq.; 28
U.S.C.A. §§ 1253, 2101(b), 2281; Federal
Property and Administrative Service Act of

1949, § 201(a)(4), 40 U.S.C.A. § 481(a)(4); 5
U.S.C.A. § 73b–1; 37 U.S.C.A. § 253(c); 41
U.S.C.A. § 252; Interstate Commerce Act, § 22,
49 U.S.C.A. § 22.

2 Cases that cite this headnote

[6]    **Federal Preemption**      State law as obstacle
to objectives or purpose of federal law

By reason of supremacy clause, state is without
power to provide conditions on which federal
government will effectuate its policies.

14 Cases that cite this headnote

[7]    **Constitutional Law**      Wisdom

**Constitutional Law**      Encroachment on
Executive

Whether federal policy is wise one is for
Congress and Chief Executive to determine, and
once they have spoken it is court's function to
enforce their will.

2 Cases that cite this headnote

**Attorneys and Law Firms**

**\*\*398    \*285**  Archibald Cox, Sol. Gen., for appellant.

Paul Rodgers, Atlanta, Ga., for appellee.

**Opinion**

**\*286** Mr. Justice DOUGLAS delivered the opinion of the
Court.

Civilian employees of the Federal Government were
reassigned from Savannah to Atlanta, Georgia, and the
General Services Administration sought to arrange by
competitive bidding for the intrastate mass shipment of
their household goods between those cities. Georgia law,
however, does not permit a rate for transporting household
goods of more than one family; it requires carriers to quote
schedules of approved rates, the total charge to be the sum
of the charges figured for individual families.[1] Five carriers
submitted bids quoting rates lower than those allowed by the
Georgia tariff. After the competitive bidding was over and the

contract awarded to the lowest responsible bidder, the Georgia
Public Service Commission threatened these five carriers
with revocation of their intrastate operating certificates should
they perform at the rates quoted GSA. The successful bidder
thereupon notified GSA that it was unable to perform the
contract. Appellee instituted proceedings against the carrier,
looking toward the revocation of its certificate. The United
States sought to intervene in that proceeding but it was not
allowed to do so. Appellee also refused to allow a GSA
official to testify as to the circumstances of the shipping
contract that the Commission claimed conflicted with Georgia
law.

Thereupon the United States filed suit in the District Court
and requested the convocation of a three-judge court. The
complaint alleged, inter alia, that Georgia law burdened
federal officers in carrying out their federal functions and
conflicted with federal procurement **\*287** policy. The issue
as finally joined raises squarely those questions. The District
Court held that there was no conflict between Georgia's
regulatory scheme and the federal one, concluding that the
case is governed by **\*\*399** Penn Dairies, Inc., v. Milk
Control Comm., 318 U.S. 261, 63 S.Ct. 617, 87 L.Ed. 748.
See 197 F.Supp. 793. The case is here on direct appeal (28
U.S.C. ss 1253, 2101(b)), 28 U.S.C.A. ss 1253, 2101(b); we
postponed consideration of the question of jurisdiction until a
hearing on the merits. 369 U.S. 882, 82 S.Ct. 1157.

[1] [2] [3]  We have jurisdiction of this appeal if the
case was 'required * * * to be heard and determined by a
district court of three judges.' 28 U.S.C. s 1253, 28 U.S.C.A.
s 1253. The question whether the Georgia regulatory scheme
is unconstitutional because it burdened the exercise by the
United States of its power to maintain a civilian service and
to carry out other constitutional functions is a substantial
one, as our decisions in Penn Dairies, Inc., v. Milk Control
Comm., supra; Public Utilities Comm. of California v. United
States, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 and Paul v.
United States, 371 U.S. p. 245, 83 S.Ct. p. 426, and therefore
required a three-judge court to adjudicate it. 28 U.S.C. s
2281, 28 U.S.C.A. s 2281; Idlewild Bon Voyage Liquor Corp.
v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794;
Florida Lime & Avacado Growers v. Jacobsen, 362 U.S. 73,
80 S.Ct. 568, 4 L.Ed.2d 568. We have presented here more
than an isolated issue whether a state law conflicts with a
federal statute and therefore must give way by reason of the
Supremacy Clause. Cf. Kesler v. Department of Public Safety,
369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641. Direct conflict
between a state law and federal constitutional provisions
raises of course a question under the Supremacy Clause but
one of a broader scope than where the alleged conflict is

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

only between a state statute and a federal statute that might be resolved by the construction given either the state or the federal law. Id., 157, 82 S.Ct. p. 810. So we have a clear case for convening a three-judge court. Once convened the case can be disposed of below or here on any ground, whether or not it would have justified the **\*288** calling of a three-judge court. See Sterling v. Constantin, 287 U.S. 378, 393—394, 53 S.Ct. 190, 193, 77 L.Ed. 375; Railroad Comm. v. Pacific Gas Co., 302 U.S. 388, 391, 58 S.Ct. 334, 336, 82 L.Ed. 319.

The District Court, acting on motions for summary judgment filed by each of the parties, said that were the property being transported 'strictly governmental property,' the case would be governed by Public Utilities Comm. of California v. United States, 355 U.S. 534, 78 S.Ct. 446. But since the property involved here is household goods, not military supplies, the court concluded that the case is controlled by Penn Dairies, Inc. v. Milk Control Comm., supra.

The distinction drawn by the District Court between this case and Public Utilities Comm. of California v. United States, supra, is not tenable. Between 1943, when Penn Dairies was decided, and 1958, when Public Utilities Comm. of California was decided, Congress enacted the Armed Services Procurement Act of 1947, 62 Stat. 21, later codified without substantial change, 70A Stat. 127, 10 U.S.C. s 2301 et seq., 10 U.S.C.A. s 2301 et seq., which extended and elaborated the federal procurement policy of negotiated rates which, as we noted in the Public Utilities Comm. of California case, conflicted with California's policy of regulated rates. 355 U.S., at 544, 78 S.Ct., at 453. The federal Regulation involved in that case was superseded in 1958 by the Military Traffic Management Regulation.[2] That Regulation includes the 'procedures to govern the movement of uncreated household goods.'[3] Another Regulation provides that their transportation is authorized 'by the mode of transportation * * * which results in the lowest over-all cost to the Government and which provides the required **\*\*400** service satisfactorily.'[4] This entails 'negotiation' with **\*289** carriers for 'rates'[5] on military traffic and 'Special arrangements pertaining to other freight traffic.'[6] Examples could be multiplied but enough has been said to show that the new Military Traffic Management Regulation continues in effect the provisions of the earlier regulation in force when the Public Utilities Comm. of California case was decided.

The same policy of negotiating rates for shipment of federal property now governs nondefense agencies. The basic statute

is the Federal Property and Administrative Services Act of 1949, 63 Stat. 383, 40 U.S.C. s 481, 40 U.S.C.A. s 481, 63 Stat. 393, as amended, 41 U.S.C. s 251 et seq., 41 U.S.C.A. s 251 et seq. Its procurement provisions are substantially similar to those contained in the Armed Services Procurement Act of 1947. It was, indeed, enacted to extend to GSA 'the principles of the Armed Services Procurement Act of 1947, with appropriate modifications principally designed to eliminate provisions applicable primarily to the military.' H.R.Rep.No. 670, 81st Cong., 1st Sess., p. 6, U.S.Code Cong.Service 1949, p. 1479. Under the regulations promulgated pursuant to this Act, procurement of transportation and improvement of transportation and traffic practices of executive agencies are entrusted to the Commissioner of the Transportation and Public Utilities Service (TPUS).[7] He is to represent the executive agencies 'in negotiations of rates and contracts for transportation.'[8] The Commissioner in procurement and contracting.[9]

'(a) Negotiates purchases and contracts for property and services without advertising, and makes any **\*290** determinations and decisions required in connection therewith * * *.

'(b) Makes purchases and contracts for property and services by advertising, and determines that the rejection of all bids is in the public interest.

'(c) Determines the type of negotiated contract which will promote the best interests of the Government * * *.'

The Regulation governing the Commissioner's functions enjoins him:

'to evaluate mass movements of household goods and personal effects and, when feasible, to negotiate with carriers to effect the most economical basis for the movement of such household goods and personal effect.'[10]

'Except when the exigency of the movement precludes such action, all requests for rates for mass movements * * * shall be made by formal advertising (for bids) * * *.'[11]

That Regulation is plainly within the purview of the Act, which provides in s 302, as amended, 41 U.S.C. s 252, 41 U.S.C.A. s 252 as follows:
'All purchases and contracts for property and services shall be made by advertising, as provided in section 253 of this title,

except that such purchases and contracts may be negotiated by the agency head without advertising if—

**\*\*401** '(2) the public exigency will not admit of the delay incident to advertising;

**\*291** '(10) for property or services for which it is impracticable to secure competition;

'(14) for property or services as to which the agency head determines that bid prices after advertising therefor are not reasonable * * * or have not been independently arrived at in open competition: Provided, That * * * (B) the negotiated price is the lowest negotiated price offered by any responsible supplier * * *.'

Section 253(b) provides that awards shall be made 'to that responsible bidder whose bid * * * will be most advantageous to the Government, price and other factors considered.' Moreover, 40 U.S.C. s 481(a)(4), 40 U.S.C.A. s 481(a)(4) directs GSA to represent executive agencies 'in negotiations with carriers' with respect to transportation 'for the use of executive agencies.' Transfer of household goods of federal employees, whether military[12] or civilian, has been made by Congress a charge against federal funds when employees are transferred from one official station to another.[13]

It is said that the 1949 Act gives the Administrator power to deal only with whoever has authority to make rate decisions, whether it be the carrier on interstate shipments or the state regulatory agency on intrastate shipments. 40 U.S.C. s 481, 40 U.S.C.A. s 481 does indeed provide:
'The Administrator shall, in respect of executive agencies, and to the extent that he determines that so doing is advantageous to the Government in terms of economy, efficiency, or service, and with due regard to the program activities of the agencies concerned—

**\*292** '(4) with respect to transportation and other public utility services for the use of executive agencies, represent such agencies in negotiations with carriers and other public utilities and in proceedings involving carriers or other public utilities before Federal and State regulatory bodies * * *.' (Emphasis added.)

**[4]** But that provision does not say that state-fixed rates govern the federal procurement official unless he can get them changed. It is comparable to s 22 of the Interstate

Commerce Act, 49 U.S.C. s 22, 49 U.S.C.A. s 22, which allows the United States to obtain preferred rates. 'The object of the section was to settle, beyond doubt, that the preferential treatment of certain classes of shippers and travelers * * * is not necessarily prohibited.' Nashville R. Co. v. Tennessee, 262 U.S. 318, 323, 43 S.Ct. 583, 585, 67 L.Ed. 999. And see Southern R. Co. v. United States, 322 U.S. 72, 64 S.Ct. 869, 88 L.Ed. 1144; United States v. Interstate Commerce Comm., 352 U.S. 158, 174, 77 S.Ct. 241, 249, 1 L.Ed.2d 211.

By s 481(a) the Administrator is authorized to seek before state agencies preferential treatment for federal shipments. But there is not a word suggesting that, failing in that regard, he is bound to accept the state-fixed rate. The Act and the Regulation speak too clearly in terms of the 'lowest over-all cost' to the Government, either through competitive bidding or negotiation with carriers, for us to conclude that the only relief against state fixed rates is an administrative remedy before the state agency either through negotiation or litigation. Congress has not tied the hands of the federal procurement officials so tightly.

**\*\*402** **[5]** **[6]** **[7]** We have then a federal procurement policy of negotiated rates for transporting household goods of federal employees—a policy as clear and as explicit as the federal policy for transporting military supplies involved in **\*293** Public Utilities Comm. of California v. United States, supra. The Georgia policy, which is opposed to this federal policy, must accordingly give way. For as we noted in Public Utilities Comm. of California v. United States, supra, 355 U.S. at 544, 78 S.Ct. at 453, a State is without power by reason of the Supremacy Clause to provide the conditions on which the Federal Government will effectuate its policies. Whether the federal policy is a wise one is for the Congress and the Chief Executive to determine. See Perkins v. Lukens Steel Co., 310 U.S. 113, 127, 60 S.Ct. 869, 876, 84 L.Ed. 1108 et seq. Once they have spoken it is our function to enforce their will.

Reversed.

Mr. Justice STEWART, whom Mr. Justice HARLAN and Mr. Justice GOLDBERG join, dissenting.

The governing law in this case is Title III of the Federal Property and Administrative Services Act of 1949,[1] but that Act simply 'extends to the General Services Agency the principles of the Armed Services Procurement Act of 1947.[2]

In Paul v. United States, 371 U.S. 270, 83 S.Ct. 441, I have stated why I think those principles clearly contemplate that government procurement is to be conducted within the framework of valid state regulatory legislation. For the reasons there stated, I also dissent from the Court's judgment in this case.

Only one additional consideration needs mention here. The Court purports to find some additional support for the result in this case in one provision of the 1949 Act which has no counterpart in the 1947 Act. Section 201(a) of the 1949 Act[3] provides, in pertinent part,

'(a) The Administrator shall * * *

**\*294** '(4) with respect to transportation and other public utility services for the use of executive agencies, represent such agencies in negotiations with carriers and other public utilities and in proceedings involving carriers or other public utilities before Federal and State regulatory bodies * * *.' (Emphasis added.)

The Court seizes upon the words 'in negotiations with carriers' as evidence that Congress authorized the Administrator to by-pass state rate schedules when placing contracts for intrastate transportation.

Far from supporting the Court's position, I think s 201(a) is simply another example of Congress' basic assumption that state price regulation will remain applicable to federal procurement transactions. The section refers both to negotiations with individual carriers and to proceedings before regulatory agencies. It seems to me that the authorization of these alternative procedures must be read against the background of s 22 of the Interstate Commerce Act, 49 U.S.C. s 22, 49 U.S.C.A. s 22, which provides that I.C.C. rate schedules governing interstate shipments are not to apply to transportation for the Federal Government. In light of this express statutory exemption for interstate shipments, it appears quite clear that s 201(a) says nothing more than that the Administrator has power to deal with whoever **\*\*403** has authority to make rate decisions—with the carrier for interstate shipments, and with state regulatory agencies for intrastate shipments when regulated by state law.[4]

### All Citations

371 U.S. 285, 83 S.Ct. 397, 9 L.Ed.2d 317, 47 P.U.R.3d 321

### Footnotes

1    See Ga. Household Goods Tariff No. 1—B, GPSC—MF No. 3, Rules 8 and 15. The latter provides in part that 'Property of two or more families or establishments will not be accepted for transportation as a single shipment.'

2    Promulgated March 1958, as amended to October 10, 1960.

3    Id., c. 101, 101001.

4    Joint Travel Regulations, c. 8, April 1, 1959, as amended to October 1, 1961, 8001.

5    Military Traffic Management Regulation, amended to November 5, 1959, c. 201, 201001(b).

6    Id., 201001(k).

7    General Services Adm. Order, ADM 5450.3, change 4, 141a; TPS 7460.1, Attachment, 3, March 15, 1960.

8    ADM, supra, 141b; TPS 7460.1, 4.

9    Id., 142a.

10   TPS 7460.1, 3.

11   Id., Attachment, 7b(1).

12   63 Stat. 813, as amended, 37 U.S.C. s 253(c), 37 U.S.C.A. s 253(c).

13   60 Stat. 806, as amended, 5 U.S.C. s 73b—1, 5 U.S.C.A. s 73b—1.

U.S. v. Georgia Public Service Commission, 371 U.S. 285 (1963)

83 S.Ct. 397, 9 L.Ed.2d 317, 47 P.U.R.3d 321

1   63 Stat. 393, as amended, 41 U.S.C. ss 251—260, 41 U.S.C.A. ss 251—260.

2   H.R.Rep. No. 670, 81st Cong., 1st Sess. 6.

3   63 Stat. 383, as amended, 40 U.S.C. s 481(a), 40 U.S.C.A. s 481(a).

4   The same conclusion must be drawn from the several regulations cited by the Court. When read in full, both the military and civilian transportation regulations seem to anticipate that procurement officers will deal sometimes directly with individual carriers, and sometimes with a regulatory body. The Executive Director, Military Traffic Management Agency, is made responsible for:

    'Negotiation with all for-hire carriers of cargo or their rate-making agencies for classifications, rates, charges, rules and regulations on military traffic * * *.' Chapter 201, Military Traffic Management Regulation, March 1958, as amended to November 5, 1959.

    Similarly, regulations governing nonmilitary transportation make the Transportation and Public Utilities Service responsible for:

    'the provision of advice and expert testimony on behalf of executive agencies in proceedings before Federal and State regulatory bodies involving transportation, public utilities (and) communications * * *.' General Services ADM Order, Adm. 5450.3, Change 4, July 31, 1959, s 1, 141(b).

---

End of Document
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT J

🚩 KeyCite Yellow Flag - Negative Treatment

Declined to Extend by Zervos v. Trump, N.Y.Sup., March 20, 2018

63 S.Ct. 1137
Supreme Court of the United States.

MAYO et al.

v.

UNITED STATES.

No. 726.
|
Argued April 16, 1943.
|
Decided June 1, 1943.
|
Rehearing Denied Oct. 11, 1943.

See 320 U.S. —, 64 S.Ct. 27, 88 L.Ed. —.

**Synopsis**

Action by the United States of America against Nathan Mayo and another for an injunction. From a judgment granting an injunction, 47 F.Supp. 552, the defendants appeal.

Affirmed.

West Headnotes (8)

**[1]**　**Agriculture**　🔑　**Fertilizers**

The purpose of Florida statute regulating sale or distribution of commercial fertilizer is to assure consumers that they will obtain the quality of fertilizer for which they pay, and that substances deleterious to land will be excluded from the material sold. F.S.A. § 576.01 et seq.

**[2]**　**Agriculture**　🔑　**Fertilizers**

**Federal Preemption**　🔑　**Property**

Where federal government, for purpose of carrying out soil-building program, purchased commercial fertilizer outside state for distribution to farmers in state, the cost of the fertilizer being deducted from participating farmer's benefit payments, the government was

the "owner" of fertilizer in state awaiting distribution, so that state could not require payment of inspection fee. F.S.A. § 576.01 et seq.; Soil Conservation and Domestic Allotment Act § 1 et seq., 16 U.S.C.A. § 590a et seq.; Act July 22, 1942, 56 Stat. 664; U.S.C.A.Const. art. 6.

19 Cases that cite this headnote

**[3]**　**Federal Preemption**　🔑　**Nature of preemption**

The United States is a government of delegated powers none of which may be exercised throughout the nation by any one state, and therefore it is necessary for uniformity that laws of the United States be dominant over those of any state. U.S.C.A.Const. art. 6.

9 Cases that cite this headnote

**[4]**　**States**　🔑　**Immunity of federal government and its instrumentalities from state regulation**

Activities of federal government are free from regulation by any state. U.S.C.A.Const. art. 6.

41 Cases that cite this headnote

**[5]**　**Federal Preemption**　🔑　**Taxation and revenue**

Congress has the power to authorize regulation, including taxation, by state of federal instrumentalities.

20 Cases that cite this headnote

**[6]**　**Federal Preemption**　🔑　**Taxation and revenue**

Congress may protect its agencies from burdens of local taxation.

10 Cases that cite this headnote

**[7]**　**Agriculture**　🔑　**Fertilizers**

**Federal Preemption**　🔑　**Property**

Where federal government, for purpose of carrying out soil-building program, purchased commercial fertilizer outside state for distribution to farmers in state, the "supremacy" clause of the Federal Constitution precluded the

63 S.Ct. 1137, 147 A.L.R. 761, 87 L.Ed. 1504

exaction of state inspection fee notwithstanding federal legislation was silent as to any exemption on ground of sovereignty. F.S.A. § 576.01 et seq.; Soil Conservation and Domestic Allotment Act § 1 et seq., 16 U.S.C.A. § 590a et seq.; Act July 22, 1942, 56 Stat. 664; U.S.C.A.Const. art. 6.

31 Cases that cite this headnote

[8]    **Federal Preemption**    🗝 Taxation and revenue

Where governmental action is being carried on by the United States itself and Congress does not affirmatively declare its instrumentalities or properties subject to regulation or taxation by state, the inherent freedom of federal government from regulation or taxation by state continues.

25 Cases that cite this headnote

**1138   *441  Appeal from the District Court of the United States for the Northern District of Florida.

**Attorneys and Law Firms**

Messrs. William C. Pierce, of Tampa, Fla., and James H. Millican, Jr., of Palatka, Fla., for appellants.

Mr. Francis M. Shea, Asst. Atty. Gen., for appellee.

**Opinion**

*442  Mr. Justice REED delivered the opinion of the Court.

This record presents for review the action of a specially constituted district court in enjoining, on final hearing, the Commissioner of Agriculture of the State of Florida and his agents from enforcing against the United States the provisions of the Florida Commercial Fertilizer Law. Judicial Code, ss 266 and 238, 28 U.S.C.A. ss 380, 345.

[1]    By this Florida act the sale or distribution of commercial fertilizer is comprehensively regulated. There is included a requirement of a label or stamp on each bag evidencing the payment of an inspection fee. Unless so identified, the bags may be seized and sold by the sheriff of the county. The purpose of the legislation is to assure the consumers that they will obtain the quality of fertilizer for which they pay and that substances deleterious to the land will be excluded from the material sold. Florida Statutes, 1941, c. 576, F.S.A. s 576.01 et seq.

The United States, under the direction of the Secretary of Agriculture, acting under the provisions of the Soil Conservation and Domestic Allotment Act,[1] purchased commercial fertilizer outside of Florida and undertook its distribution to consumers within that state during the fiscal year ending June 30, 1943, without state inspection and without paying for or affixing to the bags the inspection stamps required by the Florida act. This distribution was a part of the national soil conservation program.[2] Through  *443 the use of fertilizers with a high content of superphosphate on winter legumes the plan sought, by plowing under the legumes, to obtain scarce nitrogen for the commercial crops which were to follow. To secure a heavy growth of the legumes before plowing time, the fertilizer should be applied and the legumes planted prior to October 15th. Farmers who desire to participate in the conservation program follow the required practices under the supervision of county committees or associations which are federal instrumentalities for carrying out the plans. Section 8(b).

The soil-building and soil-conserving practices, when carried out by a participating farmer, entitle him to a grant or benefit payment. Section 8. In order that the farmer may earn this grant, phosphate fertilizers are furnished to him in advance by the Government through the county committee. The cost is deducted from the grant. For the purpose of carrying out the program, the United States caused fertilizers purchased by its agents to be shipped into Florida to the local agricultural associations for such distribution. As the sacks were without stamps, the Florida Commissioner of Agriculture on September 10, 1942, gave a 'stop sale' notice to the county agricultural association to cease distribution.

The Attorney General of the United States directed the filing of a complaint against the Florida officials who are charged with the enforcement of the Florida law. The complaint set out the 'stop sale' notice, the refusal of numerous persons utilized by the United States in its work to proceed with the distribution of the fertilizer without the protection of an injunction, the frustration of the conservation program of the Secretary of Agriculture, the imminency of irreparable damage because of the necessity of prompt distribution of the fertilizer and the lack of any efficient remedy other than a temporary  **1139  and permanent injunction. Florida objected to the complaint for failure to state a cause of action and set up numerous defenses  *444  which have now been reduced by the specification of errors and the brief to the fundamental one that the United States as to fertilizer to

**Mayo v. U.S., 319 U.S. 441 (1943)**

63 S.Ct. 1137, 147 A.L.R. 761, 87 L.Ed. 1504

be used upon Florida soil is not exempt by Constitution or statute from compliance with reasonable state regulation or the payment of reasonable inspection fees. At any rate, it is urged, inspection fees may be collected under the facts heretofore stated as the Government is merely a conduit or service agent for the fertilizer manufacturer or the Florida farmer.

 [2]    The District Court disposed, we think, of the conduit or service agent argument by its finding that the Government 'became the owner' of the fertilizer at the manufacturing plants which are outside the state and was engaged in distributing it in Florida as a part of the national soil conservation program. In promoting soil conservation by precept and demonstration through the Department of Agriculture, the United States, as in its other authorized activities, acts in a governmental capacity.[3] Prior to the Soil Conservation Act, Congress had, as a matter of custom, put money and responsibility in the hands of the executive to promote agriculture in the most general sense. It is commonplace for appropriations to be made for loans to farmers.[4] The distribution of fertilizer owned by the United States as a charge against grants to aid soil conservation is of the same character. Section 8(b). Cf. United States v. Butler, 297 U.S. 1, 65, 68, 56 S.Ct. 312, 319, 320, 80 L.Ed. 477, 102 A.L.R. 914. No inference of fact or conclusion of law, we think, can be properly drawn from the circumstances of this fertilizer  *445  distribution other than that the United States was the owner of the fertilizer in Florida awaiting distribution.


The other findings are substantially in accord with the allegations of the complaint and are not contested. The District Court, one judge dissenting, enjoined the application of Florida law to the above described acts of the United States on the ground of federal immunity from state regulation.

 [3]    [4]    Since the United States is a government of delegated powers, none of which may be exercised throughout the Nation by any one state, it is necessary for uniformity that the laws of the United States be dominant over those of any state. Such dominancy is required also to avoid a breakdown of administration through possible conflicts arising from inconsistent requirements. The supremacy clause of the Constitution states this essential principle. Article VI. A corollary to this principle is that the activities of the Federal Government are free from regulation by any state.[5] No other adjustment of competing enactments or legal principles is possible.

Appellants' argument in support of the inspection fee is that neither the Constitution nor any federal statute exempts the United States from paying reasonable state inspection fees to support permissible regulation of commercial fertilizer. Such inspections are allowable where the United States is not the owner.  **1140  Patapsco Guano Co. v. Board of Agriculture of North Carolina, 171 U.S. 345, 18 S.Ct. 862, 43 L.Ed. 191; Red 'C' Oil Co. v. Board of Agriculture of North Carolina, 222 U.S. 380, 392, 32 S.Ct. 152, 154, 56 L.Ed. 240. Appellants urge that since they are allowable to protect the farmers against the imposition of fertilizers of quality possibly inferior to the manufacturers' representations, the inspection fee should  *446  be paid on fertilizers distributed by the United States, where the federal law is silent as to any exemption on the ground of sovereignty. Reliance is placed upon Graves v. People of State of New York ex rel. O'Keefe, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R. 1466.

 [5]    [6]    It lies within Congressional power to authorize regulation, including taxation, by the state of federal instrumentalities.[6] No such permission is granted here. Compare 56 Stat. 664. Congress may protect its agencies from the burdens of local taxation.[7] There are matters of local concern within the scope of federal power which in the silence of Congress may be regulated in such manner as does not impair national uniformity.[8] There are federal activities which in the absence of specific Congressional consent may be affected by state regulation.[9] Graves v. People of State of New York ex rel. O'Keefe, supra, upon which appellants rely so strongly is in this latter group. In that case, an employee of the Home Owners' Loan Corporation, a Federal agency which was assumed to have the same immunity from state taxation as the United States itself, sought exemption from New York's income tax on the ground that a tax upon the employee's salary imposed an unconstitutional burden upon the federal government. This position was not without precedent.[10] Upon full reexamination of the authorities and the reasoning upon which the earlier cases had allowed the employees  *447  of one sovereignty freedom from the exactions of the other, this Court declared that in the absence of a federal declaration of immunity from state taxation, no such 'tangible or certain economic burden is imposed on the (United States) as would justify a court's declaring that the (employee) is clothed with the implied constitutional tax immunity of the government by which he is employed.' 306 U.S. at page 486, 59 S.Ct. at page 601, 83 L.Ed. 927, 120 A.L.R. 1466.

63 S.Ct. 1137, 147 A.L.R. 761, 87 L.Ed. 1504

 **[7]**  **[8]**  These inspection fees are laid directly upon the United States. They are money exactions the payment of which, if they are enforceable, would be required before executing a function of government. Such a requirement is prohibited by the supremacy clause. We are not dealing as in Graves v. State of New York, etc., supra, with a tax upon the salary of an employee, or as in State of Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, 140 A.L.R. 615, with a tax upon the purchases of a supplier, or as in Penn Dairies, Inc., v. Milk Control Comm. of Pennsylvania, 318 U.S. 261, 63 S.Ct. 617, 87 L.Ed. 748, decided March 1, 1943, with price control exercised over a contractor with the United States. In these cases the exactions directly affected persons who were acting for themselves and not for the United States. These fees are like a tax upon the right to carry on the business of the post office or upon the privilege of selling United States bonds through federal officials. Admittedly the state inspection service is to protect consumers from fraud but in carrying out such protection, the federal function must be left free.[11] This freedom is inherent **1141 in sovereignty. The silence of Congress as to the subjection of its instrumentalities, other than the United States, to local taxation or regulation is to be interpreted in the setting of the applicable **448 legislation and the particular exaction. Shaw v. Gibson-Zahniser Oil Corp., 276 U.S. 575, 578, 48 S.Ct. 333, 334, 72 L.Ed. 709. But where, as here, the governmental action is carried on by the United States itself and Congress does not affirmatively declare its instrumentalities or property subject to regulation or taxation, the inherent freedom continues.

Affirmed.

Mr. Justice BLACK concurs in the result.

**All Citations**

319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504, 147 A.L.R. 761

## Footnotes

1    49 Stat. 163, 1148; 50 Stat. 329; 55 Stat. 257, 860, 16 U.S.C.A. s 590a et seq.; 56 Stat. 664.

2    Sections 7 and 8 of the Soil Conservation and Domestic Allotment Act, as amended, 16 U.S.C.A. ss 590g, 590h.

3    Graves v. People of State of New York ex rel. O'Keefe, 306 U.S. 466, 477, 59 S.Ct. 595, 596, 83 L.Ed. 927, 120 A.L.R. 1466; Pittman v. Home Owners' Corp., 308 U.S. 21, 32, 60 S.Ct. 15, 17, 84 L.Ed. 11, 124 A.L.R. 1263; Federal Land Bank v. Bismarck Co., 314 U.S. 95, 102, 62 S.Ct. 1, 86 L.Ed. 65.

4    Establishment of the Department of Agriculture, 12 Stat. 387, 5 U.S.C.A. s 511 et seq., 557; of colleges of agriculture, 26 Stat. 417, 7 U.S.C.A. s 322 et seq.; Federal Farm Loan Act, 39 Stat. 360, 12 U.S.C.A. s 641 et seq., 40 Stat. 431, 12 U.S.C.A. s 991; Federal Intermediate Credit Banks, 42 Stat. 1454, 12 U.S.C.A. s 641 et seq.; Federal Farm Board, 46 Stat. 11, 12 U.S.C.A. s 1141 et seq.; boll weevil grant, 45 Stat. 539, 565.

5    McCulloch v. Maryland, 4 Wheat. 316, 427, 4 L.Ed. 579; State of Ohio v. Thomas, 173 U.S. 276, 283, 19 S.Ct. 453, 455, 43 L.Ed. 699; Owensboro National Bank v. Owensboro, 173 U.S. 664, 667, 19 S.Ct. 537, 538, 43 L.Ed. 850; Johnson v. Maryland, 254 U.S. 51, 41 S.Ct. 16, 65 L.Ed. 126; Arizona v. California, 283 U.S. 423, 451, 51 S.Ct. 522, 524, 75 L.Ed. 1154.

6    Owensboro National Bank v. Owensboro, 173 U.S. 664, 667, 19 S.Ct. 537, 538, 43 L.Ed. 850; Baltimore National Bank v. Tax Comm., 297 U.S. 209, 56 S.Ct. 417, 80 L.Ed. 586; Pacific Coast Dairy, Inc., v. Dept. of Agriculture of California, 318 U.S. 285, 63 S.Ct. 628, 87 L.Ed. 761.

7    Pittman v. Home Owners' Corp., 308 U.S. 21, 60 S.Ct. 15, 84 L.Ed. 11, 124 A.L.R. 1263, and cases cited.

8    Standard Dredging Corp. v. Murphy, 319 U.S. 306, 63 S.Ct. 1067, 87 L.Ed. 1416; State of California v. Thompson, 313 U.S. 109, 61 S.Ct. 930, 85 L.Ed. 1219.

9    State of Alabama v. King & Boozer, 314 U.S. 1, 9, 62 S.Ct. 43, 45, 86 L.Ed. 3, 140 A.L.R. 615, and cases cited.

**Mayo v. U.S., 319 U.S. 441 (1943)**
63 S.Ct. 1137, 147 A.L.R. 761, 87 L.Ed. 1504

10    Dobbins v. Commissioners of Erie County, 16 Pet. 435, 10 L.Ed. 1022; Collector v. Day, 11 Wall. 113, 20 L.Ed. 122; New York ex rel. Rogers v. Graves, 299 U.S. 401, 57 S.Ct. 269, 81 L.Ed. 306; Brush v. Commissioner, 300 U.S. 352, 57 S.Ct. 495, 81 L.Ed. 691, 108 A.L.R. 1428.

11    Similar conclusions have been reached in adjacent fields. The state is powerless to punish its citizens for acts done in exclusively federal territory. Pacific Coast Dairy, Inc. v. Dept. of Agriculture of California, 318 U.S. 285, 63 S.Ct. 628, 87 L.Ed. 761, decided March 1, 1943. A state cannot tax land of the United States situated within the state even though the state has not ceded sovereignty to the United States. Van Brocklin v. Tennessee, 117 U.S. 151, 177, 6 S.Ct. 670, 684, 29 L.Ed. 845.

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.