UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANSARI MOHAMAD,

      Plaintiff,

v.                                                        Case No: 6:24-cv-2354-JSS-LHP

CENTRAL FLORIDA TAX AND
ACCOUNTING, INC., ANEES
AHMAD TANOLI, LAWGICAL
INSIGHT, LLC, ANDREW BAUTA,
MICHAEL RUSSO,
ROTTENSTREICH FARLEY
BRONSTEIN FISHER POTTER
HODAS LLP, MELIZA MILLER,
RICHARD I. SEGAL, GRANT
HEMMINGWAY, and SIGMA TAX
PRO LLC,

      Defendants.

_____/

## **ORDER**

    Defendants Rottenstreich Farley Bronstein Fisher Potter Hodas LLP, Meliza Miller, and Richard I. Segal (the Lawyer Defendants), Lawgical Insight, LLC, Andrew Bauta, and Michael Russo (the Lawgical Defendants), and Sigma Tax Pro LLC and Grant Hemmingway (the Sigma Defendants) move to dismiss the amended complaint with prejudice for failure to state a claim. (Dkts. 26, 39, 85.) Plaintiff, Ansari Mohamad, opposes these motions. (Dkts. 35, 47, 88.) Plaintiff also moves for leave to file a proposed second amended complaint as the operative pleading in this case. (Dkt. 53.) The Lawyer and Lawgical Defendants oppose Plaintiff's motion.

(Dkt. 64.)  Upon consideration, for the reasons outlined below, the court grants the motions to dismiss in part and denies them in part, and it denies Plaintiff's motion but allows him to file a second amended complaint that fully complies with this order.[1]

## BACKGROUND

In an ongoing state action related to this case, *Central Florida Tax and Accounting Services, Inc. v. Akbar A. Ali*, case number 2021-CA-011761-O, in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, Defendant Central Florida Tax and Accounting Services, Inc. (CFTAS) has sued non-party Akbar A. Ali, who does business as A.A. Ali C.P.A., for the breach of a non-competition agreement and associated violations of state law.  (*See* Dkt. 22 ¶¶ 1, 4–6.)  According to the

---

[1] In the alterative to dismissal for failure to state a claim, the Lawgical Defendants ask that the court order Plaintiff to join as a party to this case the judge presiding over the related state action. (Dkt. 39 at 20–23.)  Otherwise, these Defendants argue, this case should be dismissed for failure to join an indispensable party.  (*Id.*)  The Lawgical Defendants do not identify cases in which a state judge was considered an indispensable party in federal court.  (*See id.*)  Further, although these Defendants mention feasibility when presenting the legal standard for this issue, (*id.* at 8), they decline to discuss the feasibility of joining the judge until "subsequent briefing," (*id.* at 20 n.1; *see id.* at 20–23).  However, the "first step in an indispensable party determination requires a decision as to whether joinder of the person in question is feasible." *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1290 (11th Cir. 1982).  Plaintiff contends that joinder of the judge, while unnecessary, is not ripe at this stage, in any event. (Dkt. 47 at 4.)  As the court permits Plaintiff to amend his pleading, it remains to be seen whether Plaintiff will advance allegations affecting the indispensable party issue.  Accordingly, the court denies the request for joinder without prejudice to the Lawgical Defendants' raising the issue after Plaintiff's deadline for amending expires.  *See Fischer v. Talco Trucking, Inc.*, No. 07-CV-4564 (JS)(ARL), 2008 WL 4415280, at *4–5, 2008 U.S. Dist. LEXIS 73294, at *11–12 (E.D.N.Y. Sept. 24, 2008) (denying without prejudice a motion to dismiss for failure to join an indispensable party when the defendants "d[id] not address the issue of feasibility" and the court granted the plaintiff leave to amend).  The court notes, however, that as a rule, judges are "absolutely immune from liability for [their] judicial acts even if [their] exercise of authority is flawed by the commission of grave procedural errors." *Stump v. Sparkman*, 435 U.S. 349, 359 (1978).  "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction."  *Id.* at 356–57 (quotation omitted); *see Dykes v. Hosemann*, 776 F.2d 942, 945 (11th Cir. 1985) (en banc) ("Since the seventeenth century, common law has immunized judges from suit for judicial acts within the jurisdiction of the court.").

amended complaint, the state action "arises from [Ali's] sale of his tax preparation and accounting firm . . . to South Florida Tax and Accounting Services, Inc., which subsequently assigned its rights, title, and interests under the applicable [a]sset [p]urchase [a]greement to . . . CFTAS." (*Id.* ¶ 5.) "CFTAS initiated the state [action] on December 14, 2021, alleging that [Ali] breached [a] non-compet[ition] agreement." (*Id.* ¶ 6.)

Defendant Anees Ahmad Tanoli is "a licensed [Certified Public Accountant] doing business as CFTAS." (*Id.* ¶ 63.)[2] The Lawyer Defendants represent CFTAS in the state action. (*Id.* ¶¶ 59–61.) The Sigma Defendants supplied electronic tax preparation services to Ali. (*Id.* ¶¶ 64–65, 118.) The Lawgical Defendants provided forensic examination services in the state action pursuant to an Agreed Order Regarding Forensic Examination. (*See id.* ¶¶ 7–11, 31, 36, 56.) Pertinent portions of the agreed order appear in the amended complaint. (*Id.* ¶ 8.) Plaintiff is one of Ali's former clients and is not a party to the state action. (*Id.* ¶¶ 25, 55.) He sues on behalf of himself and a putative class derived from Ali's current and former clients. (*Id.* ¶ 1.)

On motions by the Lawyer and Sigma Defendants, the court has taken judicial notice of eleven filings related to the state action. (*See* Dkt. 90.) The Lawyer Defendants' eight filings show that as of March 2024, the state court has ordered Ali to produce tax documents that he prepared and submitted. (*See* Dkts. 83-1, 83-2, 83-4.) On that subject, the amended complaint alleges that in the state action, the Lawyer

---

[2] CFTAS and Tanoli have recently filed a motion to dismiss that includes arguments distinct from those addressed in this order. (*See* Dkt. 101.) That motion remains pending before the court.

Defendants and CFTAS have moved, "under the threat of the [state] court's contempt powers," to compel Ali to "disclose confidential credentials for email addresses, software applications, cloud services, and tax preparation software that grant direct access to Plaintiff's confidential and privileged tax return information and any documents, records, and data relating to such filings." (Dkt. 22 ¶ 4.) Purportedly, Plaintiff "seeks to protect this [information] from non-consensual and unauthorized disclosure, which will cause irreparable harm." (*Id.*)

The Lawyer Defendants' filings also show that the state court ordered the parties before it to agree on a third party to conduct a forensic examination of Ali's computers and to submit a proposed order setting forth the parameters for the forensic examination. (*See* Dkt. 83-3.) The parties chose Lawgical as the forensic examinator, and the state court issued the agreed order in April 2024. (*See id.*) The amended complaint reports that on November 5, 2024, CFTAS moved to compel Ali's compliance with the agreed order; on December 12, 2024, Ali opposed the motion based on "statutory protections for communications between . . . public accountant[s] and their clients"; and on December 27, 2024, after a hearing on the motion, the state court granted the motion. (Dkt. 22 ¶¶ 9–11.) According to the Lawyer Defendants' filings, Ali petitioned for a writ of certiorari regarding the agreed order, arguing that the order gave CFTAS unchecked access to his clients' tax return information. (*See* Dkts. 83-5, 83-6, 83-7.) However, in May 2025, Florida's Sixth District Court of Appeal dismissed the petition for lack of jurisdiction. (*See* Dkt. 83-8.) The Sigma Defendants' three filings show that Sigma produced tax documents in the state action

in response to a subpoena duces tecum for a November 2024 deposition. (*See* Dkt. 85-1.)

The general theme of Plaintiff's claims is that through discovery in the state action, Defendants have violated federal and state law by "harvesting, using[,] disseminating, disclosing, and/or inspecting . . . thousands of unredacted tax returns containing" his sensitive financial information "for commercial purposes not involving" him. (Dkt. 22 ¶ 27.) In opposition to the motions for judicial notice, Plaintiff asserted that he lacked notice of the state action when the parties to it agreed to the disclosure of his tax return information, in violation of his due process rights. (Dkt. 86 at 6; Dkt. 88 at 16.) In accordance with its order on judicial notice, the court considers this assertion in ruling on the instant motions. (*See* Dkt. 90 at 5–6.)

Plaintiff initiated this case in December 2024 by filing a complaint (Dkt. 1) and an emergency motion for preliminary injunctive relief (Dkt. 2). The initial complaint brought claims against the Lawyer and Lawgical Defendants, as well as CFTAS and Tanoli, for the unauthorized inspection and disclosure of Plaintiff's tax return information, in violation of 26 U.S.C. § 6103(a)(3). (*See* Dkt. 1.) The emergency motion sought to prohibit these Defendants from further unauthorized inspection and disclosure of the information. (*See* Dkt. 2.) The court denied the emergency motion because Plaintiff failed to establish that the harm to him outweighed the harms to Defendants. (Dkt. 6.) The court explained:

> CFTAS and Tanoli, through [the Lawyer Defendants], are conducting discovery in the state [action] with the help of [the Lawgical Defendants] pursuant to orders issued by the state court. This discovery is presumably

> calculated to allow CFTAS to prosecute its claims against Ali and the
> other defendants in the state [action].  Although issuance of a [temporary
> restraining order] or preliminary injunction will likely impede the efforts
> to obtain discovery and thus to prosecute the claims, Plaintiff does not
> address this potential harm at all.  Therefore, the court denies Plaintiff's
> motion . . . .

(*Id.* at 4–5 (citations omitted).)  After Plaintiff renewed his motion, (Dkt. 11), the court

denied it because Plaintiff did not demonstrate a likelihood of success on the merits,

(Dkt. 17).  The court noted: "It is not clear from the record that any of the provisions

[of 26 U.S.C. § 6103(a)(3)] apply to any Defendant." (*Id.* at 5.)  Plaintiff then amended

his complaint to drop his claims under 26 U.S.C. § 6103(a)(3) in favor of claims under

other federal and state laws and to add the Sigma Defendants. (*See* Dkt. 22.)

The operative amended complaint contains eight counts. (*Id.* ¶¶ 78–174.)

Count one alleges that the Lawyer and Lawgical Defendants violated the Electronic

Communications Privacy Act (ECPA), 18 U.S.C. §§ 2510–23, by "intercept[ing],

access[ing], and us[ing] Plaintiff's private electronic communications[—]including

banking credentials, transaction history, account balances, and other sensitive

financial data"—without his permission. (Dkt. 22 ¶ 80.)  Counts two and three allege

that these Defendants and the Sigma Defendants, respectively, violated the Stored

Communications Act (SCA), 18 U.S.C. §§ 2701–13, by accessing electronic

communications belonging to Plaintiff without his permission. (Dkt. 22 ¶¶ 101, 128–

29.)  Count four asserts violations of the Florida Security of Communications Act

(FSCA), Fla. Stat. §§ 934.01–.50, against the Lawyer and Lawgical Defendants based

on their unauthorized interception, use, and disclosure of Plaintiff's electronic

communications.  (Dkt. 22 ¶¶ 138, 141–44.)  Count five brings invasion of privacy (intrusion upon seclusion) claims against all Defendants premised on their unauthorized access to Plaintiff's sensitive tax return information and related materials.  (*Id.* ¶ 152.)  Count six states that in accessing, collecting, and disclosing Plaintiff's financial information, Defendants violated the privacy rights afforded to him under the Florida Constitution.  (*Id.* ¶¶ 159–61.)  Count seven asserts violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §§ 501.201–.213, based on Defendants' "unauthorized access, collection, and use of Plaintiff's sensitive financial data."  (Dkt. 22 ¶¶ 167–68.)  Count eight seeks declaratory and injunctive relief related to Defendants' disclosure and use of Plaintiff's information.  (*Id.* ¶¶ 173–74.)  Overall, the amended complaint seeks monetary, declaratory, and injunctive remedies.  (*Id.* at 54–57.)  Through a proposed second amended complaint, Plaintiff seeks to add plaintiffs, allegations, and exhibits and to drop the counts based on the Florida Constitution and declaratory and injunctive relief while retaining the other counts and the requested monetary, declaratory, and injunctive remedies.  (Dkt. 53-1; *see* Dkts. 53-2 to 53-4.)

## APPLICABLE STANDARDS

In deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff."  *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019).  Although "when ruling on a Rule 12(b)(6) . . . motion, a court generally may not consider matters outside of the

pleadings without treating the motion as a motion for summary judgment," the court may consider judicially noticed facts. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298 (11th Cir. 2024); *accord Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (giving "matters of which a court may take judicial notice" as an example of "sources courts ordinarily examine when ruling on Rule 12(b)(6) motions").

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etailed factual allegations" are generally not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see Cox v. Nobles*, 15 F.4th 1350, 1357 (11th Cir. 2021) ("A district court may properly dismiss a complaint if it rests only on conclusory allegations, unwarranted factual deductions[,] or legal conclusions masquerading as facts." (quotation omitted)). Typically, the "existence of an affirmative defense will not support a [R]ule 12(b)(6) motion to dismiss" unless "the defense clearly appears on the face of the complaint." *Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir. 1993) (quotation omitted).

## ANALYSIS

Defendants contend that Florida's litigation privilege bars all state claims

against them and that their good faith reliance on the state court's orders bars the ECPA and SCA claims. (Dkt. 26 at 6–8, 18–19; Dkt. 39 at 9, 14–15; Dkt. 85 at 15–17.) They also submit that all the counts against them fail to state plausible claims for relief for other reasons. (*See* Dkts. 26, 39, 85.) Because dismissal of the Florida claims is appropriate based on the litigation privilege but dismissal of the ECPA and SCA claims is not appropriate based on the statutes' good faith reliance defenses, the court considers the remaining arguments as to the ECPA and SCA claims and does not address those concerning the Florida claims. The court also considers the arguments against count eight. The court first explains why the litigation privilege applies and the good faith reliance defenses do not. The court then discusses the remaining arguments against the ECPA and SCA claims and count eight.

### A. Litigation Privilege

"Florida's litigation privilege affords absolute immunity for . . . all acts related to and occurring within judicial proceedings." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1274 (11th Cir. 2004). The privilege applies to all Florida causes of action regardless of legal basis, *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007), and "extends not only to the parties in a proceeding but to judges, witnesses, and counsel as well," *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994). Moreover, "events taking place outside the courtroom during discovery . . . are . . . deserving of the protection of the litigation privilege." *Jackson*, 372 F.3d at 1276 (alteration adopted and quotation omitted). Although the privilege is an affirmative defense, it "may be

considered in resolving a motion to dismiss when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Id.* at 1277 (quotations omitted).

Here, the amended complaint and proposed second amended complaint show that the alleged violations of Florida law arose from activities in the state action related to discovery. (*See* Dkt. 22 ¶¶ 4–11, 23–26, 31, 56–65, 134–70; Dkt. 53-1 ¶¶ 4–16, 27– 30, 32–33, 37–44, 66–72, 147–86.) Florida's litigation privilege therefore applies, requiring dismissal with prejudice of the Florida claims. *See Fla. Evergreen Foliage v. E.I. DuPont de Nemours & Co.*, 135 F. Supp. 2d 1271, 1274–75, 1283 (S.D. Fla. 2001) (finding the defendant "immune from civil liability for its actions," including under FDUTPA, because "the acts allegedly committed by [the defendant], although perhaps egregious and damaging to [the p]laintiffs, [we]re definitely related to other judicial proceedings"); *R.W. v. Charter Sch. USA, Inc.*, No. 18-14405-CIV-MARRA, 2019 WL 13216131, at *8, 2019 U.S. Dist. LEXIS 245491, at *20 (S.D. Fla. May 23, 2019) (dismissing an invasion of privacy claim with prejudice for reasons including that "the filing of embarrassing discovery in court files is protected by the litigation privilege"); *see also Iannazzo v. Bressler, Amery & Ross, P.C.*, No. 05-80178-CIV-HURLEY, 2006 WL 8431093, at *5, 2006 U.S. Dist. LEXIS 109504, at *11–12 (S.D. Fla. Jan. 25, 2006) ("[The] plaintiff bases his [FSCA] claim on [the lawyer defendant]'s conduct during litigation . . . , and specifically, on [its] 'use' of [an] intercepted telephone conversation by way of its introduction of the recording into evidence during . . . trial. Such conduct . . . is protected by absolute immunity under the

- 10 -

Florida litigation privilege.").

Accordingly, the court grants Defendants' motions to dismiss as to the Florida claims in the amended complaint. The court also denies Plaintiff's motion regarding the proposed second amended complaint because the proposed pleading contains state claims barred by the litigation privilege. (*See* Dkt. 53-1 ¶¶ 147–86.)

## B. Good Faith Reliance

The ECPA and SCA provide good faith reliance defenses. 18 U.S.C. § 2520(d)(1) ("A good faith reliance on . . . a court . . . order . . . is a complete defense against any civil . . . action brought under [the ECPA] or any other law."); 18 U.S.C. § 2707(e)(1) (stating the same with respect to the SCA); *Wright v. Florida*, 495 F.2d 1086, 1090 (5th Cir. 1974) ("[G]ood faith reliance on a court order [is] a defense . . . to . . . claims under [the ECPA]."). When addressing the ECPA's good faith reliance defense, the Eleventh Circuit explained that "good faith defenses are subjective in nature" and that "good faith generally is a jury question." *Tapley v. Collins*, 211 F.3d 1210, 1215 (11th Cir. 2000); *see Lawshe v. Verizon Commc'ns, Inc.*, No. 3:24-cv-137-MMH-LLL, 2025 WL 660778, at *10, 2025 U.S. Dist. LEXIS 36070, at *24 (M.D. Fla. Feb. 28, 2025) (rejecting Rule 12(b)(6) arguments based on the SCA's good faith reliance defense because "the viability of [the] defense depend[ed] on a fact"—"the defendant[s'] subjective reliance"—which "d[id] not clearly appear on the face of the . . . [c]omplaint").

Defendants point out that the amended complaint lacks "allegations that [they] acted in any manner other than good faith in connection with" the agreed order or that

the order "was invalid or procured by fraud or bad faith." (Dkt. 26 at 8; *see* Dkt. 39 at 9; Dkt. 85 at 16.) Admittedly, the amended complaint is silent as to Defendants' subjective reliance on the agreed order and as to their good or bad faith, (*see* Dkt. 22), though it alleges that their "actions constitute willful and intentional violations . . . entitling Plaintiff to . . . punitive damages" among other relief, (*id.* ¶ 83). This silence means that Defendants' good faith reliance does not appear on the face of the amended complaint. *See Fortner*, 983 F.2d at 1028; *Lawshe*, 2025 WL 660778, at *10, 2025 U.S. Dist. LEXIS 36070, at *24. Consequently, the court cannot conclude that the ECPA and SCA counts fail to state plausible claims for relief based on the statutes' good faith reliance defenses. *See Tapley*, 211 F.3d at 1215.

## C. ECPA

An ECPA plaintiff must plead that the defendants "(1) intentionally (2) intercepted, endeavored to intercept[,] or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device." *Hamilton Grp. Funding, Inc. v. Basel*, 311 F. Supp. 3d 1307, 1314 (S.D. Fla. 2018). Further, "a contemporaneous interception . . . is required to implicate the [ECPA] with respect to electronic communications." *United States v. Steiger*, 318 F.3d 1039, 1048–49 (11th Cir. 2003); *see KB Home v. Smith*, No. 8:13-cv-2644-T-27EAJ, 2014 WL 1946622, at *5, 2014 U.S. Dist. LEXIS 66347, at *17 (M.D. Fla. May 14, 2014). The Lawyer and Lawgical Defendants argue that the amended complaint contains only conclusory allegations of contemporaneous interception. (Dkt. 26 at 9–

12; Dkt. 39 at 10–11.)

In responding to this argument, Plaintiff requests judicial notice of the Preliminary Report of Forensic Examination of Defendant's Digital Footprint filed in the state action in December 2024. (Dkt. 35 at 6 & n.1.) The court has reviewed the report, which is also an exhibit to the proposed second amended complaint. (Dkt. 53-2.) As Plaintiff asserts, the report indicates that the Lawgical Defendants "provisioned a new, global administrator account for continuing use" so that they could conduct the forensic examination of Ali's Microsoft Office 365 cloud-based environment "without interacting with the [e]nvironment like one of . . . Ali's user accounts." (Dkt. 35 at 6–7; Dkt. 53-2 at 37.) Plaintiff quotes the report to contend that the Lawgical Defendants "possessed the ability to intercept . . . Plaintiff's emails . . . by employing 'transport rules' to intercept and copy messages to another mailbox" and that "it is feasible that the Lawgical Defendants created a transport rule for all messages to and from" Ali's email address using a "blind copy" feature, "which would be an interception during any transmission of any emails to and from" Ali's email address. (Dkt. 35 at 7.) However, the report does not refer to transport rules or a blind copy feature and thus offers only indirect, if any, support for Plaintiff's contentions, (*see* Dkt. 53-2), which incidentally, do not appear in the operative amended complaint, (*see* Dkt. 22). Accordingly, because the report is immaterial to determining whether the amended complaint states an ECPA claim, the court denies Plaintiff's request for judicial notice. *See NAFL Invs., Ltd. v. Van Ness Feldman LLP*, No. 2:18-cv-193-FtM-99MRM, 2018 WL 2717440, at *4, 2018 U.S. Dist. LEXIS 94783, at *9 (M.D. Fla.

June 6, 2018) ("The [c]ourt declines to take judicial notice of the contents of the . . . litigation because such documents and evidence are immaterial to the [c]ourt's determination of the [m]otion to [d]ismiss.").

The court agrees with the Lawyer and Lawgical Defendants that the allegations of contemporaneous interception in the amended complaint are conclusory. (*See* Dkt. 22 ¶¶ 34, 39.) *See Benessere Inv. Grp., LLC v. Swider*, No. 24-CV-21104-RAR, 2024 WL 4652090, at *4–5, 2024 U.S. Dist. LEXIS 198469, at *11, *14 (S.D. Fla. Oct. 31, 2024) (dismissing an ECPA count when the plaintiffs alleged contemporaneous interception in a conclusory fashion and failed to plead "facts demonstrating that [the d]efendants intercepted any electronic communication contemporaneously with transmission" (quotation omitted)). Further, as a main purpose of any complaint is to "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015), Plaintiff should amend his pleading if he wants to rely on a new theory of contemporaneous interception for his ECPA claim, (*see* Dkt. 35 at 8 (contemplating amendment)). *See Davis-Harrison v. Chief U.S. Prob. Officer Middle Dist. of Fla.*, No. 22-14334, 2024 WL 2874046, at *2, 2024 U.S. App. LEXIS 13921, at *5 (11th Cir. June 7, 2024) (explaining that a "plaintiff cannot amend [a] complaint through a response to a motion to dismiss" (citing *Dorman v. Aronofsky*, 36 F.4th 1306, 1317 (11th Cir. 2022))). Accordingly, the court dismisses the ECPA claims without prejudice. Plaintiff may file a second amended complaint that fully complies with this order. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend a pleading

before trial] when justice so requires.").

### D. SCA

The elements of an SCA claim are "(1) access without authorization or exceeding an authorization to access (2) a facility (3) that provides an electronic communication service (4) thereby obtaining a wire or electronic communication (5) while the communication is in electronic storage." *Trump v. Clinton*, 626 F. Supp. 3d 1264, 1316 (S.D. Fla. 2022) (alteration adopted and quotations omitted). Defendants maintain that the amended complaint fails to adequately allege either "a facility through which an electronic communication service is provided," 18 U.S.C. § 2701(a), or "access to a wire or electronic communication while it is in electronic storage," *id.* (Dkt. 26 at 13–18; Dkt. 39 at 13–14; Dkt. 85 at 8–14.) The Lawgical Defendants briefly add that the amended complaint insufficiently pleads unauthorized access because authorization flowed from Ali as the owner of the information (which CFTAS acquired) and as a party subject to the agreed order. (Dkt. 39 at 12–13.)

As to the unauthorized access element, the court accepts as true, *see Henley*, 945 F.3d at 1326, Plaintiff's allegations that he did not grant Defendants access, Ali lacked the authority to do so on his behalf, and no court action permitted Defendants' access because Defendants lacked or exceeded court authorization,[3] (Dkt. 22 ¶¶ 29, 33–35, 38–40, 103–04, 128–29. Further, the Lawgical Defendants insufficiently support their

---

[3] Plaintiff seeks to "allege more specifically . . . that the Lawgical Defendants exceeded the parameters" of the agreed order in the state action, (Dkt. 35 at 19), and the proposed second amended complaint contains allegations to that effect, (Dkt. 53-1 ¶¶ 40, 44). Plaintiff may amend his pleading to assert with greater clarity that the state court's authorization was exceeded.

position on this element with caselaw, (*see* Dkt. 39 at 12–13), rendering it unpersuasive. *See United States v. Markovich*, 95 F.4th 1367, 1379 (11th Cir. 2024) (explaining that a party forfeits a position when "he cites no legal authority to support it").

As to the facility element, the amended complaint states: "Defendants, . . . without authorization, accessed facilities, including but not limited to Microsoft, Google, Apple, ShareFile, TheSageNext[,] and Tax1099[,] where the Plaintiff's electronic communications were stored." (Dkt. 22 ¶ 40.) It adds: "Microsoft, Google, Apple, ShareFile, TheSageNext, and Tax1099 are 'facilities' under the SCA in that each are providers [of an] electronic communication service and remote computing service and store electronic communications." (*Id.* ¶ 41.) The amended complaint then alleges that Microsoft Office 365, Gmail, Apple, and ShareFile store emails online and allow users to exchange documents online and that TheSageNext uses similar technology to allow Tax1099 users to access tax documents online. (*Id.* ¶¶ 42–49.) Count two incorporates these allegations by reference; count three does not. (*See id.* ¶¶ 100, 115.) Count two adds that the Lawyer and Lawgical Defendants "intentionally accessed [Ali]'s Microsoft, Google, Apple, TheSageNext, and Tax1099 accounts," which are facilities under the SCA, (*id.* ¶ 102). Count three asserts that the Sigma Defendants violated the SCA by accessing Ali's accounts on Sigma's website or software platform. (*Id.* ¶¶ 117, 119, 128–29.)

For count two, the Lawyer Defendants argue that the purported facilities do not qualify as such under the SCA because they consist of computers or servers belonging to Ali—they do not consist of internet or network service providers. (Dkt. 26 at 13–

16.)  Further, according to the Lawyer Defendants, the amended complaint does not plead that Microsoft Office 365 or Gmail is part of the Microsoft or Google facility alleged or that ShareFile, TheSageNext, and Tax1099 were used to transmit or receive electronic communications.  (*Id.* at 14–16.)  The Lawyer Defendants also assert that an Apple iPhone is not a facility under the SCA merely because it allows users to operate electronic communication services.  (*Id.* at 16.)  The Lawgical Defendants join these arguments.  (Dkt. 39 at 4, 12–14.)

The court rejects these arguments for three reasons.  First, they do not construe the amended complaint in the light most favorable to Plaintiff, as required.  *See Henley*, 945 F.3d at 1326.  Second, the arguments on ShareFile, TheSageNext, and Tax1099 lack citation to legal authority.  (*See* Dkt. 26 at 16.)  *See Markovich*, 95 F.4th at 1379. Third, caselaw supports that Microsoft Office 365 and the like are facilities under the SCA.  *See Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1177 n.4 (11th Cir. 2017) ("Microsoft Office 365 is a facility through which an electronic communication service is provided."); *Schwartz v. ADP, Inc.*, No. 2:21-cv-283-SPC-MRM, 2021 WL 3172029, at *2, 2021 U.S. Dist. LEXIS 138102, at *6 (M.D. Fla. July 26, 2021) ("[T]he [a]ccounts are either cloud- or Apple-based systems used for storing electronic communications.  Those are the types of facilities the SCA generally protects."); *Rocket Real Est., LLC v. Maestres*, No. 15-62488-CIV, 2017 WL 4303783, at *6, 2017 U.S. Dist. LEXIS 55179, at *18 (S.D. Fla. Apr. 10, 2017) ("Although there is disagreement among[] the federal courts on this issue, several courts have held that . . . accessing emails that are stored on a web-based system such as Gmail . . . violate[s] the SCA."

(collecting cases)), *report and recommendation adopted by* 2017 WL 4303784, at *2, 2017 U.S. Dist. LEXIS 201177, at *6 (S.D. Fla. May 18, 2017); *see also Benessere*, 2024 WL 4652090, at *8–9, 2024 U.S. Dist. LEXIS 198469, at *20–25 (denying a Rule 12(b)(6) motion to dismiss an SCA count based on a file-sharing website).

For count three, the Sigma Defendants contend that 18 U.S.C. § 2701(c)(1) protects them from liability. (Dkt. 85 at 12–13.) The provision states that the SCA's prohibition on accessing stored communications "does not apply with respect to conduct authorized . . . by the person or entity providing [the] wire or electronic communications service." 18 U.S.C. § 2701(c)(1). According to Plaintiff, the facility for count three is Sigma's website or software platform, and Sigma is the provider of the electronic communications service. (*See* Dkt. 22 ¶ 119; *see also* Dkt. 53-1 ¶ 132.) Because the Sigma Defendants presumably authorized their own conduct, count three is dismissed with prejudice under section 2701(c)(1). *See Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 686 (N.D. Cal. 2021) (determining that an SCA claim lacked merit given section 2701(c) because the defendant service provider "presumably authorized its own conduct"); *Sargeant v. Maroil Trading Inc.*, No. 17-81070-CIV, 2018 WL 3031841, at *14, 2018 U.S. Dist. LEXIS 90949, at *39 (S.D. Fla. May 30, 2018) (recommending dismissal of an SCA count because the statute's "plain text . . . exempts conduct authorized 'by the person or entity providing a wire or electronic communication service'" (quoting 18 U.S.C. § 2701(c)(1))).

As to the storage element for the remaining SCA claims, the amended complaint alleges that Defendants accessed "Plaintiff's emails and electronic

communications[] while they were in electronic storage in Plaintiff's designated email server."   (Dkt. 22 ¶ 106.)   The Lawyer Defendants contend that the amended complaint should be dismissed because it does not allege that they accessed any unopened emails.  (Dkt. 26 at 17–18.)  In the Lawyer Defendants' view, although accessing unopened emails may violate the SCA, "accessing previously opened e[]mails without authorization does not."  (*Id.* at 17.)  The Lawgical Defendants join this position.  (Dkt. 39 at 4, 13–14.)  Courts are split on this issue, and the Eleventh Circuit has not addressed it.  *See Brown Jordan*, 846 F.3d at 1175 (declining to "'wade into the discussion' of th[e] complicated issue" (quoting *Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 963 (11th Cir. 2016))).   To support their position, the Lawyer Defendants cite six cases, only two of which concern motions to dismiss for failure to state a claim.  (*See* Dkt. 26 at 17–18; Dkt. 39 at 13–14.)  *See Lazette v. Kulmatycki*, 949 F. Supp. 2d 748, 758–59 (N.D. Ohio 2013) (agreeing with the defendants that the SCA covers only unopened emails but "draw[ing] a fair and plausible inference" that some emails were unopened); *Bansal v. Russ*, 513 F. Supp. 2d 264, 276–77 (E.D. Pa. 2007) (explaining that the procurement of opened emails does not violate the SCA but denying the motion to dismiss without prejudice "in order that the parties may more fully develop the record" with respect to an unrelated basis for dismissal).

Although the court finds the Lawyer Defendants' position generally persuasive, *see Sartori v. Schrodt*, 424 F. Supp. 3d 1121, 1131–34 (N.D. Fla. 2019), it agrees with the court in *Schwartz*, 2021 WL 3172029, at * 3, 2021 U.S. Dist. LEXIS 138102, at *7, that most cases to consider the issue have done so past the pleading stage; thus, like

that court, this court "finds the allegations sufficient at this stage and leaves any resolution of the facts to a later day," *id.* This outcome makes sense here because the amended complaint does not distinguish between opened and unopened emails or discuss how the different facilities work, (*see* Dkt. 22), and Defendants do not establish that such details are necessary to state a plausible SCA claim, (*see, e.g.*, Dkt. 26). *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1077 (9th Cir. 2003) (concluding that whether emails were opened or unopened "is irrelevant to whether [they] were in electronic storage"); *United States v. Weaver*, 636 F. Supp. 2d 769, 772 (C.D. Ill. 2009) ("The Ninth Circuit's reasoning [in *Theofel*] relies on the assumption that users download emails from an [internet service provider]'s server to their own computers. That is how many email systems work, but a Hotmail account is web-based and remote." (quotations omitted)). "[W]hether any electronic communication . . . was in electronic storage is better addressed at summary judgment." *Worrell v. Harshe*, No. 16-2398, 2017 WL 1398650, at *3, 2017 U.S. Dist. LEXIS 59285, at *7–8 (D.N.J. Apr. 18, 2017) (quotation omitted). Accordingly, the court does not dismiss count two.

### E. Count Eight

Count eight seeks declaratory and injunctive relief regarding Defendants' disclosure and use of Plaintiff's tax return information. (Dkt. 22 ¶¶ 171–74.) Defendants assert that the count fails because "none of Plaintiff's substantive claims survive." (Dkt. 26 at 24; *accord* Dkt. 39 at 20; Dkt. 85 at 24–25.) The court agrees with respect to the Sigma Defendants and dismisses count eight as to them with prejudice.

*See Williams v. Wells Fargo Bank, Nat'l Ass'n*, No. 4:16-CV-0055-HLM-WEJ, 2017 WL
2362045, at *1, 2017 U.S. Dist. LEXIS 104090, at *3–4 (N.D. Ga. Jan. 27, 2017)
(holding that claims for declaratory and injunctive relief failed because the underlying
substantive claims failed). However, the court has concluded to the contrary for the
SCA claims against the Lawyer and Lawgical Defendants, and as Plaintiff notes, (Dkt.
35 at 18–19), the SCA provides for declaratory and injunctive relief, *see* 18 U.S.C.
§ 2707(b)(1) (describing "appropriate relief" in an SCA civil action as including
"equitable or declaratory relief").

In addition, Defendants maintain that the amended complaint claims only
past—not present or future—injuries and only speculative—not real—threats of injury.
(Dkt. 26 at 24; Dkt. 39 at 20; Dkt. 85 at 24–25.) However, the court can reasonably
infer from Plaintiff's allegations that the state action is ongoing and the unauthorized
disclosure and use of his tax return information still threatens to harm him, for
example by increasing risks of, and distress about, identity theft and credit damage.
(*See* Dkt. 22 at 3–4, 30–31, 56.) *See Benessere Inv. Grp., LLC v. Swider*, No. 24-CV-21104-
RAR, 2025 WL 2549979, at *4, 2025 U.S. Dist. LEXIS 172330, at *11–12 (S.D. Fla.
Sept. 4, 2025) (deeming a request for injunctive relief under the SCA not to be moot
when the plaintiffs "allege[d] that [the d]efendants still ha[d] access to their
confidential information"); *cf. Kaplan v. Nautilus Ins. Co.*, No. 1:17-cv-24453-KMM,
2020 WL 9458678, at *2, 2020 U.S. Dist. LEXIS 254300, at *5 (S.D. Fla. Mar. 6,
2020) (noting that "a party's interest in the privacy of its financial records often
outweighs the public right of access" to court documents (alterations adopted and

quotation omitted)); *Spry v. Pro. Emp. Plans*, 985 So. 2d 1187, 1188 (Fla. Dist. Ct. App. 2008) (explaining that the "disclosure of . . . information will cause irreparable harm, simply because it is financial information" (citing *Friedman v. Heart Inst. of Port St. Lucie, Inc.*, 863 So. 2d 189, 194 (Fla. 2003))).  As a result, the court denies the Lawyer and Lawgical Defendants' motions to dismiss count eight.

**CONCLUSION**

Accordingly:

1. Defendants' motions to dismiss (Dkts. 26, 39, 85) are **GRANTED in part and DENIED in part** as follows:

   a. All claims against the Lawyer, Lawgical, and Sigma Defendants brought pursuant to Florida law and related to the state action are **DISMISSED with prejudice**.

   b. The ECPA claims against the Lawyer and Lawgical Defendants are **DISMISSED without prejudice**.

   c. The SCA claims against the Sigma Defendants and count eight as to the Sigma Defendants are **DISMISSED with prejudice**.

   d. The motions to dismiss are otherwise **denied**.

2. Plaintiff's motion regarding the proposed second amended complaint (Dkt. 53) is **DENIED**.

3. On or before October 11, 2025, if he can do so in good faith, Plaintiff may file a second amended complaint that fully complies with this order as follows:

a.  The second amended complaint is limited to asserting those causes of action set forth in the amended complaint or proposed second amended complaint that have not been dismissed with prejudice in this order.

b.  The second amended complaint may add allegations and exhibits that

i.   address the indispensable party issue,

ii.  raise the new theory of contemporaneous interception for the ECPA claims,

iii. clarify for the SCA claims that court authorization was exceeded, and

iv.  otherwise respond to Defendants' motions to dismiss, including the recent motion (Dkt. 101) not considered in this order.

c.  The second amended complaint may add the plaintiffs named in the proposed second amended complaint.

d.  As the deadline for amending pleadings and joining parties laid out in the case management and scheduling order expired on April 24, 2025, (Dkt. 41 at 1), the second amended complaint shall not assert other causes of actions or add other parties, unless Plaintiff first satisfies Federal Rule of Civil Procedure 16(b)(4) by demonstrating "good cause" and obtaining "the [court]'s consent." Fed. R. Civ. P. 16(b)(4).

**ORDERED** in Orlando, Florida, on September 22, 2025.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record