UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANSARI MOHAMAD,                         CASE NO.: 6:24-cv-2354-JSS-LHP
SHAMEENA MOHAMAD,
and ZEBEEDA MOHAMED

                  Plaintiffs,

v.

CENTRAL FLORIDA TAX AND
ACCOUNTING, INC, *et. al*,

                  Defendants  /

## DEFENDANTS ANEES AHMAND TANOLI AND CENTRAL FLORIDA TAX AND ACCOUNTING, INC.'S MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(5), and (b)(6), Defendants **Anees Ahmand Tanoli ("Tanoli")** and **Central Florida Tax and Accounting, Inc. ("CFTAS") (collectively, "Defendants")**, move the Court to dismiss Plaintiff Ansari Mohamad's Second Amended Complaint (Doc. 117) with prejudice, for the following reasons:

## BACKGROUND

On April 8, 2019, CFTAS, a tax preparation business owned by Tanoli, entered a purchase agreement with a competitor tax preparation business, owned by Akbar A. Ali ("Ali"), which contained a 3-year non-compete. (Doc. 117, ¶ 5). Ali violated that non-compete by servicing members of the putative class, including Plaintiffs, prompting what has become a nearly four-year long legal battle in the Circuit Court in

and for Orange County, Florida against Ali and his associates in the case styled, *Central Florida Tax and Accounting Services v. Akbar A. Ali, et al.*, Case No. 2021-CA-011761 (Fla. 9th Cir. Ct. Dec. 14, 2021) ("State Court Action"). (*Id.* ¶¶ 4-11, 59-62).[1] Over the course of the litigation, Ali repeatedly refused to provide responsive documents to CFTAS's requests to produce and defied multiple court orders compelling their production, culminating in a request for a forensic examination of Ali's computers. *See* Order Granting Motion to Compel, *Central Florida Tax and Accounting Services v. Akbar A. Ali, et al.*, Case No. 2021-CA-011761 (Fla. 9th Cir. Ct. Oct. 4, 2023); Order Granting Motion to Compel, *id.* (Fla. 9th Cir. Ct. Nov. 17, 2023); Plaintiff's Omnibus Motion to Compel, *id.* (Fla. 9th Cir. Ct. Dec. 26, 2023); Plaintiff's Motion to Compel Compliance With Court Order, For Sanctions And An Adverse Inference At Trial, *id.* (Fla. 9th Cir. Ct. Dec. 27, 2023). Ali's counsel at the time lodged objections to CFTAS's discovery requests and also sought protective orders. *E.g.*, Motion for

---

[1] A district court may take judicial notice of public records, such as a document filed in another court, when reviewing a motion to dismiss. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999); *Chambliss v. Brevard Cty. Sheriff's Office*, 688 F. Supp. 3d 1125, 1131 n.8 (M.D. Fla. 2023). This Court has expressly noticed multiple State Court Action filings already. (Doc. 90). But even further, Plaintiff incorporated the entire State Law Action by reference in the Third Amended Complaint, and so the Court may consider all docketed items and exhibits in that action that are central to the claim and undisputed in evaluating this motion to dismiss. *See Johnson v. City of Atlanta*, 107 F. 4th 1292, 1300 (11th Cir. 2024) ("[W]hen resolving a motion to dismiss . . . a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims[] and (2) undisputed, meaning that its authenticity is not challenged."). By referencing the State Court Action explicitly and premising all claims on the fulfillment of a court-mandated computer forensic examination stemming from that action, most of the court record is central to the claim and Plaintiff does not challenge its authenticity. *See Alms v. Luminar Techs., Inc.*, No. 6:23-cv-982-JSS-LHP, 2024 U.S. Dist. LEXIS 224733, at *9 n.3 (M.D. Fla. Dec. 12, 2024).

Protective Order, *id.* (Fla. 9th Cir. Ct. Sept. 13, 2023).

On March 18, 2024, the State Court entered an "Order on Plaintiff's Omnibus
Motion to Compel" and an "Order on Plaintiff's Motion to Compel Compliance With
Court Order, For Sanctions And An Adverse Inference At Trial" (collectively, the
"Discovery Orders") commanding the litigants to select an agreed upon third-party
within 20 days to conduct a forensic examination of Defendants' computer(s) and
program(s), and to conduct a search for all documents contemplated in the Court's
Discovery Orders. *Id.* On submission of the parties, the State Court entered an Agreed
Order Regarding Forensic Examination in April 2024 wherein the parties agreed on a
forensic examiner to examine Ali's computer systems and cell phone pursuant to
certain protocols to search for:

- All tax filings, including returns and extensions, prepared and/or submitted by
  ALI, and any documents, records, and data relating to such filings created on
  or after April 8, 2019;
- All documents, records, and data, created on or after April 8, 2019, that contain
  reference to EFINs 594511, 594831, and 590549;
- All documents, records, logs, reports, and data, created on or after April 8, 2019,
  from the TaxWise software/program used by ALI;
- Generate all reports necessary within the TaxWise software/program desktop
  and online versions, to locate and obtain all of the records ...."

(*See* Doc. 117, ¶ 8; Doc. 117-2). On July 16, 2024, Lawgical conducted a forensic
examination at Ali's home office in Apopka. (Doc. 117, ¶ 33). Still, Ali continued to
defy the state court's orders—refusing to turn over responsive documents or allow for
forensic examination of all the agreed accounts—so CFTAS requested he be held in
contempt. Motion for Order, *Central Florida Tax and Accounting Services v. Akbar A. Ali,
et al.*, Case No. 2021-CA-011761 (Fla. 9th Cir. Ct. Aug. 9, 2024). A few days later,

Ali's counsel filed a motion to withdraw, citing "certain actions which are adverse to their counsel," failures "to cooperate with counsel and assist in their defense," and "additional grounds . . . that cannot be disclosed out of concern for potentially violating the attorney-client privilege." Motion to Withdraw, *id.* (Fla. 9th Cir. Ct. Aug. 20, 2024). On September 24, 2024, counsel for Plaintiffs in this action, Jason Brian Phillips, assumed Ali's representation in the State Court Action.

After hiring Mr. Phillips, Ali continued to defy the Agreed Order, drawing another motion to compel. Motion To Compel, *id.* (Fla. 9th Cir. Ct. Nov. 5, 2024). Ali then provided some more of the ordered login credentials, but not all those required, to Lawgical, allowing it to continue the forensic examination of his accounts. Response in Opposition, *id.* (Fla. 9th Cir. Ct. Dec. 14, 2024); (Doc. 117, ¶ 12). On December 27, 2024, the State Court granted CFTAS's motion to compel—finding Ali had "impeded the court-ordered forensic examination" and rejecting his arguments resisting production—and ordered the defendant to produce all computer devices containing electronically stored information ("ESI") specified in the Agreed Order, as well as all login credentials, passwords, and other information necessary for the forensic examiner to access the ESI. Order Compelling Production, *id.* (Fla. 9th Cir. Ct. Dec. 27, 2024); (Doc. 117, ¶ 16). Four days later, Ali sought emergency certiorari review from the Sixth District Court of Appeals of the Order Compelling Production, stating compliance with the order would force Ali to breach the accountant-client privilege. Petition for Certiorari, *Akbar A. Ali, et al. v. Central Florida Tax and Accounting Services*, Case No. 6D2024-2783 (Fla. 6th DCA Dec. 31, 2024). On May 16, 2025, the

4

Sixth DCA denied the appeal for lack of jurisdiction. DCA Order, *id.* (Fla. 9th Cir. Ct. May 16, 2025); (Doc. 117, ¶ 18).[2]

While claiming to have received no notice of the disclosure, Plaintiff Ansari Mohamad filed a lawsuit in this Court on the same day the State Court entered the Order Compelling Production, represented by the same counsel as Ali in the State Court Action. (Doc. 1).[3] On October 6, 2025, he filed the instant Second Amended Complaint asserting that Ali's so-called compliance with the Agreed Order resulted in the alleged unlawful disclosure of Plaintiffs' electronic communications in violation of Title I of the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C.

---

[2] At one point, Plaintiffs claim that Ali's emergency certiorari petition is "currently pending" before the Sixth DCA. (Doc. 117, ¶¶ 13, 18). No appeal pertaining to the State Court Action is pending. *Akbar A. Ali, et al. v. Central Florida Tax and Accounting Services*, Case No. 6D2024-2783 (Fla. 6th DCA 2025).

[3] Plaintiffs' counsel, Jason Brian Phillips, is no stranger to the Mohamads. In 2013, he took over as their counsel in a foreclosure action that ultimately lasted 13 years. *HSBC Bank v. Ansari Mohamad et. al*, Case No. 2007-CA-015502-O (Fla. 9th Cir. Ct. Nov. 14, 2007); *see Bryant*, 187 F.3d at 1278 (judicial notice of court records permissible). Mr. Phillips also is no stranger to bringing concurrent actions against individuals suing his clients and their lawyers, casting their pursuit of redress as violations of the law without merit. *Wissner v. Dewitt*, No. 6:19-cv-128-Orl-40-GJK, 2019 U.S. Dist. LEXIS 235682, at *14 (M.D. Fla. June 28, 2019) (dismissing FDCPA claim with prejudice because "activities undertaken to enforce the state court's judgment do not amount to the collection of a debt"). While defending the Mohamads' foreclosure action, Mr. Phillips filed concurrent Fair Debt Collection Practices Act ("FDCPA") claims in federal court against the bank while the state foreclosure claim was still pending. *Ansari Mohamad v. HSBC Bank N.A. et. al*, Case No. 6:16-cv-2239 (M.D. Fla. 2016); *Ansari Mohamad et. al. v. Wells Fargo N.A.*, Case No. 6:18-cv-1386 (M.D. Fla. 2018). In 2019, Judge Byron imposed Rule 11 sanctions against Mr. Phillips for bringing an "objectively frivolous" FDCPA claim against the law firm representing his client's ex-wife in their divorce. *Wissner v. DeWitt Law Firm, P.A.*, No. 6:19-cv-128-Orl-40-GJK, 2019 U.S. Dist. LEXIS 235260, at *11 (M.D. Fla. Dec. 4, 2019) ("Plaintiff's counsel should have been aware that the claims were frivolous when the Complaint was filed."), *report and recommendation adopted* (Doc. 41), No. 6:19-cv-128-Orl-40-GJK (M.D. Fla. Dec. 23, 2019).

§§ 2510, (Count I) and Title II of the ECPA called the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701, (Count II), and declaratory judgement (Count III). (Doc. 117, ¶¶ 87-162). Plaintiffs assert that on December 4, 2024, at the direction of the Lawyer Defendants and CFTAS, Lawgical Insight, LLC ("Lawgical")—an eDiscovery, computer forensics, data analysis, and case management company— collected "a forensic mirror image of Accountant Ali's computers and cell phones" pursuant to the Agreed Order entered in the State Court Action. (Doc. 117, ¶¶ 28-29). They conclude that "the state court had no authority to issue an order releasing Plaintiffs' or any other third party [tax return information] without the third parties' knowledge, consent, or ability to object to the release" and so they, say, "there was no valid order, warrant, or court authorization permitting Defendants' actions." (*Id.* ¶ 24). They base this conclusion solely on two sections of the Internal Revenue Code—one dictating procedures the IRS must take to issue an administrative "John Doe" summons, 26 U.S.C. § 7609(f), and the other criminalizing disclosure of certain tax information by tax preparers absent a court order, 26 U.S.C. § 7216(a). (*Id.* ¶¶ 27, 112, 115, 117). Plaintiffs further claim that Defendants are using the disclosed information "for commercial purposes" and disseminating it "to profit," but do not explain how beyond their utilizing the information to prosecute the State Court Action. (*Id.* ¶ 22).

## LEGAL MEMORANDUM

In trying to state their claims, Plaintiffs assert that the ECPA, the SCA, and various provisions of the tax code curtail state-court litigants' ability to obtain relevant evidence in civil discovery. (Doc. 117, ¶¶ 107-118). But "exceptions to the demand for

6

every man's evidence are not . . . expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974). And "[i]n absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982) (citing *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir. 1971)). These principles should guide the Court in evaluating the Second Amended Complaint. *Id.*

When considering a motion to dismiss, in addition to the allegations in the complaint, the district court also considers "the facts derived from a complaint's exhibits [and those documents judicially noticed] as part of the plaintiff's basic factual averments," and where those exhibits contradict the complaint's allegations, the exhibits control. *F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 63 (11th Cir. 2013); *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007) ("when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."). Additionally, a complaint may be dismissed when the existence of an affirmative defense clearly appears on the face of the complaint. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011). The Court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. But this principle does not extend to legal conclusions, not even those "couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Here, Plaintiffs' claims against Defendants must be dismissed because (1) Ali consented to disclosure of the only records Defendants endeavored to obtain, (2)

Plaintiffs lack Art. III standing, (3) Plaintiffs lack statutory standing under the ECPA
and SCA, (4) Plaintiffs fail to state the elements of intentionality, access, and
interception under the ECPA and of access under the SCA, (5) the Anti-Injunction
Act and *Rooker-Feldman* doctrine deprive the Court of jurisdiction over Plaintiffs'
claims, (6) Plaintiffs have not effected proper service on Defendants within the time
described in Federal Rule of Civil Procedure 4(*l*).

## I.  Consent to disclosures

Plaintiffs fail to state a claim under either title of the ECPA because, on the face
of the Second Amended Complaint, the other party to the allegedly divulged
communications, Ali, consented to their disclosure as a matter of law under the facts
as pleaded. The ECPA is a one-party consent statute. 18 U.S.C. § 2511(2)(d) ("It shall
not be unlawful under this chapter for a person not acting under color of law to
intercept a wire, oral, or electronic communication where such a person is a party to
the communication or where one of the parties to the communication has given prior
consent unless such communication is intercepted for the purpose of committing any
criminal or tortious act in violation of the Constitution or laws of the United States or
of any State."). Likewise, the SCA allows for disclosure "with the lawful consent of
the originator or an addressee or intended recipient of such communication, or the
subscriber in the case of remote computing service." 18 U.S.C. § 2702(b)(3).

Courts have the authority to compel a defendant to give consent for the release
of ECPA- and SCA-protected information under threat of contempt or other sanction.
*E.g.*, *Laswell Found. For Learning and Laughter, Inc. v. Schwartz*, No. 8:17-cv-46-T-27-

CPT, 2019 U.S. Dist. LEXIS 247787, at *11 (M.D. Fla. Mar. 27, 2019) (collecting cases); *Flagg v. City of Detroit*, 252 F.R.D. 346, 355 (E.D. Mich. 2008) ("it is immaterial whether a party, such as the [defendant] here, might prefer not to give the necessary consent"); *Nuaman Abdulla Ahmed Al Noaimi v. Zaid*, No. 11-1156-EFM, 2012 U.S. Dist. LEXIS 144061, at *9 (D. Kan. Oct. 5, 2012) ("Nader, the subscriber, is a plaintiff in this case; therefore, the court has authority under Fed. R. Civ. P. 1, 26(b)(2) and 26(c) to require Nader to execute a consent").[4] Indeed, the Eleventh Circuit holds that consent for purposes of Titles I and II of the ECPA is effective (and uncoerced) even when the alternative involves prison time. *See United States v. Salisbury*, 662 F.2d 738, 740 (11th Cir. 1981).

As a matter of law, Ali's consent to disclosure is "lawful" and effective even if providing it violated some other non-criminal obligation he had to Plaintiffs. *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 560 (N.D. Tex. 2005). For the one-party consent exceptions, the issue is one of the legal capacity to consent, not whether doing so might breach some other obligation, such as a contract. *Id.* After all, both the ECPA and SCA are criminal statutes, and the concept of "lawful consent" in other criminal statutes concerns the legal capacity to provide it. *Cf. United States v. Chavarriya-*

---

[4] *See also Mafille v. Kaiser-Francis Oil Co.*, No. 18-CV-586-TCK-FHM, 2019 U.S. Dist. LEXIS 73428, at *10 (N.D. Okla. May 1, 2019); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 613 n.5 (E.D. Va. 2008) ("In the alternative, the district court in Mississippi could order the Rigsbys to consent to AOL's disclosing the contents of their e-mails under the pain of sanctions."); *Negro v. Superior Ct.*, 179 Cal. Rptr. 3d 215, 230 (Ct. App. 2014) (holding that consent pursuant to court order constituted lawful consent under the SCA); *cf. Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31 (1984) (explaining the Rules "do not differentiate between information that is private or intimate and that to which no privacy interests attach").

*Mejia*, 367 F.3d 1249, 1251 (11th Cir. 2004) (noting that law presumes children cannot lawfully consent to sexual contact). Further, the mere breach of a contract, fiduciary duty, or duty of care normally is not "unlawful" in a criminal sense. *See United States v. Blankenship*, 382 F.3d 1110, 1133 (11th Cir. 2004) ("It is not illegal for a party to breach a contract[.]"); *Skilling v. United States*, 561 U.S. 358, 413 (2010) (breach of fiduciary duty requires bribes or kickbacks to be criminal).

Here, Ali is clearly a party to the disclosed communications. *See United States v. Davanzo*, 699 F.2d 1097, 1100 (11th Cir. 1983). He agreed to the forensic examination, even if under threat of sanctions. (Doc. 117-1). He also agreed to (and paid for) a neutral third-party eDiscovery company to conduct the examination, and then he *provided his login credentials voluntarily* to that neutral eDiscovery company in order to access his accounts to conduct the examination. (Doc. 117-1; Doc. 117-3). Rather than settle the case or go to jail, he complied with the Agreed Order, which constitutes consent. *See Nuaman Abdulla Ahmed Al Noaimi*, 2012 U.S. Dist. LEXIS 144061, at *9; *Thomas v. Deloitte Consulting LP*, No. 3-02-CV-0343-M, 2004 U.S. Dist. LEXIS 29154, at *13 (N.D. Tex. June 14, 2004). And Plaintiffs do not allege that Ali consented to any alleged interception "for the purpose of committing any criminal or tortious act[.]" *See W.W. v. Orlando Health, Inc.*, No. 6:24-cv-1068-JSS-RMN, 2025 U.S. Dist. LEXIS 40038, at *20 (M.D. Fla. Mar. 6, 2025). So on the face of the complaint, Ali provided effective, lawful consent—as far as the ECPA and SCA are concerned—when he assented to the Agreed Order and freely authorized Lawgical to obtain communications he received, even if providing that consent breached other non-

criminal obligations. *See In re Am. Airlines, Inc.*, 370 F. Supp. 2d at 560.

In light of the above, Plaintiffs attempt to invent a legal requirement that a taxpayer must also receive prior notice of, and then provide their consent for, disclosures of tax return information by their tax preparer in all circumstances. (Doc. 117, ¶¶ 112, 115-117). Without citing any authority, they first say § 7609(f) of the tax code provides the IRS with the exclusive ability to obtain court orders compelling disclosure of tax information, abrogating the Federal Rules of Civil Procedure and their state counterparts for tax returns. (*Id.* ¶ 112). The Eleventh Circuit begs to differ. *E.g.*, *Erenstein v. S.E.C.*, 316 F. App'x 865, 869-70 (11th Cir. 2008) ("[I]n civil cases, we have not required a showing of compelling need before tax information may be obtained by a party in discovery[.]"); *Maddow v. Procter & Gamble Co.*, 107 F.3d 846, 853 (11th Cir. 1997) (same). Additionally, repeals by implication may only be found when Congress's intent to repeal is "clear and manifest." *Rodriguez v. United States*, 480 U.S. 522, 524 (1987). Chapter 78 of the tax code—which contains § 7609(f)—only dictates the authority and administrative procedures the IRS must use to investigate and enforce tax laws, without addressing or implicating discovery procedures in private litigation.[5] So it provides no basis to render Ali incapable of providing consent, nor any right to Plaintiffs for notice and sign off prior to any disclosures.

---

[5] IRM § 9.1.2, *available at* https://www.irs.gov/irm/part9/irm_09-001-002; IRS, National Taxpayer Advocate 2023 Annual Report to Congress (Most Litigated Issues) 154 (2023), https://www.taxpayeradvocate.irs.gov/wp-content/uploads/2024/02/ARC23_MostLitiga tedIssues.pdf; 26 C.F.R. § 301.7609-1(a)(1); 26 U.S.C. §§ 7601-7620; 73 Fed. Reg. 23342 (April 30, 2008); *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 311 (1985) ("This

Next, Plaintiffs point to § 7216(a) and 26 C.F.R. § 301.7216-1 criminalizing disclosure by a tax preparer of "any information furnished to [a tax preparer] for, or in connection with, the preparation of any such return." (Doc. 117, ¶ 115). But the statute "shall not apply to a disclosure of information if such disclosure is made pursuant to an order of a court," which includes "any court of record, Federal, State, or local." 26 U.S.C. § 7216(b)(1)(B); 26 C.F.R. § 301.7216-2(f)(1). Further, a tax preparer may disclose this information "[t]o any officer of a court for use in connection with proceedings involving the tax return preparer (including proceedings involving the tax return preparer in its capacity as a practitioner), or the return preparer's client, before the court[.]" 26 C.F.R. § 301.7216-2(g); 73 Fed. Reg. 1071 (Jan. 7, 2008). Hardly seems like Congress would expressly exempt this sort of disclosure if it had intended the IRS to have exclusive jurisdiction over compelling production of tax returns from tax preparers, barring their use or production in private civil litigation, as Plaintiffs contend. Ergo, Plaintiffs' proffered basis for asserting that Ali could not consent holds no water as a matter of law.

With his legal capacity uninhibited, Ali voluntarily assented to a court order allowing a forensic examination of his computer and email accounts, agreed to (and paid for) a neutral third-party eDiscovery company to conduct the examination, and then *provided his login credentials voluntarily* to that neutral eDiscovery company, facilitating their access to his accounts to conduct the examination. (Doc. 117-1; Doc.

_____

provision empowers the IRS to serve a summons on any person, without prior judicial approval[.]").

117-3). Those are the facts as pleaded, and assumed to be true, they facially amount to lawful "consent" for purposes of the ECPA and SCA. *Laswell Found. For Learning and Laughter*, 2019 U.S. Dist. LEXIS 247787, at *11. Accordingly, all claims should be dismissed with prejudice.

## II. Article III Standing

To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm that is fairly traceable to the challenged action of the defendant. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). At the motion-to-dismiss stage, a plaintiff must allege facts that, taken as true, "plausibly" state that the elements of standing like concrete injury are met. *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1621 (2020). Central to assessing concreteness is whether the asserted harm has a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340-341 (2016) (holding a "bare procedural violation, divorced from any concrete harm" is not enough). A statutory violation *itself* must inflict real harm to confer standing. *See TransUnion*, 594 U.S. at 427 ("An injury in law is not an injury in fact."). And that cannot happen here without the information being publicized. *See Hunstein v. Preferred Collection & Mgmt. Servs.*, 48 F.4th 1236, 1240 (11th Cir. 2022) (en banc).

In this case, Plaintiffs have not alleged any injury-in-fact under either title of the ECPA. They do not allege any tangible harms arising from the statutory violations,

and any intangible harm is not one historically recognized by U.S. courts. *Id.* Again, Ali authorized the communications' disclosure. *See* Part I. Moreover, Ali selected Lawgical to conduct the forensic examination with Defendants and *paid* for Lawgical to conduct it. (Doc. 117-1). Individuals always assume the risk that the person to whom they are speaking will later reveal the contents of their conversation if those contents constitute evidence of wrongdoing. *See Hoffa v. United States*, 385 U.S. 293, 302 (1966); *Davanzo*, 699 F.2d at 1100.

Additionally, court supervision of the disclosure negates even the specter of any harm to Plaintiffs' privacy. *See Seattle Times*, 467 U.S. at 30 (state-law Rule 26(c) protective orders restricting publication safeguard privacy interests). In reaching the Agreed Order, the State Court required the parties to confer and propose "agreed upon parameters and search protocols for the Forensic Examiner to protect against disclosure of privileged or irrelevant information." (Doc. 117-2). No harm occurs from disclosing the information in discovery to individuals subject to the State Court's contempt authority, or from utilizing the information in pursuit of redress for Ali's breach of his non-compete agreement. *See Hunstein*, 48 F.4th at 1240.

In *Hunstein*, the Eleventh Circuit held that mere disclosure of sensitive financial information by a credit bureau to a third-party debt collection marketing business without the consumer's consent, though a violation of the Fair Debt Collection Practices Act, does not constitute an injury-in-fact without wider dissemination to the public. *Id.* This case, involving alleged disclosure of communications and financial information to an e-Discovery outfit fulfilling a court order on Ali and Defendants'

14

behalf, is no different. There is no traditional harm to which the alleged violations of the ECPA here bear a close relationship. *See Hunstein*, 48 F.4th at 1240 (rejecting analogy to privacy torts where no publication occurred). Plaintiffs do not plausibly allege publication occurred here, and thereby fail to establish concrete harm.[6]

Last, Plaintiffs lack standing for the ECPA claim because they do not allege that they sent Ali any communications while Lawgical was conducting the forensic examination that were, or even could have been, contemporaneously intercepted. (Doc. 117, ¶ 98). In a class action, named plaintiffs representing a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Gratz v. Bollinger*, 539 U.S. 244, 289 (2003). And as alleged, Defendants only alleged intend to use the tax returns to identify services Ali provided in violation of his non-compete—information that this very lawsuit will make public in certifying the class. (Doc. 117, ¶¶ 156-57). Since the Second Amended Complaint lacks any allegations that Plaintiffs sent any communications to Ali during the period Lawgical conducted the forensic examination, they lack standing.

---

[6] Without offering any good faith basis to say so, Plaintiffs baldly claim that Defendants are using the disclosed information "for commercial purposes" and disseminating it "to profit." (Doc. 117, ¶¶ 22, 80, 140). They do not say what those commercial purposes or other profiteering actions are beyond prosecuting the State Court Action. Bald allegations of misconduct without *any* facts plausibly indicating how the defendant carried it out will not do to establish harm or state a claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("not merely parallel conduct that could just as well be independent action"). Pursuit of redress and compensatory damages are not "commercial purposes" and "profit," nor do they fall under the conduct prohibited by the ECPA. *Cf. Bartnicki v. Vopper*, 532 U.S. 514 (2001).

## III.    Statutory Standing

Statutory standing is another pre-requisite for bringing "all statutorily created causes of action," which means Plaintiffs' interests must "fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). Determining the "zone of interest" is a question of statutory interpretation. *Id.* As an amendment to The Wiretap Act of 1968, Title III of Pub. L. 90-351, the ECPA's zone of interest encompasses injury to "the privacy of innocent persons" that occurs from electronic eavesdropping without a party's consent. Pub. L. 90-351, Title III, § 801(d), 82 Stat. 211, *available at* https://www.govinfo.gov/content/pkg/STATUTE-82/pdf/STATUTE-82-Pg197.p df. This interest is not implicated for disclosures pursuant discovery orders on a public court docket that compel production of electronic communications via a forensic examination of one of the party's computers and cloud accounts, conducted under a court's supervision and contempt powers. *See Davanzo*, 699 F.2d at 1100.[7]

## IV.    Failure to State a Claim

Under Title I of the ECPA, Plaintiffs must show five elements to state a claim: that a defendant (1) intentionally (2) intercepted (3) the contents of (4) an electronic communication (5) using a device. 18 U.S.C. § 2511(1)(a); *see* 18 U.S.C. § 2520

---

[7] With the SCA, the zone of interest does not reach stored electronic communications held for more than "a few months." *See* H.R. Rep. No. 99-647, at 68 (1986), *available at* https://www.justice.gov/sites/default/files/jmd/legacy/2013/10/16/houserept-99-647-19 86.pdf. According to Congress, communications stored for that long are "closer to a regular business record maintained by a third party and, therefore, deserving of a different standard of protection." *Id.*; *but see* (Doc. 115) (reserving judgment on the issue).

(providing a private right of action). The SCA creates a cause of action against anyone who "intentionally accesses without authorization a facility through which an electronic communication service is provided[.]" 18 U.S.C. § 2701(a).

First, neither the ECPA nor the SCA allow for secondary civil liability against aiders and abettors—which would be necessary to state a claim against Defendants. *See Cent. Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 182 (1994) ("when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors"). The SCA only imposes liability on "whoever intentionally accesses" the electronic communication service facility and stored communications. 18 U.S.C. § 2701. And in passing the ECPA, Congress removed the clause "or procures any other person to intercept, disclose, or use such communications" from the portion of the Wiretap Act providing a civil remedy, which eliminated the ability to sue one who only "procures" another to intercept a plaintiff's communications.[8] Plaintiffs do not allege that Defendants *themselves* accessed a facility containing the disclosed communications, or

---

[8] *Vista Mktg., LLC v. Park*, 999 F. Supp. 2d 1294, 1296 (M.D. Fla. 2014), *aff'd on other grounds,* 812 F. 3d 954, 962 n.4 (11th Cir. 2016); *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 160-61 (5th Cir. 2000); *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003); *see also United States v. Steiger*, 318 F. 3d 1039, 1050-51 (11th Cir. 2003) (discussing omission of "electronic communications"). Regardless, the Agreed Order and other exhibits demonstrate that Lawgical is an independent contractor of Defendants and Ali, who do not control when and how Lawgical conducts its forensic examination, so Defendants could not be indirectly liable, anyway. *See Enhanced Recovery Co., Ltd. Liab. Co. v. Frady*, No. 3:13-cv-1262-J-34-JBT, 2015 U.S. Dist. LEXIS 41652, at *33 (M.D. Fla. Mar. 31, 2015); (Docs. 117-1, 117-2, 117-3).

that they participated in the technical process of carrying out the forensic examination. (*See* Doc. 117, ¶¶ 15, 28-29, 42, 90, 95-96, 98, 104, 155).

Second, Plaintiffs do not plead an adequate basis to render Ali unable to agree to or authorize the disclosures, which is necessary to allow for relief. *See* Part I. Ali's inability to consent or authorize access requires "further factual enhancement," since the Court cannot assume those legal conclusions to be true when nakedly asserted. *Iqbal*, 556 U.S. at 679 (assertion of an unlawful agreement was a "legal conclusion" not entitled to the assumption of truth). On the alleged facts, the tax code provisions cited in the Second Amended Complaint do not even arguably require notice to, or the consent of, a taxpayer prior to disclosure pursuant a court order, nor do they criminalize that disclosure. *See* 26 U.S.C. §§ 7216(b)(1)(B), 7609(f). Section 7609(f) does not regulate anything beyond IRS enforcement actions and the agency's authority to issue extrajudicial summons. *E.g.*, IRM § 9.1.2. In this case, the Agreed Order establishes the disclosure was "made pursuant to an order of a court." 26 U.S.C. § 7216(b)(1)(B); (Doc. 117-2). It also certainly acted "to endorse, empower, justify, or permit [access to Ali's electronics and accounts] by or as if by some recognized or proper authority," i.e. a court, thereby providing "authorization" under the statute. *See Sartori v. Schrodt*, No. 19-15114, 2021 U.S. App. LEXIS 37614, at *9 (11th Cir. Dec. 20, 2021) (defining the term). And Plaintiffs allege the disclosures were made to officers of a court for use in proceedings involving the tax preparer. (Doc. 117, ¶¶ 4-8).

Turning to the ECPA claim, Plaintiffs' allegations regarding contemporaneous interception are just as conclusory as those in the last complaint. (Doc. 117, ¶ 29-31,

44, 88, 94-95). Per the Eleventh Circuit, to demonstrate an interception under the ECPA, a plaintiff must show "contemporaneous acquisition of electronic communications while in flight." *Steiger*, 318 F.3d at 1050. As pleaded, Plaintiffs only allege facts to establish that it was "feasible" that Lawgical could have implemented a transport rule contemporaneously forwarding emails to it, but not that it actually did so. (*Id.* ¶¶ 94-95). Further, the ECPA only imposes liability if the "contents" of a communication are intercepted. 18 U.S.C. §§ 2510(8), 2511. On a motion to dismiss, "[t]he Court must know *what* information was allegedly intercepted to determine *whether* it qualifies as content." *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1322 (S.D. Fla. 2021). Plaintiffs do not describe any of *their* communications allegedly "intercepted" in any detail. (Doc. 117, ¶ 29-31, 44, 88, 94-95). The "audit logs" Plaintiffs reference do not record the content of communications, but rather metadata and other record information outside the statute's ambit. (Doc. 117, ¶ 102); *see United States v. Beckett*, 369 F. App'x 52, 56 (11th Cir. 2010).

Last, Plaintiffs fail to allege that Defendants intentionally sought or endeavored to "intercept" any communications, let alone Plaintiffs' with Ali, beyond a single conclusory sentence. (Doc. 117, ¶ 29). Under the ECPA, "[a]n 'intentional' state of mind means that one's state of mind is intentional as to one's conduct or the result of one's conduct if such conduct or result is one's conscious objective." S. Rep. No. 99-541, at 23 (1986). No facts establish that Defendants had a conscious objective to "intercept" or access *any* communications because Defendants are not alleged to have anything to do with the transport rules cited that purportedly could cause

contemporaneous review. (Doc. 117, ¶ 29-31, 44, 88, 94-95, 98). Plaintiffs only allege

Defendants contracted Lawgical with Ali to execute the Agreed Order, which does not

address interception. (*Id.* ¶¶ 15, 17, 28, 90, 110-117; Doc. 117-1).

As pleaded, Defendants did not conduct the forensic examination or access the

accounts, mailboxes, or other electronic storage facilities at issue. (*See id.* ¶¶ 15, 28-29,

42, 90, 104, 155). Neither the ECPA nor the SCA impose secondary liability on

Defendants for Lawgical's alleged actions. *See Cent. Bank, N.A.*, 511 U.S. at 182. Even

still, Defendants are only alleged to have contracted Lawgical to fulfill the Agreed

Order, not to intercept communications. (Doc. 117, ¶¶ 15, 17, 28, 90, 95-96, 98, 110-

117; Doc. 117-1). And Plaintiffs do not even allege that they sent Ali any

communications that could have been contemporaneously intercepted while Lawgical

conducted the forensic examination. (Doc. 117, ¶ 98). Accordingly, Plaintiffs have

failed to state ECPA and SCA claims.

## V.    Anti-Injunction Act and *Rooker-Feldman* doctrine

"Proceedings in state courts should normally be allowed to continue

unimpaired by intervention of the lower federal courts, with relief from error, if any,

through the state appellate courts and ultimately the United States Supreme Court."

*National Railroad Passenger Corp. v. State of Florida*, 929 F.2d 1532, 1536 (11th Cir. 1991).

Accordingly, the Anti-Injunction Act ("AIA"), 28 U.S.C. § 2283, is "an absolute

prohibition against enjoining state court proceeding" except as expressly authorized

by Congress, regardless of whether the injunction is issued against a party to the state

court proceeding or directly against the state court. *Atl. Coast Line R.R. Co. v. Bhd. of*

*Locomotive Eng'rs*, 398 U.S. 281, 286 (1970).[9] The Eleventh Circuit holds the AIA's prohibition extends to any federal court action that has the effect of enjoining the state-court proceedings, like declaratory judgment. *See, e.g., Southern California Petroleum Corp. v. Harper*, 273 F.2d 715, 718-20 (5th Cir. 1960).

Likewise, the *Rooker-Feldman* doctrine—providing that Federal District Courts lack appellate jurisdiction over state-court judgments—bars suits that (1) are brought in a District Court by state-court losers complaining of injuries caused by state-court judgments rendered before the District Court proceedings began, and (2) invite a District Court to review and reject those judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). The doctrine "bars all appeals of state court judgments—whether the plaintiff admits to filing a direct appeal of the judgment or tries to call the appeal something else." *Behr v. Campbell*, 8 F.4th 1206, 1211 (11th Cir. 2021). Accordingly, *Rooker-Feldman* is applicable if the "state court judgment caused the plaintiff's injury" and "the relief requested of the federal court would effectively reverse or void the state court's ruling." *Efron v. Candelario*, 110 F.4th 1229, 1236 (11th Cir. 2024); *Pinkans v. Roberts*, No. 8:24-cv-1470-SDM-TGW, 2024 U.S. Dist. LEXIS 189013, at *4 (M.D. Fla. Oct. 17, 2024). This includes claims "not raised in the state court" that are "inextricably intertwined with the state court's judgment." *Pinkans*, 2024 U.S. Dist. LEXIS 189013, at *4 (citing *Tindall v. Gibbons*, 156 F. Supp. 2d 1292,

---

[9] While the ECPA and SCA may allow for equitable relief generally, a case does not fall within the "expressly authorized" exception "merely because it involves a statute that permits injunctive relief in general terms." *Tampa P. R. Co. v. Seaboard C. L. R. Co.*, 418 F.2d 387, 393 (5th Cir. 1969).

1300 (M.D. Fla. 2001) (Moody, J.)).

No matter how they package it, Plaintiffs ask the federal court to review, modify, and reject the State Court's adverse discovery orders, particularly in their claim for equitable relief. (Doc. 117, ¶¶ 102-159). In this case, Plaintiffs' counsel, Jason Brian Phillips, is a state-court loser—having unsuccessfully argued in the State Court Action that his client, Ali, could not be compelled to turn over tax return information—who has now enlisted a former client to maintain an action complaining of injury caused by multiple orders compelling production of tax return information rendered in the State Court Action before this district court proceeding.[10] Mr. Phillips invites this Court to review and reject *all* the State Court orders compelling Ali to turn over tax returns by seeking "a judicial declaration that Defendants' actions in authorizing and executing the disclosure violate the ECPA and SCA and their rights to privacy to their TRI" and an injunction prohibiting "Defendants from further disclosure or use of the unlawfully intercepted or unlawfully access (sic) to Plaintiffs' communications with Accountant Ali." (Doc. 117, ¶¶ 152-53).

Further, Plaintiffs expressly allege that this action has stayed the State Court

---

[10] Order Granting Motion to Compel, *Central Florida Tax and Accounting Services v. Akbar A. Ali, et al.*, Case No. 2021-CA-011761 (Fla. 9th Cir. Ct. Oct. 4, 2023); Order on Plaintiff's Omnibus Motion to Compel, *id.* (Fla. 9th Cir. Ct. Mar. 18, 2024); Order on Plaintiff's Motion to Compel Compliance With Court Order, For Sanctions And An Adverse Inference At Trial, *id.* (Fla. 9th Cir. Ct. Mar. 18, 2024); Agreed Order, (Doc. 117-2); Order Compelling Production, *id.* (Fla. 9th Cir. Ct. Dec. 27, 2024). As it concerns appellate jurisdiction and does not "override or supplant preclusion doctrine," invoking *Rooker-Feldman* does not require that the federal suit be between the same parties in the state court action. *See Exxon Mobil Corp.*, 544 U.S. at 284. Parties on appeal are not necessarily the parties to the original suit. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997); *Karcher v. May*, 484 U.S. 72, 82 (1987).

Action. (Doc. 117, ¶ 161). They also make explicit their desire to enjoin the state-court proceedings. (Doc. 117, ¶¶ 152-161) ("The state action is ongoing and the unauthorized disclosure and use of the Plaintiffs' tax return information still threatens to harm them."). The AIA prohibits this exact relief. *See Southern California Petroleum Corp.*, 273 F.2d at 720; *Prater v. Norm Meadows, Agent of IRS*, No. 8:02-CV-542-T-27-MSS, 2002 U.S. Dist. LEXIS 30815, at *1 (M.D. Fla. Oct. 9, 2002) (denying injunction to enjoin and stay the effect of a state-court discovery order). Mr. Phillips makes clear that he brings this action purely to vindicate private rights as part of "necessary actions to mitigate the adverse effects caused by [Ali's former counsel], the Lawyer Defendants, and the Lawgical Defendants." (Doc. 117, ¶ 13); *see Machesky v. Bizzell*, 414 F.2d 283, 289 (5th Cir. 1969) (vindication of purely private rights does not constitute express congressional authorization). No "compelling circumstances" exist for this Court to relitigate the State Court Action's discovery disputes. *See Estate of Brennan v. Church of Scientology Flag Serv. Org.*, 645 F.3d 1267, 1277 (11th Cir. 2011) ("a district court conviction that a state proceeding has reached or is reaching an erroneous result does not alone warrant an injunction against those proceedings"). So the AIA and the *Rooker-Feldman* doctrine bar Plaintiffs' claims—particularly for equitable relief.

## VI.   Improper service

As noted by the Honorable Magistrate Judge Leslie Hoffman-Price, Plaintiff has not presented adequate proof of serving Defendants. (Doc. 98). Courts must dismiss an action "[i]f a defendant is not served within 90 days after the complaint is filed." Fed. R. Civ. P. 4(*l*). The Florida Secretary of State issued notice of substitute

service of Tanoli, but the authority invoked by the Plaintiff for substitute service, Fla. Stat. § 48.081, deals with service of corporations, not individuals. (Doc. 84). Tanoli is a Florida resident and therefore Plaintiff must provide evidence that he "exercise[ed] due diligence to locate and effectuate personal service" in the face of concealment for substitute service to be effective. Fla. Stat. § 48.161(3). Likewise, Plaintiff filed an affidavit from the process server attesting to serving the initial complaint in January on CFTA. (Doc. 49). But according to the affidavit, the process server only attempted to serve the registered agent at the business address once, which does not suffice. Fla. Stat. § 48.081(3) ("cannot otherwise be served after one good faith attempt"). More than 90 days have passed since this Action's filing.

Further, Defendants have not waived proper service. Under Federal Rule of Civil Procedure 12(h), a party impliedly waives an improper service defense *only* if the defendant fails to raise the issue by motion or in a responsive pleading. *See Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990). A party does *not* waive an improper service defense merely by having counsel appear in a lawsuit and responding in opposition to a motion for default judgment. 16 Moore's Federal Practice - Civil § 108.143 (2025) ("In federal courts, there is no longer a requirement for a special appearance."); *see Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 928 (5th Cir. 1970) ("They are things which had [the defendant] failed to do the court might well have directed it to do in the interest of management of the case.").

Dated:  October 20, 2025

Respectfully Submitted,

24

*/s/ Christopher R. Skambis*
Christopher R. Skambis
Florida Bar # 1044535
Dinsmore & Shohl, LLP
225 East Robinson Street, Suite 600
Post Office Box 2854
Orlando, Florida 32802-2854
Telephone: (407) 425-9044
Primary: chip.skambis@dinsmore.com
Alt: yesenia.labrador@dinsmore.com
**Attorney for Anees Ahmand Tanoli and Central Florida Tax and Accounting, Inc.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of October, 2025, I electronically filed the foregoing with the Clerk of the District Court for the Middle District of Florida by using the CM/ECF system.

*/s/ Christopher R. Skambis*
Christopher R. Skambis, Esq.