UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANSARI MOHAMAD,

Plaintiff,

v. Case No: 6:24-cv-2354-JSS-LHP

LAWGICAL INSIGHT, LLC, ANDREW BAUTA, MICHAEL RUSSO, ROTTENSTREICH FARLEY BRONSTEIN FISHER POTTER HODAS LLP, MELIZA MILLER, and RICHARD I. SEGAL,

Defendants.
___________________________________/

**ORDER**

Pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Defendants Rottenstreich Farley Bronstein Fisher Potter Hodas LLP, Meliza Miller, and Richard I. Segal (the Lawyer Defendants) move to exclude opinions advanced by Plaintiff's proffered expert witness Jeffery Stollman. (Dkt. 160.) Plaintiff, Ansari Mohamad, opposes the motion. (Dkt. 176.) Upon consideration, for the reasons stated in the motion and outlined below, the court grants the motion.

Plaintiff sues Defendants for their purported involvement in unlawfully accessing and disclosing confidential financial information pertaining to him, and to others similarly situated to him, in connection with a state court case against Plaintiff's accountant. (*See* Dkt. 117.) As part of the discovery in that case, which involves claims

against the accountant for contractual breaches and related business torts, the state court ordered the accountant to provide access to client records. (*See id.*) Plaintiff thereafter filed this putative class action. (*See id.*) Plaintiff's motion for class certification was denied on July 20, 2026. (*See* Dkts. 162, 202.) Plaintiff has disclosed Stollman as an expert on the two statutes that Defendants are accused of violating in this case—the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2510–2523, and the Stored Communications Act (SCA), 18 U.S.C. §§ 2701–2713—as well as on damages. (*See* Dkt. 160-1 at 2 (identifying the subject matter of Stollman's expertise as including—in addition to past and future damages—"the applicable law," "the criteria to be met to indicate a violation," "the evidence found," and "conclusions regarding the violation by each cited Defendant" with respect to the ECPA and SCA); *id.* at 8.)[1] The Lawyer Defendants challenge Stollman's qualifications, methods, and helpfulness concerning these subjects.[2] (*See* Dkt. 160.)

---

[1] Plaintiff contends that Stollman's testimony will assist the factfinder in "understanding (1) the nature and sensitivity of cloud-stored electronic communications, (2) the privacy and identity risks associated with access to such communications, and (3) the compliance implications of the access mechanisms employed here—specifically, the creation of a global administrator account capable of ongoing access to email communications." (Dkt. 176 at 2.) However, Plaintiff did not disclose Stollman as an expert on these subjects, and his expert report instead centers on the disclosed subjects of the ECPA, the SCA, and damages. (*See* Dkt. 160-1.) The court limits Stollman's testimony to the disclosed subjects. *See Klinakis v. Altus Jobs, LLC*, No. 6:22-cv-1756-RBD-RMN, 2023 WL 9792678, at *14, 2023 U.S. Dist. LEXIS 235737, at *40 (M.D. Fla. Oct. 12, 2023) ("[O]n direct examination, the [c]ourt will strictly limit an expert witness's testimony to the matters that are fully and timely disclosed in an [e]xpert [r]eport or [e]xpert [d]isclosure."); *see also U.S. Fid. & Guar. Co. v. Lee Invs., LLC*, 641 F.3d 1126, 1138 (9th Cir. 2011) ("A district court does not abuse its discretion in limiting expert testimony to . . . the subjects contained in the expert's disclosure.").

[2] The Lawyer Defendants also assert that Stollman is not qualified to opine on digital forensic investigations, (Dkt. 160 at 8–9), and that any opinions about parties and claims that have been dismissed from this case are irrelevant and thus unhelpful, (*id.* at 24). In response, Plaintiff represents

"To fulfil their obligation under *Daubert*, district courts must engage in a rigorous inquiry" focusing on three issues: (1) whether "the expert is qualified to testify competently regarding the matters he intends to address," (2) whether "the methodology by which the expert reaches his conclusions is sufficiently reliable," and (3) whether "the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir. 2005) (quotation omitted). "[T]he party seeking to introduce the expert at trial"—here, Plaintiff—"bears the burden of establishing [the expert's] qualifications, reliability, and helpfulness." *Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1294 (11th Cir. 2022). The court must "ensure that speculative, unreliable expert testimony does not reach" the factfinder. *McCorvey v. Baxter Healthcare Corp*., 298 F.3d 1253, 1256 (11th Cir. 2002). "[T]o be admissible, an expert's testimony must be based on more than subjective belief or unsupported speculation." *Haggerty v. Upjohn Co*., 950 F. Supp. 1160, 1167 (S.D. Fla. 1996)

---

that Stollman is not "offered . . . as a forensic technician." (Dkt. 176 at 3 (labelling as "a false premise" the idea that Stollman "is offered . . . as a forensic technician testifying about software tools"); *accord id.* at 4 ("The . . . assertion that [Stollman] lacks qualifications because he is not a[] . . . forensic examiner . . . misunderstands the scope of his testimony . . . .").) Given Plaintiff's representations, the court grants the Lawyer Defendants' motion to the extent that Stollman advances opinions on digital forensic investigations, as he undisputedly lacks qualifications as a forensic technician or examiner. *See Leblanc v. Coastal Mech. Servs., LLC*, No. 04-80611-CIV, 2005 WL 5955027, at *2, 2005 U.S. Dist. LEXIS 45889, at *4 (S.D. Fla. Sept. 6, 2005) ("To be qualified as an expert, a witness must have sufficient skill or knowledge related to the pertinent field or calling that his inference will probably aid the trier in the search for truth." (quotation omitted)). Further, Plaintiff does not establish the helpfulness of any opinions as to dismissed parties or claims, (*see* Dkt. 176), and therefore, the court excludes such opinions as unhelpful, *see Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." (quotation omitted)).

(quotation omitted).

As to Stollman's qualifications, his resume illustrates his decades of experience in the technology and privacy fields as well as his educational background in these fields and in economics. (Dkt. 160-3 at 1–2.) However, Stollman lacks sufficient familiarity with the ECPA and SCA to qualify him to offer legal opinions on these statutes. His deposition testimony indicates, for example, that before Plaintiff retained him for this case, Stollman had not read the statutes and did not know the good faith reliance defense applicable to them. (*See* Dkt. 160-2 at 38–39.) A "proffered expert must not only meet the basic qualification requirements[] but also be qualified specifically in the area on which he . . . proposes to testify—on topics that are 'sufficiently within his expertise.'" *Hotels of Deerfield, LLC v. Studio 78, LLC*, 621 F. Supp. 3d 1285, 1293 (S.D. Fla. 2022) (quoting *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). The Eleventh Circuit has cautioned that "[e]xpertise in one field," such as technology or privacy, "does not qualify a witness to testify about others," such as the law. *Lebron v. Sec'y of the Fla. Dep't of Child. & Fams.*, 772 F.3d 1352, 1368 (11th Cir. 2014) (perceiving no abuse of discretion when the district court concluded that the defendant's expert—a clinical psychiatrist "who practiced and taught . . . in a range of psychiatric and medical fields"—was "not sufficiently qualified by background, training, or expertise to offer" the social science or statistics opinions that he presented, particularly because he "had never studied, surveyed, or collected any information on" the specific subject about which he opined). "[B]ecause [Stollman] lacks [legal]

training or experience, he is unqualified to testify as an expert on [legal] issues." *See Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 943 (11th Cir. 2015); *cf. Zellers v. NexTech Ne., LLC*, 533 F. App'x 192, 198 (4th Cir. 2013) (concluding that a proffered witness "ha[d] no scientific or technical knowledge that qualifie[d] him to offer expert testimony in th[e] case" even though he "[wa]s a toxicologist" because he "ha[d] no expert training with regard to the toxicity of" the chemicals at issue). Further, the court agrees with the Lawyer Defendants that "[l]imited experience roughly [fifty] years ago in regulatory economics does not render Stollman qualified to give a substantive economic damages analysis [fifty] years later on the impact of hypothetical privacy-related injuries on individuals." (Dkt. 160 at 6.) Stollman is accordingly not qualified to present his damages opinions. *See Hotels*, 621 F. Supp. 3d at 1293.

As to Stollman's methods, he reviewed the operative pleading in this case and read the text of the statutes to arrive at his opinions as to how the complained-of misconduct amounted to violations of the ECPA and SCA, (Dkt. 160-2 at 68–71), and he calculated damages based on general risks associated with the disclosure of personally identifiable information, such as the information that Plaintiff alleges Defendants unlawfully disclosed, (*see* Dkt. 160-1 at 26–44). In calculating damages, Stollman "cover[ed] the harms that [we]re either the most severe or the most frequent" and "for which some data [we]re available." (*Id.* at 28.) In broad terms and with reference to general statistics, he discussed hate crimes, other physical crimes, and digital crimes. (*Id.* at 28–33.) His discussion of hate crimes touched on genocides that

occurred during The Holocaust and in Northern Ireland, Rwanda, Armenia, the United States, and other places around the world, and also covered murder, rape, assault, and property damage. (*Id.* at 28–31.) The discussion of murder focused on an eighteen-year-old shooter who drove more than two hundred miles to "maximize casualties in the Black community," (*id.* at 30), while the discussion of rape referred to the Bosnian War from 1992 to 1995, the 1994 Rwandan genocide, the Islamic State of Iraq and ash-Sham (ISIS), Boko Haram, and the "long history" of the "[r]ape of Blacks in the U[nited] S[tates]," (*id.* at 31). The discussion of property damage addressed the firebombing of houses and automobiles, "[t]he burning of crosses on [the] lawn," and the "painting of swastikas on walls." (*Id.*) In remarking on other physical crimes, Stollman referenced, for example, the kidnapping of the Lindbergh baby. (*Id.* at 32.) As to digital crimes, Stollman identified various harms associated with account takeover and identity theft. (*Id.* at 32–33.) Mathematically, Stollman opined: "A proper valuation for damage purposes should be the sum of the expected value for each type of damage over a subject's remaining life (Harm * Probability * Remaining Life)." (*Id.* at 33.) Stollman used averages and similar statistics to estimate the figures needed for his calculation and came to a total of approximately $5,905. (*Id.* at 34–41.) For example, given statistical information about the "average U[nited] S[tates] taxpayer," Stollman estimated the figure for remaining life as thirty-two years. (*Id.* at 34.) Stollman's damages methodology did not focus on Plaintiff specifically. (*See id.* at 26–44.)

Stollman's methods regarding the ECPA and SCA are unreliable because they amount to his ipse dixit. *See Cook v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1111 (11th Cir. 2005) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." (quotation omitted)); *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1244 (11th Cir. 2005) ("[T]he trial court's gatekeeping function requires more than simply taking the expert's word for it." (quotations omitted)). Stollman's damages methodology is unreliable because it lacks "a reasonable factual basis" connected to this case. *See United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1040 (11th Cir. 1988) ("Certainly where an expert's testimony amounts to no more than a mere guess or speculation, a court should exclude his testimony. But where the expert's testimony has a reasonable factual basis, a court should not exclude it." (citation omitted)); *S. States Coop., Inc. v. Melick Aquafeeds, Inc.*, 701 F. Supp. 2d 1348, 1364 (M.D. Ga. 2010) ("An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record." (quoting *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000))); *see also Skypoint Advisors, LLC v. 3 Amigos Prods. LLC*, 585 F. Supp. 3d 1326, 1333 (M.D. Fla. 2022) (finding an expert's methodology unreliable when the expert failed to "explain why he used the . . . equation [that] he decided to use, the validity of it, whether it [wa]s accepted in the field, the equation's rate of error, or anything else that would tend to show its reliability").

As to helpfulness, Stollman concluded that Defendants violated the ECPA and the SCA, (*see* Dkt. 160-1 at 8–24), and that in general, damages from unlawfully disclosed information totaled approximately $5,905, although additional analysis aimed at increasing precision could "result in values significantly lower or significantly higher," (*id.* at 41). These conclusions are not helpful. Respecting the ECPA and SCA, an expert "may not . . . merely tell the jury what result to reach" and "may not testify to the legal implications of conduct" because "the court must be the jury's only source of law." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). Further, expert testimony "will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Prosper v. Martin*, 989 F.3d 1242, 1249 (11th Cir. 2021) (quotation omitted). Respecting damages, "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (quotation omitted). Stollman's damages opinions do not concern Plaintiff particularly, (*see* Dkt. 160-1 at 26–44), and to the extent that they may shed light on the damages of other persons, Plaintiff is the only person seeking damages in this case, (*see* Dkts. 117, 136). The court has denied the motion for class certification. (*See* Dkt. 202.) *See Groover v. Polk Cnty. Bd. of Cnty. Comm'rs*, 570 F. Supp. 3d 1134, 1151 (M.D. Fla. 2021) (finding expert testimony "so imprecise, unspecific, and unhelpful that it amount[ed] to pure speculation" (quotation omitted)); *cf. Anson v. City of Deltona*, No. 6:23-cv-766-JSS-LHP, 2025 WL 4477501, at *5, 2025 U.S. Dist. LEXIS 275417, at *17 (M.D. Fla. Nov. 24, 2025)

("[T]he . . . opinions that a class action is necessary are unhelpful because [the p]laintiffs no longer seek to certify this case as a class action and therefore no longer assert class claims.").

Because Stollman is unqualified to offer his opinions, he used unreliable methods to arrive at them, and they will not assist the factfinder, the Lawyer Defendants' motion to exclude Stollman's testimony (Dkt. 160) is **GRANTED**.

**ORDERED** in Orlando, Florida, on July 21, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record