UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANSARI MOHAMAD,

Plaintiff,

v. Case No: 6:24-cv-2354-JSS-LHP

LAWGICAL INSIGHT, LLC, ANDREW BAUTA, MICHAEL RUSSO, ROTTENSTREICH FARLEY BRONSTEIN FISHER POTTER HODAS LLP, MELIZA MILLER, and RICHARD I. SEGAL,

Defendants.
___________________________________/

**ORDER**

Defendants—Lawgical Insight, LLC, Andrew Bauta, and Michael Russo (the Lawgical Defendants) and Rottenstreich Farley Bronstein Fisher Potter Hodas LLP (RFBFPH), Meliza Miller, and Richard I. Segal (the Lawyer Defendants)—move to dismiss the second amended complaint (Dkt. 117), (*see* Dkts. 130, 138; *see also* Dkts. 148, 154), and separately move for summary judgment, (*see* Dkts. 163, 164; *see also* Dkts. 158, 165, 184, 185). Plaintiff, Ansari Mohamad, opposes the motions. (*See* Dkts. 143, 144, 177, 178.) Upon consideration, for the reasons outlined below, the court grants the motions for summary judgment and accordingly denies the motions to dismiss as moot.

## BACKGROUND[1]

In an ongoing state action related to this case, *Central Florida Tax and Accounting Services, Inc. v. Akbar A. Ali*, case number 2021-CA-011761-O, in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, the company Central Florida Tax and Accounting, Inc. (CFTAS), formerly a defendant in this case, has sued non-party Akbar A. Ali and his accounting business, A.A. Ali C.P.A. (*See* Dkt. 158 ¶¶ 1, 4.) CFTAS initiated the state court action in 2021 alleging that Ali committed contractual breaches and related business torts involving the tax services that he provides to his clients. (*See id.*) These clients include Plaintiff, who is not a party to the state court action. (*See id.* ¶ 1.) The Lawyer Defendants represent CFTAS in the action. (*Id.* ¶ 6.) Miller is senior counsel at the law firm RFBFPH, (Dkt. 165-1 ¶¶ 2, 4), and Segal is a founding partner of the firm, (Dkt. 165-2 ¶¶ 2, 4). The Lawgical Defendants have provided forensic examination services in the action. (Dkt. 163-1 at 3–4, 7.) Founded in 2018, Lawgical is "an eDiscovery and digital forensics company,"

[1] In setting out the background facts, the court views the evidence in the light most favorable to Plaintiff as the non-moving party. *See Underwood v. City of Bessemer*, 11 F.4th 1317, 1327 (11th Cir. 2021). Where possible, the court derives the facts from the parties' agreed stipulation of material facts (Dkt. 158). *See Jimenez v. Dep't of Homeland Sec.*, 119 F.4th 892, 900 (11th Cir. 2024) ("A party . . . may cite to a stipulation to establish that a fact is not disputed."). Plaintiff objects to the stipulation, which he signed through his legal counsel, on the basis that Defendants did not commence the conferral process for the stipulation in full compliance with the case management schedule ordered by the court. (Dkt. 158 at 9–11; *see* Dkt. 41 at 3.) In November 2025, Plaintiff moved to strike, or alternatively deny, Defendants' summary judgment motions on this basis, (Dkt. 157), and the court denied the motion because such a drastic remedy was inappropriate in light of the (admittedly belated) filing of the stipulation, (Dkt. 170). The court now overrules Plaintiff's objection for the same reason. *Cf. Newsome v. Chatham Cnty. Det. Ctr.*, 256 F. App'x 342, 345 (11th Cir. 2007) ("District courts enjoy broad discretion in deciding how best to manage the cases before them, and that discretion extends to whether to consider untimely motions for summary judgment." (quotation and citation omitted)).

and Russo and Bauta are Lawgical's chief executive officer and chief operating officer, respectively. (*Id.* at 2.) Given the subject matter of the state court action, filings therein refer to tax-related materials, such as Internal Revenue Service (IRS) records as well as documents obtained through the tax preparation software TaxWise. (*See* Dkt. 158 ¶ 15.) These materials are seemingly identifiable through Bates numbering in the action: for example, an IRS report is associated with the numbering DEF 100029–100031. (*See id.*) The materials also display electronic filing identification numbers (EFINs), which are issued by the IRS to coordinate electronic tax filing. (*See id.*)

On December 27, 2023, CFTAS filed in the state court action a motion to compel compliance with a court order and for sanctions and an adverse inference at trial. (*Id.* ¶ 7.) On March 18, 2024, the state court issued an order on the motion. (*Id.* ¶ 8.) The state court "required Ali to produce documents missing from his discovery responses." (*Id.* ¶ 9.) The state court also directed the parties to "select an agreed[-]upon third[ ]party" that would "conduct a forensic examination . . . of Ali's computers and programs," and it directed them to "submit a proposed order setting forth the agreed-upon parameters and search protocols for the [f]orensic [e]xamination." (*Id.* ¶¶ 10–11.) In addition, the state court "required any party in disagreement with the scope of the [f]orensic [e]xamination to file a motion" addressing the issue. (*Id.* ¶ 12; *see* Dkt. 83-1.) The parties in the state court action ultimately selected Lawgical as the forensic examiner. (*See* Dkt. 163-1 at 3–4, 7.)

On December 26, 2023, CFTAS submitted an omnibus motion to compel.

(Dkt. 158 ¶ 13.) In another March 18, 2024 discovery order, the state court resolved the motion by requiring Ali to produce six categories of financial materials:

1. All tax filings, including returns and extensions, identified in the IRS Report (DEF 100029–100031) and the TaxWise Summary (DEF 0008414–008444);

2. All tax filings, including returns and extensions, submitted under EFINs 594511, 594831, and 590549 from April 8, 2019, through the present;

3. All TaxWise documents, including but not limited to TaxWise acknowledgements, for EFINS 594511, 594831, and 590549 from April 8, 2019, through the present;

4. Unredacted versions of all tax returns previously produced in this case;

5. Non-privileged documents responsive to Request Nos. 11–17 and 22 in the Ninth Request for Production; and

6. All missing check copies and deposit slips identified in the Motion to Compel's Composite Exhibit "M."

(*Id.* ¶ 15 (cleaned up); *see* Dkt. 83-2.) The state court also delineated the forensic examination's scope by directing the forensic examiner (that is, Lawgical) to search for all documents responsive to CFTAS's discovery requests and by identifying four non-exhaustive categories of such documents:

1. All tax filings, including returns and extensions, submitted under EFINs 594511, 594831, and 590549 from April 8, 2019, through the present;

2. All TaxWise records for EFINs 594511, 594831, and 590549 from April 8, 2019, through the present;

3. All IRS Reports for EFINs 594511, 594831, and 590549 from April

8, 2019, through the present; and

4. All tax filings, including returns and extensions, prepared by Ali from April 8, 2019, through the present.

(Dkt. 158 ¶ 16 (cleaned up); *see* Dkt. 83-2.)

On April 18, 2024, the state court issued an agreed order regarding the forensic examination. (*Id.* ¶ 18; *see* Dkt. 83-3.) CFTAS and Ali were ordered to share equally the costs of the forensic examination. (Dkt. 158 ¶¶ 17, 19.) The "purpose and scope of the [f]orensic [e]xamination was limited to a search of all documents responsive to CFTAS's discovery requests as set forth in the March 18, 2024 [d]iscovery [o]rders." (*Id.* ¶ 20 (alteration adopted and quotation omitted).) The state court ordered Ali to "make his computer(s) and other electronic storage devices . . . available to Lawgical, including" by furnishing "all passwords, keys, or other credentials needed to access any applications [or] programs located on Ali's [c]omputer [d]evices." (*Id.* ¶ 21 (alterations adopted and quotation omitted).) The state court ordered Lawgical to "make and collect a forensic mirror[ ]image of" Ali's computer devices, duplicating the devices exactly. (*Id.* ¶ 22 (quotation omitted).) The state court ordered Ali to "cooperate with Lawgical by promptly supplying passwords and credentials required to access and decrypt data on the [mirror image] and accurately interpret" the data. (*Id.* ¶ 23 (quotation omitted).) The state court further ordered Lawgical to "access Ali's network" to "identify all devices including network attached storage, cloud storage accounts, [and] productivity accounts," as well as "all other devices[,]

including without limitation desktop and laptop computers, tablets, and smartphones[,] and sources containing electronically stored information . . . to be collected as part of" the mirror image. (*Id.* ¶ 24 (alterations adopted and quotations omitted).) The state court further ordered Ali to "make available to Lawgical any of these identified devices and sources." (*Id.* ¶ 25.)

In the agreed order, the state court required Lawgical to generate a forensic production based on the mirror image and to deliver the production to CFTAS and Ali. (*Id.* ¶ 26.) The agreed order lists eight parameters for the production:

1. Search for all tax filings, including returns and extensions, prepared or submitted by Ali, and any documents, records, and data relating to such filings created on or after April 8, 2019;

2. Search for all documents, records, and data, created on or after April 8, 2019, that contain reference to EFINs 594511, 594831, and 590549;

3. Search for all documents, records, logs, reports, and data, created on or after April 8, 2019, from the TaxWise software program used by Ali;

4. Generate all reports necessary within the TaxWise software program, desktop and online versions, to locate and obtain all of the records in [parameters 1, 2 and 3 above];

5. Search for all documents, records, logs, reports, and data, created on or after April 8, 2019, related to any accounting or bookkeeping software, including but not limited to Sage 50 Accounting (Sage, formerly Peachtree) and QuickBooks;

6. Search for all documents, records, and data, created on or after April 8, 2019, relating to accounting or bookkeeping records created or stored outside of an accounting or bookkeeping software, including but not limited to financial statements, profit and loss statements, general ledgers, balance sheets, spread sheets, accounting books,

records, work papers, notes, calculations, adjusted journal entries, price sheets, price lists, accounts receivables, accounts payable, and customer invoices;

7. Search for all documents, records, and data, relating to aged receivables created from January 1, 2019, through April 8, 2019; and

8. Generate all reports necessary within Sage, QuickBooks, and all other accounting and bookkeeping software utilized by the defendants, to locate and obtain all of the records in [parameters 5, 6, and 7 above].

(*Id.* ¶ 27 (cleaned up).) The state court also ordered Lawgical to assess the mirror image for instances of computer tampering—specifically "instances of applications employed to alter file metadata [or] delete [or] erase files or data from applications or programs"—and to "include evidence of these instances as part of the [p]roduction." (*Id.* ¶ 28 (quotation omitted).) As to the materials that Lawgical found using the above parameters, Lawgical was ordered to chart the changes in the materials and to keep records showing when each change was made. (*Id.* ¶ 29 (quotation omitted).)

On July 16, 2024, at Ali's home office, he tendered to Lawgical three devices—"two laptops and one smart[]phone"—so Lawgical could perform a forensic examination on the devices. (*Id.* ¶¶ 30–31.) Five months later, on December 16, 2024, CFTAS filed in the state court action the forensic report that Russo had composed (as Lawgical's agent) based on the examination. (*Id.* ¶ 32; *see* Dkt. 117-3 at 6–48.) The theme of the report is that, in Lawgical's estimation, Ali "deliberately and repeatedly manipulated the discovery process" in the state court action "by deleting, moving, obfuscating, or falsifying electronically stored information . . . , physical assets, and

digital environments contemplated by" the state court's orders. (Dkt. 117-3 at 9.) The report contains seven sections: Context for Forensic Examinations (analogizing digital storage to physical storage), Summary (highlighting key findings from the examination, particularly as to Ali's participation in the discovery process), Notes and Limitations (commenting on the limits of the examination and generally attributing them to Ali's conduct), Composite Methodology and Attendant Context (presenting an overview of the digital resources used to conduct the examination), Timeline (providing a chronology of the steps taken to conduct the examination, including the collection of the mirror image and the implementation of the production parameters), Conclusion (determining that Ali compromised the discovery process and discussing four subjects related to this determination: data manipulation and obfuscation, external remote environment, discovery of key evidence, and discovery of additional external cloud storage), and Recommendations (suggesting that preservation letters and subpoenas be sent to specified technology companies to obtain data involving Ali). (*See id.* at 6–48.)

CFTAS submitted an amended motion to compel Ali's compliance with the agreed order, and after a hearing, the state court granted the amended motion on December 27, 2024. (Dkt. 158 ¶ 33; *see* Dkt. 83-4.) In the order granting the amended motion, the state court reiterated the April 18, 2024 agreed order, (Dkt. 158 ¶ 34), concluded that Ali "had not fully complied with the [c]ourt's orders and had impeded the court-ordered forensic examination," (*id.* ¶ 35a (alteration adopted and quotation

omitted)), and adopted Lawgical's recommendations with respect to obtaining data involving Ali from specified technology companies, (*id.* ¶ 35d). The state court ordered Ali to provide Lawgical with the "additional physical and network sources" of electronically stored information that Lawgical had discussed in its report. (*Id.* ¶ 35b.) The state court described these sources as "all actual computer devices utilized" by the defendants in the state court action "contain[ing] all sources of discoverable electronically stored information" contemplated by the order compelling the examination and the agreed order. (*Id.* (quotation omitted).) The state court also ordered Ali to provide Lawgical with "all login credentials, passwords[,] and other information necessary" to access information, not only for identified accounts but also "for all other undisclosed sources of discoverable" information. (*Id.* ¶ 35c (quotation omitted).) The state court afforded Ali five days to provide the sources and the information necessary for access. (*Id.* ¶ 35b–c.) In response to the December 27, 2024 order, Ali filed a petition for writ of certiorari with Florida's Sixth District Court of Appeal but was unsuccessful on appeal. (*Id.* ¶ 36; *see* Dkt. 83-7.)

On the same date that the state court granted CFTAS's amended motion, Plaintiff initiated this case by submitting a verified class action complaint against Defendants, CFTAS, and Anees Ahmad Tanoli, the individual doing business as CFTAS. (*See* Dkt. 1.) In connection with the discovery conducted in the state court action, the initial complaint alleged the unauthorized disclosure and inspection of Plaintiff's tax return information under 26 U.S.C. § 7431. (*See* Dkt. 1.) In February

2025, Plaintiff filed an amended class action complaint against the same parties as well as Sigma Tax Pro, a provider of online tax preparation software that Ali reportedly used to file tax returns for Plaintiff, and Grant Hemmingway, an executive for Sigma. (*See* Dkt. 22.) Instead of proceeding under section 7431, the amended complaint invoked the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2510–2523, the Stored Communications Act (SCA), 18 U.S.C. §§ 2701–2713, and Florida law in an effort to vindicate Plaintiff's rights regarding the unauthorized disclosure of his financial information in the state court action. (*See* Dkt. 22.) In September 2025, the court dismissed the Florida law claims with prejudice pursuant to Florida's litigation privilege, dismissed the remaining claims against Sigma and Hemmingway with prejudice under 18 U.S.C. § 2701(c)(1), and dismissed the ECPA claims against Defendants without prejudice given the conclusory nature of necessary allegations in the amended complaint. (*See* Dkt. 105.) The court permitted Plaintiff to amend his pleading consistent with the order dismissing the claims. (*Id.* at 22–23.) The court noted that Plaintiff sought "to allege more specifically that the Lawgical Defendants exceeded the parameters of the agreed order in the state action," and accordingly, the court allowed Plaintiff to "amend his pleading to assert with greater clarity that the state court's authorization was exceeded." (*Id.* at 15 n.3 (alteration adopted and quotation omitted).) Plaintiff did so, (*see* Dkt. 117 ¶¶ 36–37), and moreover, he retained allegations calling into question the state court's authority to issue the discovery orders in the state court action, (*e.g.*, *id.* ¶ 24 ("Because the state court had

no authority to issue an order releasing [third parties' tax return information] without the third parties' knowledge, consent, or ability to object to the release of their [tax return information], there was no valid order, warrant, or court authorization permitting Defendants' actions."); *see also* Dkt. 22 ¶ 23.)

Timely filed on October 6, 2025, the operative second amended class action complaint contains claims brought by not only Plaintiff but also Shameena Mohamad and Zebeeda Mohamed, other clients of Ali. (*See* Dkt. 117 at 1, 23–24.) However, within weeks, these two new parties were dismissed from this case under Federal Rule of Civil Procedure 41(a)(1). (*See* Dkts. 133, 136.) The second amended complaint includes three counts, each against Defendants, CFTAS, and Tanoli. (*See* Dkt. 117.) The first two counts assert ECPA and SCA claims based on the purportedly unauthorized access and disclosure of financial information relating to the state court action, and the third count requests declaratory and injunctive relief based on the ECPA and SCA violations alleged in the first two counts. (*Id.* ¶¶ 87–162.) As part of the assorted injunctive relief sought in this case, Plaintiff asks that Defendants be required to contact any individuals whose information was accessed in the state court action in violation of the ECPA and SCA in order to notify them of that fact. (*Id.* at 50.) In addition to declaratory and injunctive relief, the second amended complaint requests a variety of monetary damages, including compensatory and punitive damages and legal fees. (*Id.* at 41, 45–52.) On February 17, 2026, the court dismissed CFTAS and Tanoli from this case for insufficient service of process. (*See* Dkt. 188.)

The following month, Plaintiff filed a class action complaint reasserting his claims against CFTAS and Tanoli, initiating case number 6:26-cv-688-JSS-DCI in this court. (*See* Dkt. 191.) That case is ongoing.

Discovery in this case closed on November 3, 2025. (Dkt. 41 at 2.) Nearly a month later, on December 1, 2025, Plaintiff moved for class certification and did not submit any evidence in support of the motion. (*See* Dkt. 162.) In July 2026, the court denied the motion for class certification, as the motion was untimely and lacked evidentiary support. (*See* Dkt. 202.)

**APPLICABLE STANDARDS**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a party "assert[s] that a fact cannot be or is genuinely disputed," the party "must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . [by] showing that the materials cited do not establish the absence or presence of a genuine dispute[] or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials" when resolving the motion. Fed. R. Civ. P. 56(c)(3); *see HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) ("This rule was implemented so that a court may decide a motion for summary judgment without undertaking an independent search of the record." (quotation omitted)).

A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record showing a lack of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows that no evidence supports the non-moving party's case, the burden shifts to the non-moving party to show that there are, in fact, genuine factual disputes which preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

To meet its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-moving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *see HRCC*, 703 F. App'x at 816–17 ("Presenting arguments in opposition to a motion for summary judgment is the responsibility of the non-moving party, not the court." (alteration adopted) (quoting *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990))). In deciding whether a genuine dispute of material fact exists, the court must view the evidence and draw all factual inferences in the light most favorable to the non-moving party and must resolve any reasonable doubts in that party's favor.

*Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). The court will not weigh the evidence. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Summary judgment should be granted only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non[-]moving party." *Matsushita*, 475 U.S. at 587.

## ANALYSIS

In arguing against Plaintiff's claims through the instant motions, Defendants challenge the court's subject matter jurisdiction, (Dkt. 130 at 17–19; Dkt. 138 at 12–14, 22–25; Dkt. 163 at 12–13, 24–25; Dkt. 164 at 22), and assert the good faith reliance defense provided by the ECPA and SCA, (Dkt. 130 at 3 n.2, 7–10; Dkt. 163 at 9–12; Dkt. 164 at 3–4, 6–10 & nn.4–5, 25). *See* 18 U.S.C. §§ 2520(d)(1), 2707(e)(1). The court first assures itself of its subject matter jurisdiction. *See Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject[ ]matter jurisdiction exists . . . ."). The court then explains that Defendants are entitled to summary judgment on all counts under the good faith reliance defense. Given this outcome, the court does not address the other arguments in the instant motions, which concern the merits of Plaintiff's claims and the remedies available to Plaintiff should he prevail on his claims. (*See* Dkts. 130, 138, 163, 164.)

### A. Subject Matter Jurisdiction

The instant motions can be construed as contending that the court lacks subject matter jurisdiction on four grounds: (1) Plaintiff does not have an injury in fact for purposes of Article III standing, (Dkt. 138 at 12–14; Dkt. 163 at 12–13; Dkt. 164 at

22); (2) this court cannot adjudicate violations of the state court's orders, for example by deciding whether the Lawgical Defendants exceeded the parameters of the agreed order, because only the state court can exercise such contempt jurisdiction over those orders, (Dkt. 138 at 24–25; Dkt. 163 at 24–25); (3) the Anti-Injunction Act (AIA), 28 U.S.C. § 2283, generally prohibits federal courts from granting injunctions to stay state court proceedings and thus prohibits the relief that Plaintiff seeks, (Dkt. 130 at 17–19; Dkt. 138 at 22–23); and (4) the *Rooker-Feldman* doctrine, *see D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923), bars Plaintiff's claims, (Dkt. 138 at 23–24). These arguments notwithstanding, the court agrees with Plaintiff that it has jurisdiction over this matter. (*See, e.g.*, Dkt. 143 at 18 ("Plaintiff does not seek to enjoin the state court or modify its orders. [He] seek[s] relief for violations of federal statutory rights[,] . . . and because . . . Plaintiff[], and others similarly situated[,] are not parties to the state litigation, . . . the [AIA] simply does not apply." (quotation omitted)); *id.* at 19 (stating that the *Rooker-Feldman* doctrine does not apply because "Plaintiff's claims are based on independent federal statutory violations, not the validity of the [a]greed [o]rder"); Dkt. 144 at 11 ("[The AIA and *Rooker-Feldman*] do not insulate . . . Defendants from liability under federal law, nor do they render otherwise unlawful conduct immune from challenge."); Dkt. 178 at 18 ("The record now contains sworn testimony that Plaintiff's tax return information actually appeared in forensic materials generated through the examination. Actual inclusion and disclosure of protected information constitutes a

concrete and particularized injury sufficient for Article III standing." (citation omitted)).)

First, as to standing, "when a court evaluates a summary judgment motion asserting a lack of standing, the facts set forth by the plaintiff [are] 'taken to be true.'" *ACLU of Fla. v. Dixie County*, 690 F.3d 1244, 1249 (11th Cir. 2012) (quoting *Bischoff v. Osceola County*, 222 F.3d 874, 878 (11th Cir. 2000)). Article III standing requires the plaintiff to "have (1) suffered an injury in fact[] (2) that is fairly traceable to the challenged conduct of the defendant[] and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish injury in fact, [the] plaintiff must show that he . . . suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (quotation omitted). "[B]are procedural violations, divorced from any concrete harm[,] . . . do[] not suffice for Article III standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 440 (2021) (alteration adopted and quotation omitted). However, a statutory violation producing intangible harm with "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts" may satisfy standing's injury in fact requirement. *Id.* at 417, 424–25 (quotation omitted). The Supreme Court has identified the "disclosure of private information" as a concrete injury in the standing context. *See id.* at 425 (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008)). Defendants' standing arguments rely on Plaintiff's purported inability to establish that his private financial

information was in fact unlawfully accessed and disclosed. (*See* Dkt. 138 at 12–14; Dkt. 163 at 12–13; Dkt. 164 at 22.) To the extent that these arguments contest Plaintiff's claims on the merits, courts "must not confuse weakness on the merits with absence of Article III standing." *Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800 (2015) (alteration adopted and quotation omitted); *see Polelle v. Fla. Sec'y of State*, 131 F.4th 1201, 1211 (11th Cir. 2025) ("[Courts] generally assess plaintiffs' standing assuming that on the merits the plaintiffs would be successful in their claims." (alteration adopted and quotation omitted)). Further, in opposition to summary judgment, Plaintiff has submitted a declaration by Ali stating that Plaintiff's "name appears in [a] [l]ist of [r]eturns . . . and within the forensic materials generated by Lawgical." (Dkt. 177-1 at 2; Dkt. 178-1 at 2.) A computer record attached to Ali's declaration corroborates this statement. (Dkt. 177-1 at 6; Dkt. 178-1 at 6.) This evidence supports that Plaintiff's private information was disclosed without his permission in connection with the state court action and, accordingly, that he suffered an injury in fact. *See TransUnion*, 594 U.S. at 425. Defendants do not challenge the traceability and redressability requirements of standing, and the court concludes that these requirements are met because the asserted injury in fact is fairly traceable to Defendants' purported misconduct and could be redressed by the relief that Plaintiff seeks. Consequently, Plaintiff has standing to pursue his claims. *See Cobbs v. Petmed Express, Inc.*, 824 F. Supp. 3d 1257, 1265–68 (S.D. Fla. 2026) (applying *Perry v. CNN, Inc.*, 854 F.3d 1336 (11th Cir. 2017), and holding that the disclosure of the plaintiffs'

confidential information sufficed to establish an injury in fact such that the plaintiffs had standing to bring their ECPA claims).

Second, as to contempt jurisdiction, "[u]nder no circumstances may a federal court impose any kind of sanction for contempt of another court's order," *Sisney v. Kaemingk*, 15 F.4th 1181, 1200 (8th Cir. 2021), because "[a] court of the United States" has the "power to punish . . . contempt of its [own] authority, and none other," 18 U.S.C. § 401. Typically, this principle arises when federal courts consider whether and how to sanction the parties before them. *See, e.g.*, *Dow Chem. Pac. v. Rascator Mar. S.A.*, 782 F.2d 329, 345 (2d Cir. 1986) (considering attorney fees awarded due to bad faith and explaining: "The appropriate focus for the court in applying the bad-faith exception to the American Rule is the conduct of the party in instigating or maintaining the . . . litigation in which the fee award is under consideration. . . . Violations of orders in other litigation should not be the basis for an award of fees in the instant litigation; such violations are best dealt with in the actions in which they have occurred."); *Bedoya v. Aventura Limousine & Transp. Serv.*, 861 F. Supp. 2d 1346, 1355 (S.D. Fla. 2012) (disqualifying counsel for violations of Rules Regulating the Florida Bar and noting: "While conduct in another forum may not be sanctionable by the [c]ourt, the [c]ourt may look to such conduct . . . as evidence in determining whether conduct properly before the [c]ourt is sanctionable."); *Macro Elecs. Corp. v. Biotech Restorations, LLC*, No. 8:22-mc-18-CEH-AAS, 2025 WL 712475, at *1, 2025 U.S. Dist. LEXIS 43613, at *2 (M.D. Fla. Mar. 5, 2025) (denying the

plaintiffs' motion for civil contempt sanctions because the court lacked "the power to sanction [the defendant] for his failure to satisfy a money judgment entered by the Eastern District of New York"). "Where 'conduct is neither before the district court nor in direct defiance of its orders, the conduct is beyond the reach of the court's inherent authority to sanction.'" *Bedoya*, 861 F. Supp. 2d at 1355 (alteration adopted) (quoting *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 461 (5th Cir. 2010)). However, Plaintiff's claims do not invoke the court's inherent authority to sanction; instead, they assert rights under the ECPA and SCA. (*See* Dkt. 117.) Because Plaintiff does not ask this court to find any party in contempt of the state court's orders, the limitations associated with contempt and with the court's authority to sanction do not deprive the court of subject matter jurisdiction in this case. *Cf. Mitchell v. F/V Janice*, 813 F. Supp. 2d 1227, 1230 (W.D. Wash. 2011) ("As the orders that [the defendant] allegedly violated were not issued under this [c]ourt's authority, the [c]ourt lacks subject matter jurisdiction *over civil contempt proceedings* against [him]." (emphasis added)).

Third, as to the AIA, a federal court "may not grant an injunction to stay proceedings in a [s]tate court except as expressly authorized by [an a]ct of Congress, or where necessary in aid of [the federal court's] jurisdiction, or to protect or effectuate [the federal court's] judgments." 28 U.S.C. § 2283; *see TranSouth Fin. Corp. v. Bell*, 149 F.3d 1292, 1296 (11th Cir. 1998) ("The [AIA] prohibits a federal court from enjoining a state court proceeding except in three narrowly defined circumstances: (1) where

there is an express congressional authorization to enjoin state proceedings[,] (2) where an injunction is necessary to protect a judgment that a federal court has rendered[,] and (3) where an injunction is necessary to aid the federal court's jurisdiction over an action."). To begin, "[a]lthough the [AIA] limits the reach of the equitable powers of the federal courts, it is not a jurisdictional statute." *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 623 (11th Cir. 2015) (collecting cases).[2] In addition, although Plaintiff requests declaratory and injunctive relief, he also asks for monetary damages, (*see* Dkt. 117 at 49–52), and by the AIA's plain language, the AIA does not bar a federal court from awarding monetary damages for statutory violations, *see* 28 U.S.C. § 2283. Further, in awarding declaratory and injunctive relief that Plaintiff seeks, for example by declaring Defendants to have violated the ECPA and SCA and by ordering Defendants to notify individuals that their information was accessed in violation of these statutes, the court need not stay or enjoin the state court action. (*See* Dkt. 117 at 49–50.) Such an order would not have "the purpose of halting [the] state court proceeding." *See Burr & Forman v. Blair*, 470 F.3d 1019, 1027 n.28 (11th Cir. 2006) ("[Courts] treat injunctions entered for the purpose of halting a state court proceeding

[2] In fairness to Defendants, they do not directly refer to the AIA as jurisdictional in the instant motions. (*See* Dkt. 130 at 17–19; Dkt. 138 at 22–23.) However, the Lawgical Defendants call for dismissal of Plaintiff's claims pursuant to the AIA and the *Rooker-Feldman* doctrine in the same section of their motion to dismiss, (*see* Dkt. 138 at 22–24), and the *Rooker-Feldman* doctrine is undoubtedly jurisdictional, *see Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1284 (11th Cir. 2018) ("The *Rooker-Feldman* doctrine is a limitation on the jurisdiction of the inferior federal courts."). Considering the need for the court to verify its subject matter jurisdiction, the court discusses the AIA for the sake of completeness.

the same regardless of whether [the injunctions are] issued against the parties to the state court proceeding or [are issued] directly against the state court."). For all these reasons, the AIA does not divest the court of subject matter jurisdiction. *See Molina*, 635 F. App'x at 623 ("Even if the [AIA] bars a federal court from granting an injunction, it does not interfere with that court's power to render a judgment on the merits. Nor does it limit the power of the district court to award compensatory and punitive damages.").

Fourth, as to *Rooker-Feldman*, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994). The *Rooker-Feldman* doctrine is "limited and clearly narrow." *Behr v. Campbell*, 8 F.4th 1206, 1211 (11th Cir. 2021) (quotations omitted). "It does not prevent a district court from exercising subject[ ]matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Efron v. Candelario*, 110 F.4th 1229, 1235 (11th Cir. 2024) (quotation omitted). "Nor does [it] block claims that require some reconsideration of a decision of a state court if the plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Id.* (quotations omitted). Indeed, the Eleventh Circuit has explained that the doctrine "will almost never apply." *Behr*, 8 F.4th at 1212. As relevant here, it "does not apply when the parties to the federal case

are not the same as the parties to the state case." *In re Hazan*, 10 F.4th 1244, 1250 (11th Cir. 2021) (collecting cases); *see Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008) ("*Rooker-Feldman* does not apply where the federal plaintiff was not a party in state court."). Accordingly, because Plaintiff is not a party to the state court case, *Rooker-Feldman* does not deprive the court of jurisdiction over this case.

In light of the above, Defendants' jurisdictional arguments are unavailing. As Plaintiff asserts, (*see* Dkt. 143 at 18–19; Dkt. 144 at 11; Dkt. 178 at 18), the court has subject matter jurisdiction over his claims.

**B. Good Faith Reliance Defense**

"A good faith reliance on . . . a court . . . order . . . is a complete defense to [or against] any civil . . . action brought under" the ECPA or SCA. 18 U.S.C. §§ 2520(d)(1), 2707(e)(1); *see Tapley v. Collins*, 211 F.3d 1210, 1213 (11th Cir. 2000) ("The [ECPA] explicitly provides a complete defense to any civil . . . action brought under the statute where the defendant relied in good faith upon certain authorities enumerated in the statute."); *Wright v. Florida*, 495 F.2d 1086, 1090 (5th Cir. 1974) ("[G]ood faith reliance on a court order [is] a defense . . . to [ECPA] claims . . . ."); *cf. McCready v. eBay, Inc.*, 453 F.3d 882, 892 (7th Cir. 2006) ("Good faith reliance on a subpoena is a complete defense to actions brought under the ECPA and SCA."). "[G]ood faith defenses," like the defense at issue, "are subjective in nature." *Tapley*, 211 F.3d at 1215; *see Garza v. Bexar Metro. Water Dist.*, No. SA-08-CA-839-OG, 2009 WL 10669528, at *19 n.182, 2009 U.S. Dist. LEXIS 155160, at *45 n.182 (W.D. Tex.

Dec. 9, 2009) (noting in a report and recommendation that *Tapley* discussed the "subjective good faith defense in" the ECPA (quotation omitted)). A defendant's subjective "good faith generally is a jury question." *Tapley*, 211 F.3d at 1215. However, a court may grant summary judgment as to a defendant's subjective state of mind such as good faith when a plaintiff does not offer evidence contradicting the state of mind. *See, e.g.*, *Johnson v. New Destiny Christian Ctr. Church*, 826 F. App'x 766, 773 (11th Cir. 2020) (affirming summary judgment against the pro se plaintiff because "[s]he failed to provide any evidence that [rose] above a mere existence of a scintilla of evidence that [the defendant] did not . . . have [subjective] good faith" (quotation omitted)); *Cont'l Cas. Co. v. Compass Bank*, No. 04-0766-KD-C, 2006 WL 644472, at *11, 2006 U.S. Dist. LEXIS 13009, at *33 (S.D. Ala. Mar. 9, 2006) (granting partial summary judgment finding that the defendant acted in subjective good faith because "the evidence d[id] not create a genuine issue" on the subject); *cf. Stone v. Hendry*, 785 F. App'x 763, 769–70 (11th Cir. 2019) ("There is no evidence in the record from which a jury could conclude that [the defendant] was *subjectively aware* of [the decedent]'s need for medical assistance but wantonly refused to provide aid[]. . . . [T]herefore[,] . . . the district court did not err in granting summary judgment in favor of [the defendant]." (emphasis added)).

Plaintiff contends that the good faith reliance "[d]efense [d]oes [n]ot [a]pply to [p]rivate [c]ivil [l]itigants." (Dkt. 178 at 16 (emphasis omitted); *see id.* at 16–17.) To support the proposition that "[f]ederal courts have consistently held that

the . . . defense is limited to law enforcement officers or individuals acting under color of law, not private litigants pursuing civil discovery," Plaintiff cites two non-binding cases: *Rice v. Rice*, 951 F.2d 942, 945 (8th Cir. 1991), as well as *Lewton v. Divingnzzo*, 772 F. Supp. 2d 1046, 1056 n.7 (D. Neb. 2011), which derived from *Rice* the principle that "[t]he limited good faith reliance defense . . . does not apply to private actors," *id.* (quotation omitted). (Dkt. 178 at 17.) However, the Eighth Circuit in *Rice* examined 18 U.S.C. § 2520(d)(3) specifically. *See* 951 F.2d at 944–45. That portion of the defense, which is not at issue in this case, presently requires "a good faith determination that [18 U.S.C. § 2511(3), 2511(2)(i), or 2511(2)(j)] permitted the conduct complained of." 18 U.S.C. § 2520(d)(3). When *Rice* was decided, this text referred to section 2511(3) alone. 18 U.S.C. § 2520(d)(3) (1991). Now, as then, section 2511(3) regulates the conduct of "a person or entity providing an electronic communication service to the public." 18 U.S.C. § 2511(3). The Eighth Circuit recognized this limitation with respect to section 2520(d)(3). *See Rice*, 951 F.2d at 944–45 ("Looking to section 2511(3), it is clear that the defense is referenced solely to the conduct of persons or entities providing electronic communication service to the public. Further, the legislative history to section 2520(d)(3) makes reference solely to the conduct of communication service providers or their employees. Therefore, it is clear that 18 U.S.C. § 2520(d)(3) does not provide a good faith reliance defense to private actors, such as the defendants." (footnote, citations, and quotation omitted)). Here, Defendants invoke section 2520(d)(1), not section 2520(d)(3), (*see, e.g.*, Dkt. 164

at 6), thereby rendering unpersuasive *Rice* and its progeny, including *Lewton*. Moreover, the Eleventh Circuit has explained in a published opinion that whereas qualified immunity applies to public officials sued under the ECPA, the statute's good faith reliance defense is "available to everyone." *Tapley*, 211 F.3d at 1216 ("[C]ourts should not infer that Congress meant to abolish in the [ECPA] that extra layer of protection qualified immunity provides for public officials simply because it included an extra statutory defense available to everyone."). Under *Tapley*, Defendants may assert the good faith reliance defense even though they are private civil litigants.

In support of the good faith reliance defense, Defendants have submitted sworn declarations from Russo, Miller, and Segal. (Dkts. 163-1, 165-1, 165-2.) According to Russo, Lawgical collected the information from Ali "pursuant to the [a]greed [o]rder and industry practice," (Dkt. 163-1 at 4), and "did not access, obtain, or attempt to obtain [information] from any secure system or device that Lawgical . . . understood to be outside the scope of the [s]tate [c]ourt orders or for which . . . Ali had not provided . . . access information as ordered by the [s]tate [c]ourt," (*id.* at 7). Russo further stated:

> In performing the forensic work in the [s]tate [c]ourt [a]ction, Lawgical . . . relied in good faith on the [s]tate [c]ourt's orders authorizing and directing [the] collection and examination. Lawgical . . . relied on the [s]tate [c]ourt orders as facially valid orders that clearly set forth the scope of Lawgical . . . 's authority to access and collect data from . . . Ali's devices and accounts. Lawgical . . . did not take any action or collect any information through its forensic examination that exceeded the scope of the [s]tate [c]ourt's orders—including without limitation any [information] source that, on its face,

> belonged or appeared to belong to Plaintiff. Lawgical . . . did not take any steps through its forensic examination that Lawgical . . . does not routinely take in the course of its work as a forensic examiner.

(*Id.* (reformatted from numbered paragraphs).) Russo added that Lawgical "has not taken any further steps to expand or complete the forensic examination beyond what had already been completed under the existing [s]tate [c]ourt orders," "has not used any of the collected data, except to prepare [the] [f]orensic [r]eport," and "has not disseminated the data[—]or information about the data[—]to any person or entity other than . . . as . . . required in the [s]tate [c]ourt [a]ction." (*Id.* at 9–10.)

Miller and Segal declared that they reviewed the discovery orders in the state court action and "believed [the orders] to be legally valid" for three reasons: (1) the orders were "signed by . . . the judge presiding over the [a]ction," (2) the orders were "issued by the [s]tate [c]ourt and appeared fully enforceable orders of the [s]tate [c]ourt," and (3) the orders did not demonstrate any "irregularity . . . which would have put [Miller and Segal] on notice" that the orders were "invalid or contrary to applicable law." (Dkt. 165-1 ¶¶ 11, 13, 18, 30–32; Dkt. 165-2 ¶¶ 18, 20, 22, 34–36.) Additionally, Miller and Segal stated that they "did not exceed the terms of scope of the discovery orders in complying with them to obtain discovery," "did not provide any instructions to Lawgical to exceed the scope of the [a]greed [o]rder in conducting the [f]orensic [e]xamination," and "did not participate in the technical process of carrying out the [f]orensic [e]xamination." (Dkt. 165-1 ¶¶ 33–35; Dkt. 165-2 ¶¶ 37–39.) According to their declarations, Miller and Segal "complied with any discovery

orders issued in the [state court a]ction." (Dkt. 165-1 ¶ 38; Dkt. 165-2 ¶ 42.)

Confronted with this evidence indicating Defendants' good faith reliance on the state court's orders, Plaintiff must "identify affirmative evidence" showing a genuine dispute as to the issue. *See Crawford-El*, 523 U.S. at 600; *HRCC*, 703 F. App'x at 816–17. Plaintiff asserts that Defendants' good faith reliance is a genuinely disputed factual issue. (*See* Dkt. 177 at 19 ("Where, as here, the record contains disputed evidence concerning the scope of authorization, the manner in which access credentials were used, and whether Defendants exceeded the bounds of any court order, summary judgment is inappropriate. Moreover, the [good faith reliance] defense requires more than the existence of a court order; it requires actual, reasonable reliance on that order. Defendants' conduct—including the creation of privileged or administrator-level accounts, access to cloud-based systems not shown to contain responsive data on the imaged devices, and reliance on forensic findings never subjected to sworn testimony or cross examination—raises disputed factual questions as to whether Defendants acted in subjective good faith." (case citation omitted)); Dkt. 178 at 8 ("Defendants contend that they acted in good[ ]faith reliance on court orders. Plaintiff disputes this fact. Ali's testimony establishes that protected taxpayer information contained in Ali's cloud storage accounts . . . was identified and included without taxpayer authorization, raising factual questions as to whether Defendants' reliance was reasonable or exceeded the scope of the orders." (citing Ali's declaration)); Dkt. 178 at 16 ("[T]he record contains substantial disputes regarding what Defendants believed,

what they understood the [a]greed [o]rder to permit, and whether they knowingly exceeded its scope by provisioning privileged credentials and accessing cloud services not present on the forensic image.").) As relevant here, when a party "assert[s] that a fact . . . is genuinely disputed," the party "must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . [by] showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Plaintiff does not show that the declarations from Russo, Miller, and Segal fail to establish the absence of a genuine dispute regarding Defendants' good faith reliance. (*See* Dkts. 177, 178.) Consequently, Plaintiff must cite materials in the record to survive summary judgment. *See* Fed. R. Civ. P. 56(c)(1). Respecting the good faith reliance defense, Plaintiff cites only Ali's declaration as record evidence. (*See, e.g.*, Dkt. 178 at 8.) Because "[t]he court need consider only the cited materials" on summary judgment, Fed. R. Civ. P. 56(c)(3); *see HRCC*, 703 F. App'x at 817, the court focuses on Ali's declaration, (*see* Dkts. 177-1, 178-1).

Although Ali's declaration provides evidence of Ali's subjective state of mind, (*see, e.g.*, Dkt. 177-1 ¶ 13 ("I did not believe [that] I was authorizing [the] disclosure [of federal tax return information] by providing credentials.")), his declaration does not provide evidence of Defendants' reliance (or non-reliance) on the state court's orders or of Defendants' good faith (or lack thereof) with regard to the same, (*see id. passim*). (*See* Dkt. 164 at 10 n.5 ("Because Plaintiff never took depositions of the Lawyer Defendants, Plaintiff is unable to rebut the subjective good faith reliance of the Lawyer

Defendants on the [s]tate [c]ourt [o]rders.").) Further, although Plaintiff in his summary judgment responses challenges Defendants' reliance on the state court's orders and states that genuine disputes of material fact on the issue preclude summary judgment, he does not explain how any such disputes preclude summary judgment. (*See* Dkt. 177 at 13, 18–19; Dkt. 178 at 7–8, 15–17.) He does not develop his arguments with adequate explanation and record citation. *See United States v. Holley*, 166 F.4th 139, 151 (11th Cir. 2026) ("requir[ing] an argument to be raised *and developed*"). Summary judgment responses merely stating that an issue is disputed do not suffice to overcome summary judgment. *See Atwater v. NFL Players Ass'n*, 626 F.3d 1170, 1180 (11th Cir. 2010) ("[A] non-movant's conclusory assertions made in the absence of supporting evidence are insufficient to withstand summary judgment in face of [a] movant's undisputed relevant evidence[.]" (quotation omitted)). Because Plaintiff has not identified affirmative evidence showing a genuine dispute concerning Defendants' good faith reliance on the state court's orders, Defendants are entitled to summary judgment on Plaintiff's ECPA and SCA claims under the good faith reliance defense. *See* 18 U.S.C. §§ 2520(d)(1), 2707(e)(1); *Tapley*, 211 F.3d at 1213; *cf. Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1182 (9th Cir. 2013) ("[T]here is simply no reason to suspect that [the defendant] acted in bad faith here, where the subpoenas displayed no 'indication of irregularity sufficient to put [the defendant] on notice that the subpoenas were phony.'" (alterations adopted and modified) (quoting *McCready*, 453 F.3d at 892)).

The sole remaining count—for declaratory and injunctive relief—is predicated

on Defendants' ECPA and SCA violations. (*See* Dkt. 117 ¶¶ 150–62.) Defendants are entitled to summary judgment on this count because they are entitled to summary judgment on the ECPA and SCA counts. *See Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("An injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise." (quotation omitted)); *Williams v. Wells Fargo Bank, Nat'l Ass'n*, No. 4:16-CV-0055-HLM-WEJ, 2017 U.S. Dist. LEXIS 104090, at *3–4, 2017 WL 2362045, at *1 (N.D. Ga. Jan. 27, 2017) (determining that claims for declaratory and injunctive relief failed because the underlying substantive claims failed).

## CONCLUSION

Accordingly:

1. Defendants' motions for summary judgment (Dkts. 163, 164) are **GRANTED**.
2. Defendants' motions to dismiss (Dkts. 130, 138) are **DENIED as moot**. *See Abdullah v. City of Jacksonville*, 242 F. App'x 661, 663 (11th Cir. 2007) ("[T]he district court did not err in granting summary judgment to the defendants before an answer was filed."); *see also Daley v. Bono*, 420 F. Supp. 3d 1247, 1265 (M.D. Fla. 2019); *Finster v. U.S. Bank Nat'l Ass'n*, 245 F. Supp. 3d 1304, 1321 (M.D. Fla. 2017); *Scheffler v. Chitwood*, No. 6:23-cv-1634-JSS-DCI, 2024 WL 4591246, at *8 & n.8, 2024 U.S. Dist. LEXIS 195102, at *20 & n.8 (M.D. Fla. Oct. 28, 2024).

3. The Clerk is **DIRECTED** to enter judgment accordingly, to terminate any pending motions and deadlines, and to close this case.

**ORDERED** in Orlando, Florida, on July 28, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record